**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SUSQUEHANNA RADIO LLC** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:23-CV-01746-S** |
| | § | |
| **JACOB KEMP and DANIEL MCDOWELL** | § | |
| | § | |
| **Defendants** | § | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO INJUNCTIVE RELIEF**

## Table of Contents

Facts and Corrections of False Allegations ........................................................................5

   *Protected Activity by Defendants* ...............................................................................5

   *The Podcast Does Not Compete with Plaintiff* .........................................................6

   *Plaintiff Owns None of the Property it Alleges* ........................................................7

     *The Name* ..........................................................................................................8

     *The Logo* ...........................................................................................................8

     *The Website* ....................................................................................................10

     *Waiver* ............................................................................................................10

     *The Social Media Accounts and Channels* .....................................................11

   *Dan and Jake have not Disparaged Plaintiff* .........................................................13

   *Dan and Jake Have Not Solicited Advertisers or Employees of Plaintiff* ...............14

   *Dan and Jake Neither Infringe any Valid Trademark nor Cause Confusion in the Marketplace* ...............................................................................................................14

Standard for Injunctive Relief ......................................................................................15

   *Plaintiff is Unlikely to Prevail on the Merits at Trial* ..............................................16

*Garmon* Preemption and the NLRB's Exclusive Jurisdiction ........................................17

   *Unfair Labor Practices Generally* ...........................................................................17

   *Garmon Preemption Generally* ..............................................................................19

   *The Non-Compete and Coworker Non-Solicitation Provisions are Subject to Garmon Preemption* ...........................................................................................................20

*The Confidentiality and Non-Disparagement Provisions are Subject to Garmon Preemption.*21
*The Unauthorized Recording Handbook Rule is Subject to Garmon Preemption.*...................24

# TABLE OF AUTHORITY

Cases

*NLRB v. Electrical Workers Local 1229 (Jefferson Standard)*, 346 U.S. 464, 472 (1953) ........... 20

*San Diego Bldg. Trades Council, Millmen's Union, Loc. 2020 v. Garmon*, 359 U.S. 236, 239 (1959) ............................................................................................................................... 17

*Sampson v. Murray*, 415 U.S. 61, 90 (1974) ...................................................................... 14

*Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975) ........................................................... 14

*Int'l Longshoremen's Ass'n, AFL-CIO v. Davis*, 476 U.S. 380, 395 (1986) .................................. 18

*Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018) ............................................................... 15

*Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Loc. Union No. 174*, 143 S. Ct. 1404, 1411 (2023) .. 18

*NLRB v. Circle Bindery*, 536 F.2d 447, 452 (1st Cir. 1976) ...................................................... 21

*Canal Auth. of the State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) (*en banc*). ... 13

*Mississippi Power and Light Co. v. United Gas Pipeline*, 760 F.2d 618, 621 (5th Cir. 1985) ....... 13

*Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir.1987) .............................................................. 13

*Medlin v. Palmer,* 874 F.2d 1085, 1091 (5th Cir. 1989). ....................................................... 14

*Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 848 (5th Cir. 2004) ......................... 14

*Millennium Rests. Grp., Inc. v. City of Dallas*, 181 F. Supp. 2d 659, 666 (N.D. Tex. 2001) (Fish, J.) .................................................................................................................................. 15

*Conlay v. Baylor Coll. of Med.*, Civ. Action No. H-08-1038, 2010 WL 774162, at *5 (S.D. Tex. Mar. 3, 2010) ...................................................................................................................... 14

*Dig. Generation, Inc. v. Boring*, 869 F. Supp. 2d 761, 781 (N.D. Tex. 2012) (Lindsay, J.) ........... 14

*Mannatech, Inc. v. Wellness Quest, LLC*, Civ. Action No. 3:14-CV-2497-K, 2014 WL 11515729, at *1 (N.D. Tex. Nov. 4, 2014) (Kinkeade, J.) ....................................................................... 14

*Stacy v. JPMorgan Chase Bank, N.A.*, No. 3:19-cv-446-M-BN, (N.D. Tex. 2020) ....................... 15

*Richboro Community Mental Health Council*, 242 NLRB 1267, 1268 (1979) .............................. 20

*Allied Aviation Service Co. of New Jersey, Inc.*, 248 NLRB 229, 231 (1980) ............................... 20

*Emarco, Inc.*, 284 NLRB 832, 833 (1987) ......................................................................... 20

*Hacienda De Salud-Espanola*, 317 NLRB 962, 966 (1995) .................................................... 21

*Valley Hospital Medical Center, Inc.*, 351 NLRB 1250, 1252 (2007) .......................................... 20

*Starbucks Corp.*, 372 NLRB No. 50, slip op. at 7 (Feb. 13, 2023) ............................................. 23

Statutes

29 C.F.R. § 101.12 ........................................................................................................ 16, 17

29 C.F.R. § 101.2 .............................................................................................................. 16

29 C.F.R. § 101.8 .............................................................................................................. 16

29 C.F.R. §§ 101.10-101.11 ............................................................................................... 16

29 U.S.C. § 157 ................................................................................................................ 16

29 U.S.C. § 158(a)(1) ........................................................................................................ 16

29 U.S.C. § 160(a) ............................................................................................................ 16

Tex. Penal Code § 16.02 .................................................................................................... 23

1.      Defendants respond to Plaintiff's application to the Court for a temporary restraining order and a preliminary injunction. In short, Plaintiff's business is the operation of terrestrial radio stations – old media – and it was only in that business that Plaintiff employed Defendants. Plaintiff has realized only too late that it should have been moving into new media platforms for years now. Defendants' new venture does not compete with Plaintiff, and their words and actions have complied with the restrictive covenants of their employment contracts despite, as will be shown below, almost all of those covenants are illegal restrictions on Defendants' rights under the National Labor Relations Act. Defendants have already filed claims with the National Labor Relations Board and have responded to the Board's requests for information. The Board has been made aware of this suit and the emergency relief sought, and those two things now support amended claims for retaliation.

2.      Plaintiff's Original Complaint contains a great number of false statements and misleading mischaracterizations of Defendants' words and actions (all sworn to by Plaintiff's corporate representative). The deficiencies in Plaintiff's likely evidence will prevent it from prevailing at trial.

3.      Defendants are not competing with Plaintiff, have not disparaged Plaintiff, have not solicited Plaintiff's advertisers or its employees, and have breached no duties, contractual or otherwise, to Plaintiff. The lawsuit is made up from whole cloth and motivated by a desire to retaliate against Defendants for engaging in protected activities.

4.      But even taking the allegations of the complaint as given for purposes of argument, all, or the large majority of, Plaintiff's claims are preempted by the National

Labor Relations Board's ("NLRB") exclusive and preexisting jurisdiction making any injunction in this case disserve the public's interest in the uniformity of decisions regarding the National Labor Relations Act's ("NLRA") provisions.

5.      Finally, all of Plaintiff's claims are addressable in monetary damages and not irreparable.

<u>Facts and Corrections of False Allegations</u>

6.      The declarations of Defendants are attached as Exhibits A and B.

7.      As demonstrated in the attached declarations of Defendants and the verified evidence presented herein, the allegations of the Original Complaint are wildly out of line with the facts and circumstances of Defendants' unsuccessful contract negotiations and ultimate resignations.

*Protected Activity by Defendants*

8.      Defendants Dan McDowell ("Dan") and Jake Kemp ("Jake") are popular radio personalities in the Dallas/Fort Worth terrestrial radio market. Dan worked at Plaintiff's radio station KTCK 1310 ("The Ticket") from 1999 to June 30, 2023, when he ceased employment by not going to work. Jake worked for The Ticket on and off since he was a high school student until June 30, 2023, when he ceased employment by not going to work. Dan and Jake submitted written notices of resignation to Plaintiff on July 17th, 2023.

9.      In the months before they terminated their employment with The Ticket, Dan and Jake spent a large amount of time attempting to negotiate new contracts to remain employed by Plaintiff. In these efforts, Dan and Jake were acting in concert to improve working conditions both for themselves and for other employees of Plaintiff. These

efforts included securing Plaintiff's tentative agreement to increase the pay of other employees appearing on Dan and Jake's show "The Hang Zone." In the wake of Dan and Jake's departure, Plaintiff promptly refused to honor these raises.

10.     In fact, throughout their employment at The Ticket, Dan and Jake sought to act in concert with each other and with other co-workers to improve working conditions for all of them. These efforts were met with illegal tactics by Plaintiff. When on-air personalities sought to line up the termination dates of their employment contracts to provide greater bargaining leverage, Dan Bennett, the affiant verifying the complaint, illegally told them to refrain from discussing compensation or contract terms.

11.     A key sticking point in the negotiations was Dan and Jake's desire to embark on other media content creation activities – activities not competing with Plaintiff – in part to help fund higher salaries for the other employees on their show as well as to provide similar content creation opportunities to other on-air personalities on The Ticket.

12.     Instead of placing a value on these non-competitive content creation opportunities and compensating Dan and Jake for avoiding them, Plaintiff instead espoused the legally impossible position that its noncompete provisions grew, Borg-like, into whatever media business it imagined it might one day engage in regardless of whether it ever had and without any relationship to the actual, limited language of the restrictive covenants in Dan and Jake's contracts.

