Loserville Podcast, Episode 96
Phillip Kingston and TC Flemming
August 31, 2023
Starting 2:20

**[Kingston]** Do you want an update on The Ticket?

**[Flemming]** Yeah

**[Kingston]** We were supposed to have the second setting of the preliminary injunction hearing on Tuesday, and we were very well prepped for that and low and behold late on Monday I got communication from the mediator saying I'm going to send y'all a proposal. A mediator's proposal is kind of a known entity. There's a couple of ways to do it. But in general the mediator sends the same proposal to both sides with the following rules: You've got X number of hours to agree to this; any attempt to modify the terms will be treated as a 'NO' as a hard NO on the whole thing; so nobody can make any changes, you have a limited amount of time to do it and if both parties don't say YES, neither party ever knows what the other one said.

**[Flemming]** OK

**[Kingston]** And there aren't a lot of possibilities so you don't have to be really good at game theory to figure that out. So the proposal was – involved putting off the hearing and letting my guys go back to Podcasting. There are other aspects to it that I can get into yet, although I promise on future episodes, we're going to have some discussion. I spent a couple of hours on the phone to members of Congress this afternoon. There will be a series of letters from members of Congress concerning this case.

**[Flemming]** Wow yea, that's great. That's a - good news. I was talking to a friend about this, this week. About sort of the nature of non-competes clauses in general. I wonder if in some way it's beyond the Dan and Jake piece. But just I understand the utility in some circumstances, right? If you're dealing with some super-secret business things but you know if your employer is not paying you or even the people that work for you what you feel like they are worth, you know. Why is it even legal for companies to even have workers agree to non-compete clauses over like creative endeavors?

**[Kingston]** Well it won't be much longer – [laughing by both]

**[Kingston]** This is a local politics show but you listeners know Tyler and I spend a lot of time talking state and national politics and anybody that follows us on Twitter knows that neither of us is the biggest fan of Joe Biden but, credit where its due, the dude seems to know about and care about competition in the United States. And he has appointed some of the most effective, hard charging people to the FTC and to the National Labor Relations Board and its general counsel's office which is, the, they're the ones that bring the cases. And the new GC of the NLRB is named Jennifer Abruzzo and she is not to be messed with as far as I can tell. She has advised all her regional directors, who are the people who report directly to her, that she wants to see cases like Dan and Jake's that she considers non competes against employees that do not have an ownership

interest in the business to be facially illegal under the National Labor Relations Act because they chill employees ability to act concertedly to improve the conditions of their work. Or in this case to seek better conditions of work for another employer.  Texas over the ten last year has liberalized the use of non competes and made it easier for employers to enforce them which is really starting to create a fracture in the State republic party because there is a strong strain of libertarianism especially among the judiciary on the republican side.  And, Don Willet who was on the Supreme Court that is now on the 5th Circuit wrote amazing concurrence on a non-compete case where he sets out exactly what his view of this is and his view is narrow.

**[Flemming]** Yea

**[Kingston]** He wants there only to be a non-compete when you have what you're talking about. Something that is such a critical business interest that you just have to have one.  The thing we always used in Texas is the critical business interest was trade secrets or confidential information. The employer would agree to give that stuff to employee and the employee would agree to not compete with the employer for a period of time after they left employment for the purpose of protecting that information.  Well here's the thing that you probably should not be surprised about when you're talking about radio hosts.  If a radio station had such a thing as confidential information, which it certainly does not, the people they would never ever give it to, are the people that run their mouths on the air all day.  Like

**[Flemming]** People are paid to talk.

**[Kingston]** It's just the dumbest thing. Their lawyer tried to tell me that, you know—these guys were involved in planning remotes and the planning of ticketed events.  And that those plans were confidential.  I was like..

**[Flemming]** That's a big insider secret, they're going to be at Pluckers.

**[Kingston]** Don't you tell people, don't you invite them? Yea, but before we invite them they are confidential.  That's a big insider secret.  I was like Mr. Denning, I am not having this conversation anymore.

**[Flemming]** That's an important business secret. That they're going to be at Pluckers for remote and handing out can coozies.

**[Kingston]** Anyways, that lawyers' name is Richard Denning and he is the GC of Cumulus Media. And if you want to have aneurysm you can look up his annual salary, because he is disclosed on the 10-K. Let me say, he's at least a million dollars overpaid.

**[Flemming]** I am speechless. That's a - quite an interesting take on it. We don't need to get too deep but the merits of the case, too, just like they are not going to another radio station, they aren't taking people away from listening to The Ticket just by just having a podcast. People can listen whenever.

**[Kingston]** They are, they are. You have to listen to their theory. They got a guy who does political polling who has developed a theory called the Share of Ear.

**[Flemming]** Okay.

**[Kingston]** The Share of Ear is that there are only so many hours in a day that you're going to consume audio media.

**[Flemming]** Okay.

**[Kingston]** And so, you know in fact Dan and Jake are in fact taking listeners away. Now, this is not a theory that any court is going to entertain for very long. And I don't know, I guess I should feel bad for making fun of the Tickets' legal team. But they have been such jerks, that I kinda don't.  So, yeah, it's an absolutely stupid theory and umm and I don't know. Anyway, the reason we're in this situation where we have Dan and Jake broadcasting again and we're waiting another couple of weeks before we have this hearing was ostensibly to give us time to try and settle this thing again, and maybe we will. We're going to do another mediation.  But I think part of the reason we saw it as potentially a decent agreement for us, we think the NLRB is going to take this thing over and hand us kind of a big win.