13.     In the end, the terms being offered by Plaintiff simply weren't attractive, and Dan and Jake left to pursue other employment.

*The Podcast Does Not Compete with Plaintiff*

14.     Plaintiff's claims that Dan and Jake have violated any enforceable, contractual terms of their employment is supported by nothing other than the *ipse dixit* of Plaintiff.

15.     Dan and Jake have been publishing a video and audio recorded entertainment program called The Dumb Zone since July 20th, 2023, not before they left Plaintiff's employment as alleged in the complaint. It's funny: https://www.youtube.com/@TheDumbZone.

16.     The Dumb Zone's only source of revenue is monthly subscriptions from viewers and listeners. It accepts no advertising, and Dan and Jake have not attempted to sell advertising.

17.     The Dumb Zone has no live audience. It is simply released as a recorded program on a not very regular schedule that seems to correlate to when editing is finished. Therefore, it cannot take calls from fans, break news, provide a traffic or weather report, or do any of the other temporal activities that live, terrestrial radio does.

18.     The Dumb Zone does not occur at any specific time. It is not published daily or even on five consecutive work days. There is nothing about The Dumb Zone that prevents or discourages listeners from listening to The Ticket at any time. To the contrary, Ticket listeners choose to listen to The Ticket based on the content The Ticket broadcasts. If Plaintiff suggests that its audience has shrunk, it's not difficult to identify the primary reason.

*Plaintiff Owns None of the Property it Alleges*

19.     Plaintiff, in sworn pleadings, alleges that it owns 1) the name "The Dumb Zone," 2) The Dumb Zone logo, 3) thehangzone.com website, and 4) The Dumb Zone social media accounts. All these allegations are false.

*The Name*

20.     The name "The Dumb Zone" originated from a humorous play on the name of Dan and Jake's former show called The Hang Zone. It was used by on-air personalities to preface a question or statement that might make the speaker sound dumb. It was not a segment of the show; it was never owned, promoted, or otherwise used by Plaintiff; it is not protected by trademark.

21.     In fact "The Dumb Zone" pre-dates Dan and Jake's show and appears to have been used generically on The Ticket.[1]

*The Logo*

22.     Plaintiff alleges it owns The Dumb Zone logo because it is a modification of The Hang Zone logo. Because Plaintiff never owned the Hang Zone logo, it also doesn't own The Dumb Zone logo.

23.     The Hang Zone logo was created by a listener to that show who created the logo by using the movie poster image from the art house cinema feature "House Party" starring Christopher "Kid" Reid and Christopher "Play" Martin of the hip hop group Kid 'n' Play. Kid has made many appearances on The Hang Zone and its predecessor show and performed voice acting for The Hang Zone.

---

[1] This appears to be another host on the Ticket – Corby Davidson – using the phrase generically before Defendants' use of the phrase https://twitter.com/ATXdiehard/status/1689338973548605441?s=20



24.     Here is the listener created logo for The Hang Zone:



And here is The Dumb Zone logo created by another listener:



25.     Plaintiff never owned, promoted, or otherwise used either of these logos. The logos are humorous fan art utilizing a mark owned by LeBron James's SpringHill Company. To the extent they are fan art under the fair use doctrine, they are owned by the listeners who created them and are being used by Dan and Jake by permission.[2] Regardless, what is clear is that Plaintiff never owned either logo.

*The Website*

26.     Plaintiff claims to own the website thehangzone.com. In fact, over the years Dan was forced to buy multiple website urls and pay for the hosting fees for the websites and the promotional material he published for Plaintiff's benefit because Plaintiff would not.

27.     Over many years, Dan and his previous broadcast partner Bob Sturm paid not only for the websites and their operation, they paid from their own funds to hire a contractor for the editing, production, and publishing of "The BaD Radio Weekly Wrap-up Podcast" and "The Hang Zone Weekly Wrap-up Podcast," which were expensive exercises meant only to benefit Plaintiff's business. Jake later did the same with The Hang Zone. Plaintiff repeatedly refused to contribute to these promotional exercises, which Defendants were under no obligation to perform.

28.     Plaintiff *could* have owned thehangzone.com but chose not to.[3]

*Waiver*

29.     Plaintiff has always interpreted its own restrictive covenants to apply to terrestrial radio only. Employees that have gone on to television have been allowed to do so, for good or ill.[4]

---

[2] To the extent they exceed fair use, Dan and Jake have heard no objection from Mr. James.
[3] Plaintiff's behavior is consistent with its notorious reputation for asking prospective sales people to provide their own laptops to be considered for employment.

30.    Other hosts from The Ticket with presumably identical restrictive covenants are, today, making identical content to Dan and Jake with Plaintiff's apparent consent.[5]

31.    But perhaps the most stark example of waiver is the fact that Defendant Jake Kemp is the co-host of one of the oldest podcasts on the internet. He has monetized this podcast for many years with express notice to Plaintiff. The content of that podcast frequently has overlapped with his on-air work for Plaintiff.[6]

32.    Plaintiff has never enforced its rights to prevent republication of its content on the internet. The popular site The Unticket has republished the terrestrial radio content on the internet for many years.[7] Other Ticket listeners have been allowed to republish content on usaveit.com.[8]

*The Social Media Accounts and Channels*

33.    Plaintiff claims, again under oath, to own multiple social media accounts that belong to Dan and Jake.

34.    The X (formerly Twitter) account now branded "@thedumbzone" is a personal account created by Dan in March of 2011 and used by him to promote personal topics, share humorous videos unrelated to Plaintiff, and also to promote his work for Plaintiff.

35.    Plaintiff has never owned, used, or had access to this X account. It does not have the password for the account and never acquired or attempted to acquire the account from Dan, its sole owner.

---

[4] https://sports.yahoo.com/report-ex-espn-host-rachel-nichols-to-join-richard-sherman-as-undisputed-co-host-alongside-skip-bayless-184253339.html
[5] Bob Sturm's substack https://bobsturm.substack.com/; Gordon Keith's Twitch https://www.twitch.tv/actualgordonkeith
[6] https://www.patreon.com/itsjustbanter
[7] https://www.theunticket.com/
[8] https://www.dropbox.com/scl/fi/6iprq2hizum1h0e4l46sx/Fwd_-Email-Showing-that-Ticjet-Management-is-Aware-of-USave.it.pdf?rlkey=ml16e5mt595n5365if1jkhoz1&dl=0

36.    Instead, Plaintiff operates its own popular X account with seven times the followers of Dan's personal account. Plaintiff actively uses the account currently branded "@dfwticket" where it requires its employees to post promotional material for the radio station.

37.    Dan was never under any obligation to promote Plaintiff's business on his personal X account. Instead, Plaintiff placed this in his employment contract:

> **2.4    Social Media Platforms.** During the Employment Period, the Employee, as directed by the Company, shall use and operate the designated Company owned social media platforms in furtherance of the Job Duties hereunder for the sole and exclusive benefit of the Company.  In all cases Employee shall not use broadcast tools or content, or the Station's promotional tools, including but not limited to, Company owned and controlled social media platforms to promote and further the Employee's separate and independent controlled social media platforms, unless approved in writing by the Company. [9]

38.    Plaintiff never provided a "Company owned social media platform" to Dan or Jake. Defendants are unaware of any social media platforms owned by Plaintiff.

39.    The Dumb Zone YouTube channel is Dan's personal channel owned by him. Plaintiff has never owned, used, or had access to this channel. It does not have the password for the account and never acquired or attempted to acquire the channel from Dan, its sole owner.

40.    Defendants are unaware of Plaintiff owning or operating any YouTube channel, and a cursory search of that platform using search terms "1310 the ticket," "the ticket," and "ticket radio" turned up no such channel.

41.    Plaintiff claims that Defendants converted Plaintiff's Facebook account, but a search of Facebook shows The Ticket's account still active and still presumably operated by Plaintiff:

---

[9] Jake's contract is identical in this provision.



42.     Similarly to the other social media accounts Plaintiff has falsely claimed to own, Dan created a Facebook account years ago for personal use as well as promoting Plaintiff's business. Plaintiff never owned, promoted, or otherwise used this account and has never had access to it.

43.     Dan rarely used his account on Facebook, and it has few followers.

*Dan and Jake have not Disparaged Plaintiff*

44.     As the Court will see below, the non-disparagement provision of Jake's contract is subject to the exclusive jurisdiction of the National Labor Relations Board and cannot be adjudicated by this Court.

45.     Regardless, Dan and Jake have meticulously avoided disparaging Plaintiff.[10]

46.     Dan and Jake have consistently called for listeners to keep listening to The Ticket or even "listen more."[11] In direct contrast to Plaintiff's claim that Dan and Jake disparaged the on-air talent that took over their time slot on The Ticket, they were actually enormously complimentary of these entertainers who are also their close friends.[12]

---

[10] Dan's contract contains no non-disparagement clause, but he has also chose to take the high road.

[11] Keep listening to The Ticket https://www.dropbox.com/scl/fi/cd0quwd0tgi7visj1x0yy/7-20-2-keep-listening-to-the-ticket.mp3?rlkey=4aqkk8v3t2516js23a33cawk0&dl=0

[12] Dan and Jake comments on new lineup https://www.dropbox.com/scl/fi/98z609mz5n9yscrqsjg99/8-1-1-opinion-of-new-lineup.mp3?rlkey=bbri1wtkhrm0vq0u54n9k08qj&dl=0

47.     Dan and Jake's farewell YouTube broadcast was very respectful of The Ticket and done with the prior knowledge of Dan Bennett.[13]

48.     Dan and Jake have uniformly described the end of their contract negotiations with Plaintiff in businesslike terms not designed to harm Plaintiff in any way.[14]

*Dan and Jake Have Not Solicited Advertisers or Employees of Plaintiff*

49.     This is one of the most baffling of Plaintiff's claims. Jake has not spoken to any of Plaintiff's advertisers since leaving his employment, and his only contact with Plaintiff's employees has been to say goodbye or for other personal reasons. He hasn't asked anyone to leave The Ticket.

50.     Dan has spoken to Plaintiff's advertisers for personal reasons, but he has not solicited their advertising nor sought to interfere with their relationship with Plaintiff. In fact, on two occasions, he encouraged advertisers to continue their relationships with The Ticket. He also has not asked any of Plaintiff's employees to leave employment.

*Dan and Jake Neither Infringe any Valid Trademark nor Cause Confusion in the Marketplace*

51.     As discussed above, the name The Dumb Zone is not associated with The Hang Zone, is dissimilar from The Hang Zone, and is too generic to be a protectable mark.

52.     As for confusion in the marketplace, the audio linked in the complaint, herein, and in Dan and Jake's declarations conclusively demonstrates that no one on earth could be confused. By not accepting advertising, Dan and Jake cannot confuse

---

[13] Farewell https://www.dropbox.com/scl/fi/r5sutl6wna6iyjarfrqdg/7-20-0-Dan-and-Jake-Ticket-goodbye-FULL.mp3?rlkey=xvivlosymu4eo5k9rdfvwmqzu&dl=0
[14] All parties will be good https://www.dropbox.com/scl/fi/ldlmpdx75468ckor8pjwu/7-20-3-all-parties-will-be-fine.mp3?rlkey=8qm9yzot8d93bxxbjy3oaw5qb&dl=0 and we part on good terms https://www.dropbox.com/scl/fi/6v5ctiq7zugvelhntjvvw/7-20-1-we-part-on-good-terms.mp3?rlkey=0315abdyfll5lgapnwjvqscu9&dl=0

advertisers. By detailing over the course of long discussions their reasons for leaving The Ticket and the process it followed, Dan and Jake have made listeners to The Dumb Zone all too aware that it is not associated with Plaintiff.

Standard for Injunctive Relief

53.     There are four prerequisites for the extraordinary relief of preliminary injunction or temporary restraining order. A court may grant such relief only when the movant establishes that:

> (1) There is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the defendant; and (4) the granting of the preliminary injunction will not disserve the public interest.

*Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir.1987) citing *Canal Auth. of the State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) (*en banc*).

54.     The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order or preliminary injunction can be granted. *Mississippi Power and Light Co. v. United Gas Pipeline*, 760 F.2d 618, 621 (5th Cir. 1985); *Clark*, 812 F.2d at 993. Otherwise stated, if a party fails to meet *any* of the four requirements, the court cannot grant the temporary restraining order or preliminary injunction. *See Medlin v. Palmer,* 874 F.2d 1085, 1091 (5th Cir. 1989).

55.     A movant seeking to show irreparable harm must show that: (a) harm to the movant is imminent; (b) the injury would be irreparable; and (c) the movant has no other

adequate legal remedy. *Mannatech, Inc. v. Wellness Quest, LLC*, Civ. Action No. 3:14-CV-2497-K, 2014 WL 11515729, at *1 (N.D. Tex. Nov. 4, 2014) (Kinkeade, J.) (citing *Conlay v. Baylor Coll. of Med.*, Civ. Action No. H-08-1038, 2010 WL 774162, at *5 (S.D. Tex. Mar. 3, 2010)).

56.     For purposes of injunctive relief, an adequate remedy at law exists when the situation sought to be enjoined is capable of being remedied by legally measurable damages. *Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 848 (5th Cir. 2004).

57.     Loss of income, compensable after trial on the merits, or financial distress, does not constitute irreparable injury. *Dig. Generation, Inc. v. Boring*, 869 F. Supp. 2d 761, 781 (N.D. Tex. 2012) (Lindsay, J.) (citing *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). The "exception to [this] general rule that damages cannot be compensable in monetary relief . . . applies only in cases 'where the potential economic loss is so great as to threaten the existence of the movant's business' or where a business 'would suffer a substantial loss of business and perhaps even bankruptcy' absent injunctive relief." *Id.* (quoting *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975)). Loss of customers or goodwill is only an irreparable harm when the movant shows that the loss cannot be measured in money damages. *Id.* at 778 (citing *Millennium Rests. Grp., Inc. v. City of Dallas*, 181 F. Supp. 2d 659, 666 (N.D. Tex. 2001) (Fish, J.)).

58.     A party requesting a temporary restraining order must show reasonable diligence in presenting his or her request. *Stacy v. JPMorgan Chase Bank, N.A.*, No. 3:19-cv-446-M-BN, (N.D. Tex. 2020) citing *Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018).

*Plaintiff is Unlikely to Prevail on the Merits at Trial*

59.     The Court will see below that the Plaintiff's causes of action sounding in contract are all preempted and subject to the exclusive jurisdiction of the NLRB, but Plaintiff cannot demonstrate a likelihood of success on the merits regardless because Dan and Jake simply have not violated any enforceable provision of a valid contract.

60.     Plaintiff cannot demonstrate a likelihood of success on the merits on its statutory and tort claims because Dan and Jake's words and actions do not satisfy the elements of those claims. They haven't converted anything, they haven't diverted business, they are not infringing any trademark, and no consumer or advertiser on earth is confused about whether they still work for Plaintiff.

*Garmon* Preemption and the NLRB's Exclusive Jurisdiction

61.     As will be obvious to the Court, Defendants' briefing and argument on preemption will later be urged as a 12(b)(1) motion along with Defendants' other 12(b) pleadings. It is presented here in the context of Plaintiff's applications for temporary restraining order and preliminary injunction for the purpose of demonstrating that any injunctive relief in this case would disserve the public and that Plaintiff has other adequate remedies at law through the NLRB process.

*Unfair Labor Practices Generally*

62.     Section 7 of the NLRA provides that "[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. The NLRA protects these Section 7 rights by making it an "unfair labor practice for an employer to interfere with, restrain, or coerce employees in the exercise of the rights

guaranteed in section [7]" and empowering the NLRB "to prevent any person from engaging in any unfair labor practice." 29 U.S.C. § 158(a)(1); 29 U.S.C. § 160(a).

63.    The NLRB's process for preventing unfair labor practices begins when an individual files a charge alleging that an unfair labor practice has occurred "with the Regional Director for the Region in which the alleged violations have occurred or are occurring." 29 C.F.R. § 101.2. Once the charge is filed, the charging party promptly provides evidence in support of the charge and a member of the Region's field staff is assigned to investigate the charge. 29 C.F.R. § 101.4. If, after investigation, the Regional Director determines that the charge has merit, the Regional Director typically "institutes formal action by issuance of a complaint and notice of hearing." 29 C.F.R. § 101.8. However, if the case involves "novel and complex issues," the Regional Director "must submit the case for advice from the General Counsel before issuing a complaint." 29 C.F.R. § 101.8. After a complaint is issued, an administrative law judge ("ALJ") holds a hearing where the ALJ listens to evidence and testimony relevant to the complaint and then subsequently issues a decision and recommended order in the case. 29 C.F.R. §§ 101.10-101.11. The parties may file "exceptions" to the ALJ's decision and recommended order to the Board. 29 C.F.R. § 101.12. If a party files exceptions, then the Board hears those exceptions prior to issuing its own decision and order in the case. 29 C.F.R. § 101.12(a). If a party does not file exceptions, then the ALJ's decision and recommended order  "automatically become the decision and order of the Board." 29 C.F.R. § 101.12(b).

64.    Periodically, the General Counsel of the NLRB publishes memorandums outlining certain types of unfair labor practice charges that Regional Directors must submit to the

General Counsel for advice pursuant to the process outlined in 29 C.F.R. § 101.8. *See, e.g.*, Subject: Mandatory Submissions to Advice, Memorandum GC 21-04, 2021 WL 3662454 (Aug. 12, 2021); Subject: Electronic Monitoring and Algorithmic Management of Employees Interfering with the Exercise of Section 7 Rights, Memorandum GC 23-02, 2022 WL 16646853 (Oct. 31, 2022). These memorandums indicate areas of Board law that the General Counsel wants to modify or develop by processing a relevant case through the Board process described above. In some cases, the General Counsel's memorandums even outline the precise legal position that the General Counsel intends to take on the kinds of cases that the General Counsel is requiring Regional Directors to submit for advice. *See, e.g.,* Subject: Non-Compete Agreements That Violate the National Labor Relations Act, Memorandum GC 23-08, 2023 WL 3750775 (May 30, 2023).

*Garmon Preemption Generally*

65.    After the NLRA was enacted, the NLRB's sweeping power to prevent unfair labor practices "inevitably gave rise to difficult problems of federal-state relations." *San Diego Bldg. Trades Council, Millmen's Union, Loc. 2020 v. Garmon*, 359 U.S. 236, 239 (1959). All kinds of state regulation came into conflict with the Board's application of the NLRA, often in idiosyncratic and unanticipated ways, generating frequent litigation about how to resolve these conflicts. *Id*. at 240-241.

66.    The Supreme Court resolved this problem in *Garmon* by declaring that "[w]hen an activity is arguably subject to [Section] 7 or [Section] 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board." *Id*. at 245. In order to establish that *Garmon* preemption applies, "a

party asserting pre-emption must advance an interpretation of the [NLRA] that is not plainly contrary to its language and that has not been 'authoritatively rejected' by the courts or the Board" and must then "put forth enough evidence to enable the court to find that the Board reasonably could uphold a claim based on such an interpretation." *Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Loc. Union No. 174*, 143 S. Ct. 1404, 1411 (2023) (quoting *Int'l Longshoremen's Ass'n, AFL-CIO v. Davis*, 476 U.S. 380, 395 (1986)). "If the court determines that the party has met its burden to show that 'there is an arguable case for pre-emption,' it generally must grant the party's preemption defense and await the Board's resolution of the legal status of the relevant conduct. After that, 'only if the Board decides that the conduct is not protected or prohibited [by the NLRA] may the court entertain the litigation.'" *Ibid.* (quoting *Int'l Longshoremen's Ass'n, AFL-CIO v. Davis*, 476 at 397 (1986)) (internal citations omitted).

*The Non-Compete and Coworker Non-Solicitation Provisions are Subject to Garmon Preemption*

67.     In Memorandum GC 23-08, titled "Non-Compete Agreements that Violate the National Labor Relations Act," the General Counsel of the NLRB declared that, in her view, "carrying out concerted threats to resign or otherwise concertedly resigning to secure improved working conditions," "concertedly seeking or accepting employment with a local competitor to obtain better working conditions," and "soliciting [one's] co-workers to go work for a local competitor as part of a broader course of protected concerted activity" are "protected under Section 7 of the Act." 2023 WL 3750775 at *2. The General Counsel also declared that, in her view, "the proffer, maintenance, and enforcement of a non-compete provision that reasonably tends to chill employees from engaging in Section 7 activity as described above violate Section 8(a)(1) unless the

provision is narrowly tailored to special circumstances justifying the infringement on employee rights. In this regard, a desire to avoid competition from a former employee is not a legitimate business interest that could support a special circumstances defense." *Id*. at *2. The memorandum concludes by directing the NLRB "Regions [to] submit to Advice cases involving non-compete provisions that are arguably unlawful under the analysis summarized herein."

68.    This memorandum makes it clear that Defendants' concerted resignation, concerted pursuit of employment through a podcast, and soliciting of one another to work for that podcast are arguably protected activity under Section 7 of the NLRA and that Plaintiffs maintenance and enforcement of the non-compete provision and non-solicitation provision is arguably a violation of Section 8(a)(1) of the NLRA. The fact that the General Counsel of the NLRB is stating this in a guidance memorandum also indicates that the NLRB will likely issue a complaint in the unfair labor practice charges that the Defendants have already filed with the NLRB and that the Board reasonably could uphold a claim based on this interpretation. Accordingly, *Garmon* preemption applies and the Plaintiffs claims based on these two provisions should be dismissed.

*The Confidentiality and Non-Disparagement Provisions are Subject to Garmon Preemption*

69.    Section 7 of the NLRA "protects employee communications to the public that are part of and related to an ongoing labor dispute." *Valley Hospital Medical Center, Inc.*, 351 NLRB 1250, 1252 (2007) (citing *Allied Aviation Service Co. of New Jersey, Inc*., 248 NLRB 229, 231 (1980). These rights "are not limited to discussions with coworkers, as they do not depend on the existence of an employment relationship between the

employee and the employer, and the Board has repeatedly affirmed that such rights extend to former employees." *Mclaren Macomb*, 372 NLRB No. 58, slip op. at 7 (Feb. 21, 2023). These rights "extend to employee efforts to improve terms and conditions of employment or otherwise improve their lot as employees through channels outside the immediate employee-employer relationship," including through "newspapers, the media, social media, and communications to the public." *Id*.

70.    "Employee critique of employer policy pursuant to the clear right under the Act to publicize labor disputes is subject only to the requirement that employees' communications not be so "disloyal, reckless or maliciously untrue as to lose the Act's protection." *Id*. at 9 (quoting *Emarco, Inc*., 284 NLRB 832, 833 (1987)). Communications are considered disloyal enough to lose protection when they are made with a "malicious motive" and constitute "a sharp, public, disparaging attack upon the quality of the company's product and its business policies."   *Richboro Community Mental Health Council*, 242 NLRB 1267, 1268 (1979); *Valley Hospital Medical Center, Inc*., 351 NLRB at 1252 (citing *NLRB v. Electrical Workers Local 1229 (Jefferson Standard)*, 346 U.S. 464, 472 (1953)). Communications are considered maliciously untrue "if they are made with knowledge of their falsity or with reckless disregard for their truth or falsity." *Valley Hospital Medical Center, Inc*., 351 NLRB at 1252. "The mere fact that statements are false, misleading or inaccurate is insufficient to demonstrate that they are maliciously untrue." Id at 1253. Communication "that is otherwise proper does not lose its protected status simply because [it is] prejudicial to the employer." *Hacienda De Salud-Espanola*, 317 NLRB 962, 966 (1995) (quoting *NLRB v. Circle Bindery*, 536 F.2d 447, 452 (1st Cir. 1976)).

71.     Based on this well-settled Board law, Defendants' communications to the public through The Dumb Zone podcast about their labor dispute with Plaintiff are arguably protected activity under Section 7 of the NLRA and Plaintiff's effort to enjoin these communications should be dismissed under *Garmon* preemption.

72.     Additionally, maintaining and enforcing work rules and contractual provisions that have a "reasonable tendency to chill employees from exercising their Section 7 rights" presumptively violates Section 8(a)(1) of the NLRA. *Stericycle, Inc.*, 372 NLRB No. 113, slip op. at 2. (August 2, 2023). This presumption may be rebutted by "proving that the rule advances a legitimate and substantial business interest and that the employer is unable to advance that interest with a more narrowly tailored rule." *Id*. Overbroad non-disparagement clauses and confidentiality clauses that, by their terms, would prevent employees from exercising their Section 7 rights by speaking out publicly about their workplace violate Section 8(a)(1) of the NLRA. *Mclaren Macomb*, 372 NLRB No. 58, slip op. 8 (Feb. 21, 2023) (employer's "nondisparagement and confidentiality provisions interfere with, restrain, or coerce employees' exercise of Section 7 rights" and thereby "violated Section 8(a)(1) of the Act.").

73.     Defendants have already filed unfair labor practice charges alleging that the maintenance and enforcement of the non-disparagement and confidentiality provisions at issue in this case violate Section 8(a)(1) of the NLRA. Based on these authorities, it is clear that these contractual provisions at least arguably violate Section 8(a)(1) of the NLRA and that the Board reasonably could uphold a claim based on that interpretation. Accordingly, *Garmon* preemption applies and the Plaintiff's claims based on these two provisions should be dismissed.

*The Unauthorized Recording Handbook Rule is Subject to Garmon Preemption*

74.    Dan and Jake did not make recordings of any co-workers, and the Court can determine from the recordings linked in their declarations that the alleged recordings were a joke.[15] But if they had recorded co-workers, this is protected activity under Section 7.

75.    "Photography and audio or video recording in the workplace, as well as the posting of photographs and recordings on social media, are protected by Section 7 if employees are acting in concert for their mutual aid and protection and no overriding employer interest is present." *Whole Foods Market., Inc.*, 363 NLRB 800, 802 (2015). "Such protected conduct may include … documenting and publicizing discussions about terms and conditions of employment, documenting inconsistent application of employer rules, or recording evidence to preserve it for later use in administrative or judicial forums in employment-related actions." *Id*. No-recording rules that "unqualifiedly prohibit all workplace recording … reasonably chill employees in the exercise of their Section 7 rights" and are thereby violations of Section 8(a)(1) of the NLRA. Id. at 803. This is true even where state law has made secret recordings illegal. *Starbucks Corp.*, 372 NLRB No. 50, slip op. at 7 (Feb. 13, 2023) (citing *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 244 (1959)). See also *Stericycle, Inc.*, 372 NLRB No. 113, slip op. at 19 (Aug. 2, 2023). Texas is a one-party consent state. Tex. Penal Code § 16.02.

76.    Based on these authorities, had Defendants recorded conversations with other employees during contract negotiations, those recordings would be arguably protected activity under Section 7 of the NLRA. Also based on these authorities, Plaintiff's

---

[15] Joke about recording calls https://www.dropbox.com/scl/fi/vukmyknuaacic0qfcxpc2/7-20-5-Jake-joke-about-recording-calls-SHORT.mp3?rlkey=qleie68qp20zew6jf9nv8vxgt&dl=0

maintenance and enforcement of the no-recording rule arguably violates Section 8(a)(1) of the NLRA. Defendants have already filed unfair labor practice charges based on this no-recording rule and the Board reasonably could uphold their claim. Accordingly, *Garmon* preemption applies and the Plaintiff's claims based on the no-recording provisions should be dismissed.

77.    As the Court can see, the majority of the claims of the complaint are subject to the exclusive jurisdiction of the NLRB. The Court should not attempt to exercise jurisdiction over them even for the purpose of emergency relief.

78.    As for the remainder of Plaintiff's claims, it has wholly failed in its burden to show the likelihood of success at trial. Its sworn facts alleged to support emergency relief are comprehensively debunked by Defendants' sworn statements and evidence. Its attempt to obtain *ex parte* relief from this Court so many days after filing its application without any attempt at notice to Defendants and despite having their counsel's contact information is extremely troubling.

79.    But even if Plaintiff could overcome these obstacles, it simply does not have any credible allegation of irreparable harm. It has not even alleged that the damage to its business would be severe, much less force it into bankruptcy.

Respectfully submitted,

/s/ Philip Kingston
Texas State Bar No. 24010159

SHEILS WINNUBST  PC

1701 N. Collins, 1100 Atrium II
Richardson, Texas 75080
(214) 642-1707
philip@sheilswinnubst.com

Matthew Bruenig (pro hac vice pending)
District of Columbia Bar No. 1045571
124 4th St.
Stamford, Connecticut 06905
(857) 540-1205
matthewbruenig@gmail.com

ATTORNEYS FOR DEFENDANTS

26

## DECLARATION OF DAN MCDOWELL

Jake Kemp and I have been publishing a video and audio recorded entertainment program called The Dumb Zone since July 20th, 2023, not before we left Plaintiff's employment as alleged in the complaint.

The Dumb Zone's only source of revenue is monthly subscriptions from viewers and listeners. It accepts no advertising, and we have not attempted to sell advertising.

I have not contacted Plaintiff's advertisers to sell advertising nor to interfere with their relationships with Plaintiff. In fact, I strongly encouraged two advertisers who contacted me to maintain their advertising with The Ticket.

The Dumb Zone has no live audience. It is simply released as a recorded program. Therefore, it cannot take calls from fans, break news, provide a traffic or weather report, or do any of the other temporal activities that live, terrestrial radio does.

The Dumb Zone does not occur at any specific time. It is not published daily or even on five consecutive work days. There is nothing about The Dumb Zone that prevents or discourages listeners from listening to The Ticket at any time. To the contrary, Ticket listeners choose to listen to The Ticket based on the content The Ticket broadcasts.

The Dumb Zone is sometimes recorded remotely from far outside of the geographic restrictions of my employment contract restrictive covenants.

For many years, I have helped pay for the production of The Hang Zone Weekly Wrap-up Podcast and The BaD Radio Weekly Wrap-up Podcast including employing a contractor producer. I funded this promotional activity to benefit Plaintiff's business with no compensation from Plaintiff. Plaintiff refused to contribute when requested.

Plaintiff alleges that it owns 1) the name "The Dumb Zone," 2) The Dumb Zone logo, 3) thehangzone.com website, and 4) The Dumb Zone social media accounts. All these allegations are false.

The name "The Dumb Zone" originated from a humorous play on the name of mine and Jake's former show called The Hang Zone. It was used by on-air personalities to preface a question or statement that might make the speaker sound dumb. It was not a segment of the show; it was never owned, promoted, or otherwise used by Plaintiff; it is not protected by trademark.

The Hang Zone logo was created by a listener to that show who created the logo by using the movie poster image from the art house cinema feature "House Party" starring Christopher "Kid" Reid and Christopher "Play" Martin of the hip hop group Kid 'n' Play. Kid has made many appearances on The Hang Zone and its predecessor show and performed voice acting for The Hang Zone.

EX A



Here is the listener created logo for The Hang Zone:



And here is The Dumb Zone logo created by another listener:



Plaintiff never owned, promoted, or otherwise used either of these logos.

Plaintiff claims to own the website thehangzone.com. In fact, over the years I was forced to buy multiple website urls and pay for the hosting fees for the websites and the promotional material I published for Plaintiff's benefit because Plaintiff would not.

EX A

Over many years, I and my previous broadcast partner Bob Sturm paid not only for the websites and their operation, we paid from our own funds to hire a contractor for the editing, production, and publishing of "The BaD Radio Weekly Wrap-up Podcast" and "The Hang Zone Weekly Wrap-up Podcast," which were expensive exercises meant only to benefit Plaintiff's business. Jake later did the same with The Hang Zone. Plaintiff repeatedly refused to contribute to these promotional exercises, which we were under no obligation to perform.

The X (formerly Twitter) account now branded "@thedumbzone" is my personal account created in March of 2011 and used by me to promote personal topics, share humorous videos unrelated to Plaintiff, and also to promote my work for Plaintiff.

Plaintiff has never owned, used, or had access to this X account. It does not have the password for the account and never acquired or attempted to acquire the account from me, its sole owner.

Instead, Plaintiff operates its own popular X account with seven times the followers of my personal account. Plaintiff actively uses the account currently branded "@dfwticket" where it requires its employees to post promotional material for the radio station.

I was never under any obligation to promote Plaintiff's business on my personal X account. Instead, Plaintiff placed this in my employment contract:

> **2.4    Social Media Platforms.** During the Employment Period, the Employee, as directed by the Company, shall use and operate the designated Company owned social media platforms in furtherance of the Job Duties hereunder for the sole and exclusive benefit of the Company.  In all cases Employee shall not use broadcast tools or content, or the Station's promotional tools, including but not limited to, Company owned and controlled social media platforms to promote and further the Employee's separate and independent controlled social media platforms, unless approved in writing by the Company.

Plaintiff never provided a "Company owned social media platform" to me or Jake.

The Dumb Zone YouTube channel is my personal channel. Plaintiff has never owned, used, or had access to this channel. It does not have the password for the account and never acquired or attempted to acquire the channel from me, its sole owner.

Plaintiff claims that Defendants converted Plaintiff's Facebook account, but a search of Facebook shows The Ticket's account still active and still presumably operated by Plaintiff:



<span style="color:red">EX A</span>

Similarly to the other social media accounts Plaintiff has falsely claimed to own, I created a Facebook account years ago for personal use as well as promoting Plaintiff's business. Plaintiff never owned, promoted, or otherwise used this account and has never had access to it.

I do not possess any property belonging to Plaintiff, and I have no way to access websites or social media accounts owned by Plaintiff.

Since leaving Plaintiff's employment, I have meticulously avoided making disparaging comments about Plaintiff or its employees. The recordings cited by Plaintiff as disparaging are simple, factual statements that are all true. In fact, the majority of what I have said about Plaintiff and its station has been positive.[1]

In November of 2021, Jake Kemp, Corby Davidson, Bob Sturm, and I (all on-air hosts at The Ticket) had a meeting with Dan Bennett and Jeff Catlin, management at The Ticket. At this meeting, we expressed our interest in collectively having the end of each show pairing's (Kemp/McDowell, Sturm/Davidson) contracts expire simultaneously to let us negotiate in a more concerted manner. We were told at this meeting by Bennett that we were prohibited from discussing the particulars of our contracts with one another.

Further, in May of 2023, Kemp and I became aware of a series of "compensation memos" that were issued to a number of our junior co-workers. These memos were issued to employees who were simply receiving promotions. In a normal course of action, these employees would just have their base pay changed. In this case, however, these employees were asked to sign agreements that included non-competition clauses for employees making as little as $27,000.

Matt Bermingham and DJ Riggenberg personally attested to myself and Jake Kemp that they were told that if they did not sign these documents, they would not receive their pay increase. Kemp and myself have viewed these documents

In April of 2020 as the pandemic began, all "hosts" at The Ticket agreed to take a pay reduction to help keep company business as profitable as possible. I did this because I believed it was the best decision to help The Ticket and Cumulus.

---

[1] Keep listening to The Ticket https://www.dropbox.com/scl/fi/cd0quwd0tgi7visj1x0yy/7-20-2-keep-listening-to-the-ticket.mp3?rlkey=4aqkk8v3t2516js23a33cawk0&dl=0; Dan and Jake comments on new lineup https://www.dropbox.com/scl/fi/98z609mz5n9yscrqsjg99/8-1-1-opinion-of-new-lineup.mp3?rlkey=bbri1wtkhrm0vq0u54n9k08qj&dl=0; Farewell https://www.dropbox.com/scl/fi/r5sutl6wna6iyjarfrqdg/7-20-0-Dan-and-Jake-Ticket-goodbye-FULL.mp3?rlkey=xvivlosymu4eo5k9rdfvwmqzu&dl=0; All parties will be good https://www.dropbox.com/scl/fi/ldlmpdx75468ckor8pjwu/7-20-3-all-parties-will-be-fine.mp3?rlkey=8qm9yzot8d93bxxbjy3oaw5qb&dl=0 and we part on good terms https://www.dropbox.com/scl/fi/6v5ctiq7zugvelhntjvvw/7-20-1-we-part-on-good-terms.mp3?rlkey=0315abdyfll5lgapnwjvqscu9&dl=0

EX A

I have filed claims with the general counsel's office of the National Labor Relations Board regarding the issues raised in Plaintiff's Complaint. I am cooperating in that investigation. My claim materials are attached as Exhibit 1.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 10th, 2023, in Southlake, Texas, USA.


_Dan McDowell_
Dan McDowell

EX A




**UNITED STATES GOVERNMENT**
**NATIONAL LABOR RELATIONS BOARD**

REGION 16
819 Taylor Street, Room 8A24
Fort Worth, TX 76102-6107

Agency Website: www.nlrb.gov
Telephone: (817)978-2921
Fax: (817)978-2928

Download
NLRB
Mobile App

July 28, 2023

DANIEL RYAN MCDOWELL
961 THOUSAND OAKS CT
SOUTHLAKE, TX 76092

Re: Susquehanna Radio LLC
Case 16-CA-322654

DEAR MR. MCDOWELL:

The charge that you filed in this case on July 27, 2023 has been docketed as case number 16-CA-322654. This letter tells you how to contact the Board agent who will be investigating the charge, explains your right to be represented, discusses presenting your evidence, and provides a brief explanation of our procedures, including how to submit documents to the NLRB.

**Investigator:** This charge is being investigated by Field Attorney RACHEL JACKSON whose telephone number is (682)703-7218. If this Board agent is not available, you may contact Supervisory Field Attorney ROBERTO PEREZ whose telephone number is (210)417-4075.

**Right to Representation:** You have the right to be represented by an attorney or other representative in any proceeding before us. If you choose to be represented, your representative must notify us in writing of this fact as soon as possible by completing *Form NLRB-4701, Notice of Appearance*. This form is available on our website, www.nlrb.gov, or from an NLRB office upon your request.

If you are contacted by someone about representing you in this case, please be assured that no organization or person seeking your business has any "inside knowledge" or favored relationship with the National Labor Relations Board. Their knowledge regarding this proceeding was only obtained through access to information that must be made available to any member of the public under the Freedom of Information Act.

**Presentation of Your Evidence:** As the party who filed the charge in this case, it is your responsibility to meet with the Board agent to provide a sworn affidavit, or provide other witnesses to provide sworn affidavits, and to provide relevant documents within your possession. Because we seek to resolve labor disputes promptly, you should be ready to promptly present your affidavit(s) and other evidence. If you have not yet scheduled a date and time for the Board agent to take your affidavit, please contact the Board agent to schedule the affidavit(s). If you fail to cooperate in promptly presenting your evidence, your charge may be dismissed without investigation.

**Preservation of all Potential Evidence:** Please be mindful of your obligation to preserve all relevant documents and electronically stored information (ESI) in this case, and to take all steps necessary to avoid the inadvertent loss of information in your possession, custody

EX 1

or control. Relevant information includes, but is not limited to, paper documents and all ESI (e.g. SMS text messages, electronic documents, emails, and any data created by proprietary software tools) related to the above-captioned case.

**Prohibition on Recording Affidavit Interviews:** It is the policy of the General Counsel to prohibit affiants from recording the interview conducted by Board agents when subscribing Agency affidavits. Such recordings may impede the Agency's ability to safeguard the confidentiality of the affidavit itself, protect the privacy of the affiant and potentially compromise the integrity of the Region's investigation.

**Correspondence:** All documents submitted to the Region regarding your case MUST be filed through the Agency's website, www.nlrb.gov. This includes all formal pleadings, briefs, as well as affidavits, documentary evidence, and position statements. The Agency requests all evidence submitted electronically to be in the form it is normally used and maintained in the course of business (i.e., native format). Where evidence submitted electronically is not in native format, it should be submitted in a manner that retains the essential functionality of the native format (i.e., in a machine-readable and searchable electronic format).

If you have questions about the submission of evidence or expect to deliver a large quantity of electronic records, please promptly contact the Board agent investigating the charge. If you cannot e-file your documents, you must provide a statement explaining why you do not have access to the means for filing electronically or why filing electronically would impose an undue burden.

In addition, this Region will be issuing case-related correspondence and documents, including complaints, compliance specifications, dismissal letters, deferral letters, and withdrawal letters, electronically to the email address you provide. Please ensure that you receive important case-related correspondence, please ensure that the Board Agent assigned to your case has your preferred email address. These steps will ensure that you receive correspondence faster and at a significantly lower cost to the taxpayer. If there is some reason you are unable to receive correspondence via email, please contact the agent assigned to your case to discuss the circumstances that prevent you from using email.

**Controlled Unclassified Information (CUI):** This National Labor Relations Board (NLRB) proceeding may contain Controlled Unclassified Information (CUI). Subsequent information in this proceeding may also constitute CUI. National Archives and Records Administration (NARA) regulations at 32 CFR Part 2002 apply to all executive branch agencies that designate or handle information that meets the standards for CUI.

*   *   *

Information about the Agency, the procedures we follow in unfair labor practice cases and our customer service standards is available on our website, www.nlrb.gov or from an NLRB office upon your request. *NLRB Form 4541, Investigative Procedures* offers information that is helpful to parties involved in an investigation of an unfair labor practice charge.

EX 1

We can provide assistance for persons with limited English proficiency or disability. Please let us know if you or any of your witnesses would like such assistance.

Very truly yours,

TIMOTHY L. WATSON
REGIONAL DIRECTOR

Enclosure

1. Important Information About NLRB Investigations for Immigrant Workers (English & Spanish)

cc:   MATTHEW DON BRUENIG
124 4TH ST
STAMFORD, CT 06905

FORM NLRB-501
(3-21)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**CHARGE AGAINST EMPLOYER**

| | |
|---|---|
| **Case** 16-CA-322654 | **Date Filed** 7/27/2023 |

DO NOT WRITE IN THIS SPACE

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

## 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer Susquehanna Radio LLC | | b. Tel. No. (404) 949-0700 |
|---|---|---|
| | | c. Cell No. |
| | | f. Fax. No. |
| d. Address *(Street, city, state, and ZIP code)* 780 Johnson Ferry Road Suite 500 GA Atlanta 30342 | e. Employer Representative Richard S Denning General Counsel | g. e-mail richard.denning@cumulus.com |
| | | h. Number of workers employed 50 |
| i. Type of Establishment *(factory, mine, wholesaler, etc.)* Broadcasting & Cable TV | j. Identify principal product or service Radio Station | |

The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and (list subsections) 1                                      of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

| 2. Basis of the Charge *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)* |
|---|
| --See additional page-- |

| 3. Full name of party filing charge *(if labor organization, give full name, including local name and number)* Daniel Ryan McDowell | |
|---|---|
| 4a. Address *(Street and number, city, state, and ZIP code)* 961 Thousand Oaks Court TX Southlake 76092 | 4b. Tel. No. (214) 893-2348 |
| | 4c. Cell No. (214) 893-2348 |
| | 4d. Fax No. |
| | 4e. e-mail dan1310@hotmail.com |

| 5. Full name of national or international labor organization of which it is an affiliate or constituent unit *(to be filled in when charge is filed by a labor organization)* |
|---|
| |

| 6. DECLARATION I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief. | Tel. No. (857) 540-1205 |
|---|---|
| *signature* Matthew Don Bruenig | Office, if any, Cell No. (857) 540-1205 |
| *(signature of representative or person making charge)* *(Print/type name and title or office, if any)* | Fax No. |
| 124 4th St Address Stamford CT 06905                Date 07/27/2023 12:24:55 PM | e-mail matthewbruenig@gmail.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**
**PRIVACY ACT STATEMENT**

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information may cause the NLRB to decline to invoke its processes.

EX 1

## Basis of the Charge

**8(a)(1)**

Within the previous six-months, the Employer has interfered with, restrained, and coerced its employees in the exercise of rights protected by Section 7 of the Act by maintaining work rules that prevent or discourage employees from engaging in protected concerted activities.

| Work Rule |
|-----------|
| Overbroad non-compete agreement |
| Overbroad non-solicitation agreement |

EX 1

FORM NLRB-501
(3-21)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**AMENDED CHARGE AGAINST EMPLOYER**

DO NOT WRITE IN THIS SPACE

| Case | Date Filed |
|------|-----------|
|      |           |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

### 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer<br>Susquehanna Radio LLC | b. Tel. No.<br>(404) 949-0700 |
|---|---|
| | c. Cell No. |
| | f. Fax. No. |
| d. Address *(Street, city, state, and ZIP code)*<br>780 Johnson Ferry Road Suite 500<br>GA Atlanta 30342<br><br>e. Employer Representative<br>Richard S Denning<br>General Counsel | g. e-mail<br>richard.denning@cumulus.com |
| | h. Number of workers employed<br>50 |
| i. Type of Establishment *(factory, mine, wholesaler, etc.)*<br>Broadcasting & Cable TV | j. Identify principal product or service<br>Radio Station |

The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and (list subsections)   1                                                    of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

**2. Basis of the Charge** *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

Employer maintained, threatened to enforce, and attempted to enforce an overbroad non-compete provision, overbroad coworker non-solicitation provision, overbroad confidentiality provision, and an overbroad no-recording rule.

Employer filed a preempted, baseless, and retaliatory lawsuit against the charging party for engaging in Section 7 protected activity.

**3. Full name of party filing charge** *(if labor organization, give full name, including local name and number)*
Daniel McDowell

| 4a. Address *(Street and number, city, state, and ZIP code)*<br>961 Thousand Oaks Court<br>Southlake, TX 76092 | 4b. Tel. No.<br>(214) 893-2348 |
|---|---|
| | 4c. Cell No.<br>(214) 893-2348 |
| | 4d. Fax No. |
| | 4e. e-mail<br>dan1310@hotmail.com |

**5. Full name of national or international labor organization of which it is an affiliate or constituent unit** *(to be filled in when charge is filed by a labor organization)*

| 6. DECLARATION<br>I declare that I have read the above charge and that the statements<br>are true to the best of my knowledge and belief.<br><br>*Matthew Bruenig*<br>(signature of representative or person making charge)          Matthew Bruenig<br>(Print/type name and title or office, if any) | Tel. No.<br>(857) 540-1205 |
|---|---|
| | Office, if any, Cell No. |
| | Fax No. |
| Address          124 4th St, Stamford, CT 06905          Date   08/07/2023 | e-mail<br>matthewbruenig@gmail.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**
**PRIVACY ACT STATEMENT**

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information may cause the NLRB to decline to invoke its processes.

EX 1

DECLARATION OF JAKE KEMP

Dan McDowell and I have been publishing a video and audio recorded entertainment program called The Dumb Zone since July 20th, 2023, not before we left Plaintiff's employment as alleged in the complaint.

The Dumb Zone's only source of revenue is monthly subscriptions from viewers and listeners. It accepts no advertising, and we have not attempted to sell advertising.

The Dumb Zone has no live audience. It is simply released as a recorded program. Therefore, it cannot take calls from fans, break news, provide a traffic or weather report, or do any of the other temporal activities that live, terrestrial radio does.

The Dumb Zone does not occur at any specific time. It is not published daily or even on five consecutive work days. There is nothing about The Dumb Zone that prevents or discourages listeners from listening to The Ticket at any time. To the contrary, Ticket listeners choose to listen to The Ticket based on the content The Ticket broadcasts.

The Dumb Zone is sometimes recorded remotely from far outside of the geographic restrictions of my employment contract restrictive covenants.

Since being promoted to host, I have helped pay for the production of The Hang Zone Weekly Wrap-up Podcast including employing a contractor producer. I funded this promotional activity to benefit Plaintiff's business with no compensation from Plaintiff.

I do not possess any property belonging to Plaintiff, and I have no way to access websites or social media accounts owned by Plaintiff.

Since leaving Plaintiff's employment, I have meticulously avoided making disparaging comments about Plaintiff or its employees. The recordings cited by Plaintiff as disparaging are simple, factual statements that are all true. In fact, the majority of what I have said about Plaintiff and its station has been positive.[1]

Regarding the accusation made in paragraph 48 of the complaint, that I made a false statement that my pay did not increase when my position changed from "producer" to "host", my statement is verifiably accurate. When I became a host In February of 2020, my base pay was $50,000. My base pay remained the same until July of 2020. I then

---

[1] Keep listening to The Ticket https://www.dropbox.com/scl/fi/cd0quwd0tgi7visj1x0yy/7-20-2-keep-listening-to-the-ticket.mp3?rlkey=4aqkk8v3t2516js23a33cawk0&dl=0; Dan and Jake comments on new lineup https://www.dropbox.com/scl/fi/98z609mz5n9yscrqsjg99/8-1-1-opinion-of-new-lineup.mp3?rlkey=bbri1wtkhrm0vq0u54n9k08qj&dl=0; Farewell https://www.dropbox.com/scl/fi/r5sutl6wna6iyjarfrqdg/7-20-0-Dan-and-Jake-Ticket-goodbye-FULL.mp3?rlkey=xvivlosymu4eo5k9rdfvwmqzu&dl=0; All parties will be good https://www.dropbox.com/scl/fi/ldlmpdx75468ckor8pjwu/7-20-3-all-parties-will-be-fine.mp3?rlkey=8qm9yzot8d93bxxbjy3oaw5qb&dl=0 and we part on good terms https://www.dropbox.com/scl/fi/6v5ctiq7zugvelhntjvvw/7-20-1-we-part-on-good-terms.mp3?rlkey=0315abdyfll5lgapnwjvqscu9&dl=0

EX B

agreed to a new contract that increased my base pay to $80,000. However, I was not "back paid" for this time. So it is absolutely true that I worked as a host on a producer's salary for a period of five months.

When my base compensation was increased, as stated, it was increased to $80,000. After one year of producing ratings commensurate with the other hosts/shows on the station, I was initially offered no raise. After a few rounds of negotiations, I was offered a raise in pay to $85,000. At this point, I put in my two weeks' notice. After four days of absence, I was contacted via my representation at that time, Randy Bowman, and told that I was being offered a compensation package that had a base pay of $135,000. I accepted that offer.

Regarding the claim in paragraph 18 of the complaint that we secretly recorded conversations with Susquehanna employees during contract negotiations to use as content on a future show, this comment was made in jest while producing comedic content. We did not obtain these recordings; we do not possess them, and as such, we cannot release them. The joke is obvious in this true and correct recording of my comments:

https://www.dropbox.com/scl/fi/vukmyknuaacic0qfcxpc2/7-20-5-Jake-joke-about-recording-calls-SHORT.mp3?rlkey=qleie68qp20zew6jf9nv8vxgt&dl=0

In November of 2021, myself, Dan McDowell, Corby Davidson, and Bob Sturm (all on-air hosts at The Ticket) had a meeting with Dan Bennett and Jeff Catlin, management at The Ticket. At this meeting, we expressed our interest in collectively having the end of each show pairing's (Kemp/McDowell, Sturm/Davidson) contracts expire simultaneously to let us negotiate in a more concerted manner. We were told at this meeting by Bennett that we were prohibited from discussing the particulars of our contracts with one another.

Further, in May of 2023, McDowell and I became aware of a series of "compensation memos" that were issued to a number of our junior co-workers. These memos were issued to employees who were simply receiving promotions. In a normal course of action, these employees would just have their base pay changed. In this case, however, these employees were asked to sign agreements that included non-competition clauses for employees making as little as $27,000.

Matt Bermingham and DJ Riggenberg personally attested to myself and Dan McDowell that they were told that if they did not sign these documents, they would not receive their pay increase. McDowell and myself have viewed these documents

This topic of the treatment of fellow employees was the beginning of our conversation with Bennet regarding what we could do to improve the conditions for those that we work with. I mentioned these covenants in a conversation with Bennett. He expressed disbelief that these clauses were included. Since we had actually viewed the agreements, we reassured him that they were in fact present. He contacted us three days later and told us that "legal had put those clauses in there without contacting local." I asked him how

   EX B

this could happen. He said that the response from "legal" was "you didn't ask us not to put it in there."

This conversation occurred on May 29, 2023. I have been in recent contact with both Riggenberg and Bermingham regarding this specific matter, and only this specific matter. Neither have been informed that this specific clause in their "compensation memorandum" has been removed.

In April of 2020 as the pandemic began, all "hosts" at The Ticket agreed to take a pay reduction to help keep company business as profitable as possible. I took that pay reduction from my previous, producer salary. I did this because I believed it was the best decision to help The Ticket and Cumulus. For the company to now defame me in this way regarding financial matters and my future potential work is unacceptable.

I have co-hosted a podcast called It's Just Banter since March 2010. I have monetized this podcast using both paid advertisement and subscription publication for many years. Plaintiff has known of, and consented to, this activity during my entire employment with Plaintiff.

I have filed claims with the general counsel's office of the National Labor Relations Board regarding the issues raised in Plaintiff's Complaint. I am cooperating in that investigation. My claim materials are attached as Exhibit 1.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 10th, 2023, in Grapevine, Texas, USA.


Jake Kemp





**UNITED STATES GOVERNMENT**
**NATIONAL LABOR RELATIONS BOARD**

REGION 16
819 Taylor Street, Room 8A24
Fort Worth, TX 76102-6107

Agency Website: www.nlrb.gov
Telephone: (817)978-2921
Fax: (817)978-2928

Download
NLRB
Mobile App

July 28, 2023

JAKE KEMP
905 E WORTH ST
GRAPEVINE, TX 76051

Re:     Susquehanna Radio LLC
Case 16-CA-322680

DEAR MR. KEMP:

The charge that you filed in this case on July 27, 2023 has been docketed as case number 16-CA-322680. This letter tells you how to contact the Board agent who will be investigating the charge, explains your right to be represented, discusses presenting your evidence, and provides a brief explanation of our procedures, including how to submit documents to the NLRB.

**Investigator:** This charge is being investigated by Field Attorney RACHEL JACKSON whose telephone number is (682)703-7218. If this Board agent is not available, you may contact Supervisory Field Attorney ROBERTO PEREZ whose telephone number is (210)417-4075.

**Right to Representation:** You have the right to be represented by an attorney or other representative in any proceeding before us. If you choose to be represented, your representative must notify us in writing of this fact as soon as possible by completing *Form NLRB-4701, Notice of Appearance*. This form is available on our website, www.nlrb.gov, or from an NLRB office upon your request.

If you are contacted by someone about representing you in this case, please be assured that no organization or person seeking your business has any "inside knowledge" or favored relationship with the National Labor Relations Board. Their knowledge regarding this proceeding was only obtained through access to information that must be made available to any member of the public under the Freedom of Information Act.

**Presentation of Your Evidence:** As the party who filed the charge in this case, it is your responsibility to meet with the Board agent to provide a sworn affidavit, or provide other witnesses to provide sworn affidavits, and to provide relevant documents within your possession. Because we seek to resolve labor disputes promptly, you should be ready to promptly present your affidavit(s) and other evidence. If you have not yet scheduled a date and time for the Board agent to take your affidavit, please contact the Board agent to schedule the affidavit(s). If you fail to cooperate in promptly presenting your evidence, your charge may be dismissed without investigation.

**Preservation of all Potential Evidence:** Please be mindful of your obligation to preserve all relevant documents and electronically stored information (ESI) in this case, and to take all steps necessary to avoid the inadvertent loss of information in your possession, custody

EX 1

or control. Relevant information includes, but is not limited to, paper documents and all ESI (e.g. SMS text messages, electronic documents, emails, and any data created by proprietary software tools) related to the above-captioned case.

**Prohibition on Recording Affidavit Interviews:** It is the policy of the General Counsel to prohibit affiants from recording the interview conducted by Board agents when subscribing Agency affidavits. Such recordings may impede the Agency's ability to safeguard the confidentiality of the affidavit itself, protect the privacy of the affiant and potentially compromise the integrity of the Region's investigation.

**Correspondence:** All documents submitted to the Region regarding your case MUST be filed through the Agency's website, www.nlrb.gov. This includes all formal pleadings, briefs, as well as affidavits, documentary evidence, and position statements. The Agency requests all evidence submitted electronically to be in the form it is normally used and maintained in the course of business (i.e., native format). Where evidence submitted electronically is not in native format, it should be submitted in a manner that retains the essential functionality of the native format (i.e., in a machine-readable and searchable electronic format).

If you have questions about the submission of evidence or expect to deliver a large quantity of electronic records, please promptly contact the Board agent investigating the charge. If you cannot e-file your documents, you must provide a statement explaining why you do not have access to the means for filing electronically or why filing electronically would impose an undue burden.

In addition, this Region will be issuing case-related correspondence and documents, including complaints, compliance specifications, dismissal letters, deferral letters, and withdrawal letters, electronically to the email address you provide. Please ensure that you receive important case-related correspondence, please ensure that the Board Agent assigned to your case has your preferred email address. These steps will ensure that you receive correspondence faster and at a significantly lower cost to the taxpayer. If there is some reason you are unable to receive correspondence via email, please contact the agent assigned to your case to discuss the circumstances that prevent you from using email.

**Controlled Unclassified Information (CUI):** This National Labor Relations Board (NLRB) proceeding may contain Controlled Unclassified Information (CUI). Subsequent information in this proceeding may also constitute CUI. National Archives and Records Administration (NARA) regulations at 32 CFR Part 2002 apply to all executive branch agencies that designate or handle information that meets the standards for CUI.

\* \* \*

Information about the Agency, the procedures we follow in unfair labor practice cases and our customer service standards is available on our website, www.nlrb.gov or from an NLRB office upon your request. *NLRB Form 4541, Investigative Procedures* offers information that is helpful to parties involved in an investigation of an unfair labor practice charge.

EX 1

We can provide assistance for persons with limited English proficiency or disability. Please let us know if you or any of your witnesses would like such assistance.

Very truly yours,

TIMOTHY L. WATSON
REGIONAL DIRECTOR

Enclosure
    1.  Important Information About NLRB Investigations for Immigrant Workers (English & Spanish)

cc:    MATTHEW DON BRUENIG
        124 4TH ST
        STAMFORD, CT 06905

EX 1

FORM NLRB-50
(3-21)
NATIONAL LABOR RELATIONS BOARD
**CHARGE AGAINST EMPLOYER**

| Case | Date Filed |
|------|-----------|
| **16-CA-322680** | **7/27/2023** |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

## 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer  Susquehanna Radio LLC | b. Tel. No.  (404) 949-0700 |
|---|---|
| | c. Cell No. |
| | f. Fax. No. |

| d. Address *(Street, city, state, and ZIP code)*  780 Johnson Ferry Road Suite 500  GA Atlanta 30342 | e. Employer Representative  Richard S Denning  General Counsel | g. e-mail  richard.denning@cumulus.com |
|---|---|---|
| | | h. Number of workers employed  50 |

| i. Type of Establishment *(factory, mine, wholesaler, etc.)*  Broadcasting & Cable TV | j. Identify principal product or service  Radio Station |
|---|---|

The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and (list subsections) 1                                              of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

**2. Basis of the Charge** *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

--See additional page--

**3. Full name of party filing charge** *(if labor organization, give full name, including local name and number)*
Jake Kemp

| 4a. Address *(Street and number, city, state, and ZIP code)*  905 E. Worth St  TX Grapevine 76051 | 4b. Tel. No.  (817) 266-2674 |
|---|---|
| | 4c. Cell No.  (817) 266-2674 |
| | 4d. Fax No. |
| | 4e. e-mail  jkemp88@gmail.com |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit *(to be filled in when charge is filed by a labor organization)*

| 6. DECLARATION  I declare that I have read the above charge and that the statements  are true to the best of my knowledge and belief. | Tel. No.  (857) 540-1205 |
|---|---|
| MDrun | Office, if any, Cell No.  (857) 540-1205 |
| *(signature of representative or person making charge)*     Matthew Don Bruenig  *(Print/type name and title or office, if any)* | Fax No. |
| 124 4th St  Address Stamford CT 06905                    Date 07/27/2023 12:30:38 PM | e-mail  matthewbruenig@gmail.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**
**PRIVACY ACT STATEMENT**

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information may cause the NLRB to decline to invoke its processes.

EX 1

# Basis of the Charge

**8(a)(1)**

Within the previous six-months, the Employer has interfered with, restrained, and coerced its employees in the exercise of rights protected by Section 7 of the Act by maintaining work rules that prevent or discourage employees from engaging in protected concerted activities.

| Work Rule |
|---|
| Overbroad non-compete agreement |
| Overbroad non-solicitation agreement |

EX 1

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**SECOND AMENDED CHARGE AGAINST EMPLOYER**

DO NOT WRITE IN THIS SPACE

| Case | Date Filed |
|---|---|
| | |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

## 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer | b. Tel. No. |
|---|---|
| Susquehanna Radio LLC | (404) 949-0700 |

c. Cell No.

f. Fax. No.

| d. Address *(Street, city, state, and ZIP code)* | e. Employer Representative | g. e-mail |
|---|---|---|
| 780 Johnson Ferry Road Suite 500 GA Atlanta 30342 | Richard S Denning General Counsel | richard.denning@cumulus.com |

h. Number of workers employed
50

| i. Type of Establishment *(factory, mine, wholesaler, etc.)* | j. Identify principal product or service |
|---|---|
| Broadcasting & Cable TV | Radio Station |

The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and (list subsections)   1                                         of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

**2. Basis of the Charge** *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

Employer maintained, threatened to enforce, and attempted to enforce an overbroad non-compete provision, overbroad coworker non-solicitation provision, overbroad confidentiality provision, overbroad non-disparagement provision, and an overbroad no-recording rule.

Employer filed a preempted, baseless, and retaliatory lawsuit against the charging party for engaging in Section 7 protected activity.

**3. Full name of party filing charge** *(if labor organization, give full name, including local name and number)*
Jacob Kemp

| 4a. Address *(Street and number, city, state, and ZIP code)* | 4b. Tel. No. |
|---|---|
| 905 E. Worth St TX Grapevine 76051 | (817) 266-2674 |

4c. Cell No.
(817) 266-2674

4d. Fax No.

4e. e-mail
jkemp88@gmail.com

**5. Full name of national or international labor organization of which it is an affiliate or constituent unit** *(to be filled in when charge is filed by a labor organization)*

## 6. DECLARATION
I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.

*Matthew Bruenig*

*(signature of representative or person making charge)*          Matthew Bruenig

*(Print/type name and title or office, if any)*

Tel. No.
(857) 540-1205

Office, if any, Cell No.

Fax No.

Address     124 4th St, Stamford, CT 06905          Date     08/07/2023

e-mail
matthewbruenig@gmail.com

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**
**PRIVACY ACT STATEMENT**

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information may cause the NLRB to decline to invoke its processes.

EX 1