# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **SUSQUEHANNA RADIO LLC** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:23-CV-01746-S** |
| | § | |
| **JACOB KEMP and DANIEL MCDOWELL** | § | |
| | § | |
| **Defendants** | § | |

## DEFENDANTS' MOTION TO DISMISS PURSUANT
## TO RULE 12(b)(1) AND RULE 12(b)(6) AND BRIEF IN SUPPORT

Defendants present the following motion, which tolls the time to file their answers to the complaint and counterclaims.[1]

Defendants file this motion to dismiss on multiple grounds. First, Defendants seek dismissal under Rule 12(b)(1) because most of Plaintiff's claims concern activity that is arguably subject to the National Labor Relations Act and are therefore preempted by the exclusive jurisdiction of the National Labor Relations Board. Defendants initiated unfair labor practice

---

[1] Under Rule 12(a)(4), this motion to dismiss tolls the time to file Defendants answers on all claims. Out of an abundance of caution, this footnote is included in the event the Court finds this to be a partial motion to dismiss. While neither the Fifth Circuit nor this District have addressed the issue of whether a partial motion to dismiss tolls the time to file an answer on all claims, multiple districts in the Fifth Circuit have applied the majority rule, which rejects the concept of piecemeal litigation and holds that a partial motion to dismiss does toll the answer deadline. *See Montgomery v. Logsdon*, No. 20-756, 2020 WL 13802092, *2 (E.D. La. Nov. 12, 2020) (citing and quoting *Bertaut v. Parish of Jefferson*, Civ. Action No. 02-2104, 2002 WL 31528468, at *1 (E.D. La. Nov. 8, 2002) ("A defendant may file a motion to dismiss and await its disposition before filing an answer. Even the filing of a partial motion to dismiss extends the defendant's time to answer the entire complaint.")); *Iraheta v. Equifax Info. Svcs., LLC*, No. 5:17-cv-1363, 2018 WL 3381419, *1-2 (W.D. La. July 10, 2018); *Banik v. Thompson*, No. 7:16-CV-00462, 2017 WL 11713709, *2 (S.D. Tex. Dec. 11, 2017) ("The Fifth Circuit does not appear to have squarely addressed the question whether a motion for partial dismissal triggers Rule 12(a)(4) tolling of time for the defendant to answer, but almost all existing authority indicate that it does.16 The only outlier is an outdated, non-binding district case from Michigan that no court has subsequently followed.17 Under these circumstances, this Court is persuaded that Defendant's time to answer was tolled under Rule 12(a)(4), and ultimately that his answer was valid as a matter of course."); *Darden v. Mario Sinacola & Sons Excavating, Inc*., No. 4:17-cv-00389, *2 (E.D. Tex. Sept. 20, 2017); *see also* Wright & Miller, Federal Practice and Procedure, 5B Fed. Prac. & Proc. Civ. § 1346, n. 17, 18 (3d ed.).

charges at the NLRB based on this activity on July 27, 2023, before this suit was filed.[2] Thus, this Court currently lacks subject matter jurisdiction.

Second, Defendants seek dismissal under Rule 12(b)(6) because Plaintiff failed to state a claim for which relief can be granted.

Alternatively, in the event the Court does not dismiss Plaintiff's claims, Defendants move for a more definite statement under Rule 12(e).

Respectfully submitted,

*/s/ Philip Kingston*

| | |
|---|---|
| **Philip Kingston** | **Matthew Bruenig** |
| Texas Bar No. 24010159 | District of Columbia Bar No. 1045571 |
| Sheils Winnubst PC | (admitted *pro hac vice*) |
| 1701 N. Collins, 1100 Atrium II | 124 4th St. |
| Richardson, Texas 75080 | Stamford, Connecticut 06905 |
| (214) 642-1707 | (857) 540-1205 |
| philip@sheilswinnubst.com | matthewbruenig@gmail.com |
| **Frank G. Cawley** | **Elizabeth F. Griffin** |
| Texas Bar No. 24006978 | Texas Bar No. 24092450 |
| Cawley Law LLC | Clark Hill PLC |
| 2591 Dallas Parkway, Suite 300 | 901 Main Street, Suite 6000 |
| Frisco, TX 75034 | Dallas, Texas 75202 |
| (469) 259-2221 | 214-651-4300 |
| frank@cawleylawgroup.com | 214-659-4330 (Fax) |
| | egriffin@clarkhill.com |

**ATTORNEYS FOR DEFENDANTS**

---

[2] Defendants' Charging Party letters attached as **Exhibits A and B**; Defendants' amended charges attached as **Exhibits C and D**.

## <u>TABLE OF CONTENTS</u>

I.   Standards of Review ..............................................................................................11

    A.   Rule 12(b)(1) .............................................................................................11

    B.   Rule 12(b)(6) Dismissal Standard .............................................................12

    C.   Rule 12(e) Standard for More Definite Statemen ......................................13

II.   Arguments & Authorities ......................................................................................13

    A.   *Garmon* preemption deprives the Court of subject matter jurisdiction and necessitates dismissal under Rule 12(b)(1) ...............................................13

        i.   Unfair Labor Practices ...................................................................14

        ii.   *Garmon* Preemption ......................................................................17

        iii.   Coercive Rules ..............................................................................19

        iv.   The no-recording rule is subject to *Garmon* preemption ........................24

        v.   The confidentiality rule is subject to *Garmon* preemption ......................27

        vi.   The non-disparagement clause is subject to *Garmon* preemption ...........29

        vii.   The coworker non-solicitation clause is subject to *Garmon* preemption ..33

        viii.   The non-compete clauses are subject to *Garmon* preemption .................38

        ix.   Public Policy Underlying *Garmon* ........................................................41

    B.   Dismissal is warranted under Rule 12(b)(6) because Texas does not recognize a cause of action for conversion of intangible property .........................................44

    C.   Plaintiff's conclusory allegations against Defendants warrant dismissal under Rule 12(b)(6). Alternatively, Plaintiff should be required to provide a more definite statement pursuant to Rule 12(e) ...........................................45

III.   Conclusion ...........................................................................................................49

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abell Engineering.*,
   338 NLRB 434 (2002)................................................................................32

*Academy of Skills & Knowledge, Inc. v. Charter Sch., USA, Inc.*,
   260 S.W.3d 529 (Tex. App.—Tyler 2008, pet. denied) ........................................42

*Allied Aviation Service Co. of New Jersey, Inc.*,
   248 NLRB 229 (1980)................................................................................28

*Arlington Electric*,
   332 NLRB 845 (2000)................................................................................32

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................ 10, 42, 43

*AT&T Mobility*
   . 370 NLRB No. 121, slip op. at 7 (2021) ...........................................................20

*Beardmore v. Jacobsen*,
   131 F. Supp. 3d 656 (S.D. Tex. 2015)................................................................41

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................ 11, 42, 43

*Boeing Airplane Company*,
   110 NLRB 147 (1954)................................................................................32

*Boeing Co.*,
   365 NLRB No. 154 (2017) .................................................................. 19, 20, 21

*Brown v. ASC Mortgage/U.S. Bank Nat. Ass'n ex rel. Structured Asset Inv. Loan Trust*,
   No. 4:15-CV-547-A, 2015 WL 5559441 (N.D. Tex. Sept. 18, 2015) ...................................43

*Carson v. Dynegy, Inc.*,
   344 F.3d 446 (5th Cir. 2003) .......................................................................44

*Cemex Construction Materials Pacific, LLC*,
   372 NLRB No. 130 (Aug. 25, 2023)...................................................................22

*Chyba v. EMC Mortgage Corp.*,
   450 F. App'x 404 (5th Cir. 2011)....................................................................43

4

*City of The Colony v. N. Tex. Mun. Water Dist.*,
  272 S.W.3d 699 (Tex. App.—Fort Worth 2008, pet. dism'd)................................42

*Clark v. McDonald's Corp.*,
  213 F.R.D. 198 (D.N.J. 2003)................................................................11

*Clinton Corn Processing*,
  194 NLRB 184 (1971)..........................................................................32

*Clock Electric, Inc.*,
  338 NLRB 806 (2003)..........................................................................32

*Communications Workers of America v. NLRB*,
  6 F.4th 15 (D.C. Cir. 2021)................................................................20

*Coury v. Prot*,
  85 F.3d 244 (5th Cir. 1996)................................................................10

*Cowabunga, Inc. v. NLRB*,
  893 F.3d 1286 (11th Cir. 2018)............................................................20

*Denson v. Dallas Cty. Credit Un.*,
  262 S.W.3d 846 (Tex. App.—Dallas 2008, no pet.)..........................................42

*Dish Network, L.L.C. v. NLRB*,
  731 F. App'x 368 (5th Cir. 2018)..........................................................20

*Eastex, Inc. v. NLRB*,
  437 U.S. 556 (1978).........................................................................13

*Elsensohn v. St. Tammany Parish Sheriff's Office*,
  530 F.3d 368 (5th Cir. 2008)..............................................................42

*Emarco, Inc.*,
  284 NLRB 832 (1987).........................................................................28

*Energy Mgmt. Servs., LLC v. City of Alexandria*,
  739 F.3d 255 (5th Cir. 2014)..............................................................10

*Flagstaff Medical Center*,
  357 NLRB 659 (2011).........................................................................18

*Flex Frac Logistics, L.L.C. v. NLRB*,
  746 F.3d 205................................................................................26

*Flex Frac Logistics, LLC*,
  358 NLRB 1131 (2012)........................................................................26

*Franklin v. Jackson*,
    847 S.W.2d 306 (Tex. App.—El Paso 1992, writ denied) .................................................... 42

*G4S Secure Solutions Inc. v. NLRB*,
    707 Fed.Appx. 610 (11th Cir. 2017) .................................................................................. 19

*Glacier Northwest, Inc. v. International Brotherhood of Teamsters Local Union No. 174*,
    143 S. Ct. 1404 (2023) ............................................................................................... *passim*

*Gonzalez v. Kay*,
    577 F.3d 600 (5th Cir. 2009) ............................................................................................ 10

*Guidry v. Bank of LaPlace*,
    954 F.2d 278 (5th Cir. 1992) ............................................................................................ 10

*Gupta v. Eastern Idaho Tumor Inst.*,
    140 S.W.3d 747 (Tex. App.—Houston [14th Dist.] 2004, pet. denied)................................ 42

*Hacienda De Salud-Espanola*,
    317 NLRB 962 (1995)...................................................................................................... 29

*Howery v. Allstate Ins. Co.*,
    243 F.3d 912 (5th Cir. 2001) ............................................................................................ 10

*Jefferson v. Lead Indus. Assoc., Inc.*,
    106 F.3d 1245 (5th Cir. 1997) .......................................................................................... 10

*Johnson v. Structured Asset Servs., LLC*,
    148 S.W.3d 711 (Tex. App.—Dallas 2004, no pet.) ........................................................... 43

*International Longshoremen's Association, AFL-CIO v. Davis*,
    476 U.S. 380(1986) .......................................................................................................... 16

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*,
    668 F.3d 281 (5th Cir. 2012)............................................................................................. 10

*In re Katrina Canal Breaches Litig.*,
    495 F.3d 191(5th Cir. 2007) ............................................................................................. 10

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ......................................................................................................... 10

*Lane v. Halliburton*,
    529 F.3d 548 (5th Cir. 2008) ............................................................................................ 10

*Loehmann''s Plaza*,
    305 NLRB 663 .................................................................................................................. 34

*LogistiCare Sols., Inc. v. NLRB,*
   866 F.3d 715 (5th Cir. 2017) ........................................................................19

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,*
   594 F.3d 383 (5th Cir. 2010) .......................................................................10

*Lowes Home Centers, L.L.C. v. NLRB,*
   850 F. App'x 886 (5th Cir. 2021) ...............................................................20

*Luna-Reyes v. RFI Const., LLC,*
   57 F. Supp. 3d 495 (M.D.N.C. 2014) .........................................................11

*Lutheran Heritage Village-Livonia,*
   343 NLRB 646 (2004) .........................................................................*passim*

*M.J. Mechanical Services,*
   325 NLRB 1098, 1106 (1998) .....................................................................31

*McLaren Macomb,*
   372 NLRB No. 58, slip op. (Feb. 21, 2023) ..........................................28, 30

*MCPC, Inc.,*
   360 NLRB 216 (2014) ...........................................................................26, 28

*Midwest Division-MMC, LLC v. NLRB,*
   867 F.3d 1288 (D.C. Cir. 2017) ..................................................................19

*Neles-Jamesbury, Inc. v. Bill's Valves,*
   974 F. Supp. 979 (S.D. Tex. 1997) .............................................................41

*NLRB v. Circle Bindery,*
   536 F.2d 447 (1st Cir. 1976).......................................................................29

*NLRB v. Electrical Workers Local 1229 (Jefferson Standard),*
   346 U.S. 464 (1953)) ..................................................................................29

*NLRB v. Northeastern Land Services, Ltd.,*
   645 F.3d 475 (1st Cir. 2011).......................................................................19

*Novelis Corp. v. NLRB,*
   885 F.3d 100 (2d Cir. 2018) .......................................................................20

*Pebble Beach Co. v. Tour 18 I, Ltd.,*
   942 F. Supp. 1513 (S.D. Tex. 1996), *aff'd as modified,* 155 F.3d 526 (5th Cir.
   1998) (trade dress)......................................................................................41

*In Re Pratt (Corrugated Logistics), LLC,*
   360 NLRB 304 (2014).................................................................................29

*QIC Corporation*,
    212 NLRB 63 (1974)...................................................................................................32

*Quicken Loans, Inc*.
    359 NLRB 1201 (2013)..............................................................................................30

*Ralston Purina Co. v. McKendrick*,
    850 S.W.2d 629 (Tex. App.—San Antonio 1993, writ denied).............................42

*Ramming v. United States*,
    281 F.3d 158 (5th Cir. 2001) ...........................................................................10, 11

*Republic Aviation Corp.*,
    51 NLRB 1186 (1943), affd. 324 U.S. 793 (1945) .............................................17

*Richboro Community Mental Health Council*,
    242 NLRB 1267 (1979)..............................................................................................29

*Sacks v. Dallas Gold & Silver Exch., Inc.*,
    720 S.W.2d 177 (Tex. App.—Dallas 1986, no writ) ...........................................42

*San Diego Building Trades Council, Millmen's Union, Local 2020 v. Garmon*,
    359 U.S. 236 (1959) .......................................................................................*passim*

*Spear Mktg., Inc. v. BancorpSouth Bank*,
    791 F.3d 586 (5th Cir. 2015) ...................................................................................44

*Simmonds Equip., LLC v. GGR Int'l, Inc.*,
    126 F. Supp. 3d 855 (S.D. Tex. 2015).....................................................................44

*Stericycle*,
    372 NLRB No. 113 (2023) .............................................................................*passim*

*Starbucks Corporation*, No. JD-50-23, 2023 WL 5140070 (Aug. 10, 2023).............................21

*Swierkiewicz v. Sorema*,
    534 U.S. 506 (2002) .................................................................................................11

*T-Mobile USA, Inc. v. NLRB*,
    865 F.3d 265 (5th Cir. 2017) ...........................................................................19, 24

*Taylor v. Books A Million, Inc.*,
    296 F.3d 376 (5th Cir. 2002) ...................................................................................42

*TCA Bldg. Co. v. Northwestern Res.*,
    922 S.W.2d 629 (Tex. App.—Waco 1996, writ denied)........................................42

*Three D, LLC v. NLRB*,
    629 Fed.Appx. 33 (2d Cir. 2015) ............................................................................19

*Valley Hospital Medical Center, Inc.*,
    351 NLRB 1250 (2007) ............................................................................ 28, 29

*Whole Foods Market, Inc.*,
    363 NLRB 800 (2015) .................................................................................... 23

*William Beaumont Hospital*,
    363 NLRB 1543 (2016) .................................................................................. 18

**Statutes**

29 U.S.C. § 153(d) .............................................................................................. 14

29 U.S.C. § 157 ................................................................................................... 12

29 U.S.C. § 158(a)(1) .................................................................................... 21, 24

**Rules**

Fed. R. Civ. P. 12(b)(1) ...................................................................................... 11

Fed. R. Civ. P. 12(b)(6) .......................................................................... 10, 42, 43

Fed. R. Civ. P. 12(e) ..................................................................................... 11, 42

Fed. Rule Civ. P. 8 ............................................................................................. 43

**Regulations**

29 C.F.R. § 101.2 ............................................................................................... 13

29 C.F.R. § 101.4 ............................................................................................... 13

29 C.F.R. § 101.8 ............................................................................................... 13

29 C.F.R. § 101.8 ............................................................................................... 13

29 C.F.R. §§ 101.10-101.11 ............................................................................... 13

29 C.F.R. § 101.12 ............................................................................................. 13

29 C.F.R. § 101.12(a) ........................................................................................ 13

29 C.F.R. § 101.12(b) ........................................................................................ 13

**Other Authorities**

*Haynes Mechanical Systems*, No. Case 27-CA-171581, 2016 WL 8651991 (July
25, 2016)................................................................................................................33, 34

https://www.lexology.com/library/detail.aspx?g=cb74ff6f-aff1-44c8-8aa2-
539cba10cf66; https://www.littler.com/publication-press/publication/nlrb-
general-counsel-abruzzo-targets-employee-non-competes-under-nlra ...................................15

https://www.nlrb.gov/news-outreach/region-09-cincinnati/region-9-cincinnati-
issues-complaint-alleging-unlawful-non ...........................................................................38

James R. Grasso, *Employers Beware: The NLRB Cometh for Your Non-Compete
Agreements*, Lexology (June 9, 2023)................................................................................14

Jennifer A. Abruzzo, *Electronic Monitoring and Algorithmic Management of
Employees Interfering with the Exercise of Section 7 Rights*, GC 23-02, 2022
WL 16646853 (Oct. 31, 2022).....................................................................................14, 33

Jennifer A. Abruzzo, *Mandatory Submissions to Advice*, GC 21-04, 2021 WL
3662454 (Aug. 12, 2021)..................................................................................................14

Jennifer A. Abruzzo, *Non-Compete Agreements That Violate the National Labor
Relations Act*, GC 23-08, 2023 WL 3750775 (May 30, 2023).............................................14

## I.  Standards of Review

### A.  Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction" whose power cannot be expanded by judicial decree. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Energy Mgmt. Servs., LLC v. City of Alexandria*, 739 F.3d 255, 257 (5th Cir. 2014). "The parties can never consent to federal subject matter jurisdiction, and lack of such jurisdiction is a defense which cannot be waived." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996). Courts "must presume that a suit lies outside [the court's] limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co*., 243 F.3d 912, 916 (5th Cir. 2001) (citing *Kokkonen*, 511 U.S. at 377).

Rule 12(b)(1) authorizes dismissal of a case for lack of subject matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig*., 668 F.3d 281, 286 (5th Cir. 2012) (internal quotations omitted). When a defendant challenges jurisdiction through a Rule 12(b)(1) motion, the plaintiff asserting jurisdiction bears the burden of proof. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

In reviewing a Rule 12(b)(1) motion, a court may consider (1) the complaint alone, (2) the complaint supplemented by the undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of those disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008). The court may review any documents attached to the complaint as well as any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming*, 281 F.3d at 161.

### B. Rule 12(b)(6) Dismissal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of an action for failure to state a claim on which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, a plaintiff must plead factual allegations sufficient "to raise a right to relief above the speculative level." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Under the 12(b)(6) standard, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *See Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). In deciding a Rule 12(b)(6) motion, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Jefferson v. Lead Indus. Assoc., Inc.*, 106 F.3d 1245, 1250 (5th Cir. 1997).

A 12(b)(6) motion to dismiss should be granted "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Gonzalez*, 577 F.3d at 603 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### C.  Rule 12(e) Standard for More Definite Statement

A party may move for a more definite statement of a pleading that is "so vague or ambiguous that a party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Allegations that technically meet the notice pleading standard of Rule 8, but are still vague and conclusory are subject to a motion for a more definite statement. *See* Fed. R. Civ. P. 12(e); *see also Swierkiewicz v. Sorema,* 534 U.S. 506, 514 (2002); *Twombly*, 550 U.S. at 590 n. 9.

A motion for more definite statement is an "appropriate vehicle to pare down 'shotgun' pleadings" so long as its "exercise [is] cast in the mold of strictest necessity." *Clark v. McDonald's Corp.,* 213 F.R.D. 198, 233 (D.N.J. 2003); *see also Luna-Reyes v. RFI Const., LLC,* 57 F. Supp. 3d 495, 503-04 (M.D.N.C. 2014) (using 12(e) to address "conclusory and shotgun approach to pleading" that failed to provide each defendant with the factual basis for the claim against it; shotgun pleading deprives defendants and the court of the opportunity to determine whether there are sufficient facts to make a claim against each defendant plausible).

## II.    Arguments & Authorities

### A.  *Garmon* preemption deprives the Court of subject matter jurisdiction and necessitates dismissal under Rule 12(b)(1).

Defendants move under Rule 12(b)(1) to dismiss Plaintiff's claims arising out of alleged violations of restrictive covenants in their employment agreements because the National Labor Relations Board has exclusive jurisdiction over those claims.

In order to prevail on this motion, Defendants need only show that a claim concerns activity that is "arguably subject" to the NLRA and is thereby preempted under the *Garmon* preemption doctrine.

### i.  Unfair Labor Practices

Section 7 of the National Labor Relations Act ("NLRA" or "the Act") provides that "employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. The NLRA protects these Section 7 rights by making it an "unfair labor practice for an employer to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section [7]" and by empowering the National Labor Relations Board ("NLRB" or "the Board") "to prevent any person from engaging in any unfair labor practice." 29 U.S.C. § 158(a)(1) (NLRA Section 8(a)(1)); 29 U.S.C. § 160(a) (NLRA Section 10(a)).

The protections of Section 7 do not just apply to unionized workplaces or collective bargaining. They also apply to "other concerted activities for the purpose of … other mutual aid or protection." 29 U.S.C. § 157. Indeed, "labor's cause often is advanced on fronts other than collective bargaining and grievance settlement within the immediate employment context" and Congress "recognized this fact by choosing, as the language of [Section] 7 makes clear, to protect concerted activities for the somewhat broader purpose of 'mutual aid or protection' as well as for the narrower purposes of 'self-organization' and 'collective bargaining.'" *Eastex, Inc. v. NLRB*, 437 U.S. 556, 565 (1978).

The NLRA does not provide an exhaustive list of unfair labor practices. Instead, the NLRA authorizes the NLRB to continually develop the meaning of "unfair labor practice" within these broad statutory parameters based on its expertise and understanding of current labor relations. *Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 798 (1945) ("the [NLRA] did not undertake the impossible task of specifying in precise and unmistakable language each incident which would

14

constitute an unfair labor practice. On the contrary that Act left to the Board the work of applying the Act's general prohibitory language in the light of the infinite combinations of events which might be charged as violative of its terms."); *Eastex, Inc.*, 437 U.S. at 568 (delineating "the boundaries of the 'mutual aid and protection' clause" is a task "for the Board to perform in the first instance as it considers the wide variety of cases that come before it.").

The Board's process for preventing unfair labor practices begins when an individual files a charge alleging that an unfair labor practice has occurred "with the Regional Director for the Region in which the alleged violations have occurred or are occurring." 29 C.F.R. § 101.2. Once the charge is filed, the charging party promptly provides evidence in support of the charge and a member of the Region's field staff is assigned to investigate the charge. 29 C.F.R. § 101.4. If, after investigation, the Regional Director determines that the charge has merit, the Regional Director typically "institutes formal action by issuance of a complaint and notice of hearing." 29 C.F.R. § 101.8. However, if the case involves "novel and complex issues," the Regional Director "must submit the case for advice from the General Counsel before issuing a complaint." 29 C.F.R. § 101.8. After a complaint is issued, an administrative law judge ("ALJ") holds a hearing where the ALJ listens to evidence and testimony relevant to the complaint and then subsequently issues a decision and recommended order in the case. 29 C.F.R. §§ 101.10-101.11. The parties may file "exceptions" to the ALJ's decision and recommended order to the Board. 29 C.F.R. § 101.12. If a party files exceptions, then the Board hears those exceptions prior to issuing its own decision and order in the case. 29 C.F.R. § 101.12(a). If a party does not file exceptions, then the ALJ's decision and recommended order "automatically become the decision and order of the Board." 29 C.F.R. § 101.12(b).

The NLRB has one General Counsel ("GC") that is appointed by the president with the advice and consent of the senate. 29 U.S.C. § 153(d). The GC exercises "general supervision over all attorneys employed by the Board" and "over the officers and employees in the regional offices." *Id.* The GC has the "final authority, on behalf of the Board, in respect of the investigation of charges and issuance of complaints under section 10 [29 U.S.C. § 160], and in respect of the prosecution of such complaints before the Board." *Id.*

Periodically, the GC publishes memorandums outlining certain types of unfair labor practice charges that regional directors must submit to the GC for advice pursuant to the process outlined in 29 C.F.R. § 101.8. *See, e.g.*, Jennifer A. Abruzzo, *Mandatory Submissions to Advice*, GC 21-04, 2021 WL 3662454 (Aug. 12, 2021); Jennifer A. Abruzzo, *Electronic Monitoring and Algorithmic Management of Employees Interfering with the Exercise of Section 7 Rights*, GC 23-02, 2022 WL 16646853 (Oct. 31, 2022). These memoranda indicate areas of Board law that the GC wants to modify or develop by litigating a relevant case through the Board process described above.

Sometimes these memorandums even outline the precise legal position that the GC intends to take on the kinds of cases that the GC is requiring regional directors to submit for advice. *See, e.g.*, Jennifer A. Abruzzo, *Non-Compete Agreements That Violate the National Labor Relations Act*, GC 23-08, 2023 WL 3750775 (May 30, 2023). Because the GC has the final authority over the issuance of complaints, these kinds of memorandums essentially guarantee that unfair labor practice charges based on the conduct described in the memorandums will result in an NLRB complaint. *See* James R. Grasso, *Employers Beware: The NLRB Cometh for Your Non-Compete Agreements*, Lexology (June 9, 2023) (management-side labor lawyer explaining that GC 23-08 indicates that "all employers seeking to enforce non-compete agreements now face the prospect of

litigation with the NLRB when seeking to enforce them against non-supervisory employees"); Tyler Sims, Melissa McDonagh, and Michelle Devlin, *NLRB General Counsel Abruzzo Targets Employee Non-Competes under NLRA*, Littler (June 1, 2023) (three management-side labor lawyers writing about GC 23-08 explain that "because, as GC, Abruzzo makes initial decisions about whether to issue complaints … employers can reasonably expect to see additional complaints filed by the NLRB based on unfair labor practice charges in which employees or unions claim a particular employer's non-compete violates the Act.").[3]

### ii. *Garmon* Preemption

After the NLRA was enacted, the Board's sweeping power to prevent unfair labor practices "inevitably gave rise to difficult problems of federal-state relations." *San Diego Building Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 239 (1959). All kinds of state regulation came into conflict with the Board's application of the NLRA, often in idiosyncratic and unanticipated ways, generating frequent litigation about how to resolve these conflicts. *Id.* at 240-241.

The Supreme Court resolved this problem in *Garmon* by declaring that "when an activity is arguably subject to [Section] 7 or [Section] 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board." *Id.* at 245.

In order to establish that *Garmon* preemption applies, "a party asserting pre-emption must advance an interpretation of the [NLRA] that is not plainly contrary to its language and that has not been 'authoritatively rejected' by the courts or the Board" and must then "put forth enough evidence to enable the court to find that the Board reasonably could uphold a claim based on such

---

[3]                              https://www.lexology.com/library/detail.aspx?g=cb74ff6f-aff1-44c8-8aa2-539cba10cf66; https://www.littler.com/publication-press/publication/nlrb-general-counsel-abruzzo-targets-employee-non-competes-under-nlra.

an interpretation." *Glacier Northwest, Inc. v. Int'l Brotherhood of Teamsters Local Union No. 174*, 143 S. Ct. 1404, 1411 (2023) (quoting *Int'l Longshoremen's Association, AFL-CIO v. Davis*, 476 U.S. 380, 395 (1986)). "If the court determines that the party has met its burden to show that 'there is an arguable case for pre-emption,' it generally must grant the party's preemption defense and await the Board's resolution of the legal status of the relevant conduct. After that, 'only if the Board decides that the conduct is not protected or prohibited [by the NLRA] may the court entertain the litigation.'" *Id.* (quoting *Davis*, 476 U.S. at 397 (1986)).

There are two exceptions to the *Garmon* preemption doctrine: (1) "where the activity regulated [is] a merely peripheral concern to the NLRA" and (2) "where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act." *Garmon*, 359 U.S. at 244 (1959).

By conduct that touches interests "deeply rooted in local feeling and responsibility," the Supreme Court had in mind "conduct marked by violence and imminent threats to the public order." *Garmon* 359 U.S. at 247 (citing *United Construction Workers, Affiliated with United Mine Workers of America v. Laburnum Construction Corp.*, 347 U.S. 656, 664 (1954) (a "state still may exercise its historic powers over such traditionally local matters as public safety and order and the use of streets and highways")). The Supreme Court has explicitly rejected the argument that a "deep and abiding interest in protecting its citizens' contractual rights" constitutes an exception to *Garmon* preemption. *Local 926, Int'l Union of Operating Engineers, AFL-CIO v. Jones*, 460 U.S. 669, 674 (1983).

Preventing the enforcement of private contract terms that violate the NLRA is also not a merely peripheral concern to the NLRA. *J.I. Case Co. v. NLRB*, 321 U.S. 332, 337 (1944)

18

("Wherever private contracts conflict with [the NLRA's] functions, they obviously must yield or the Act would be reduced to a futility."); *National Licorice Co. v. NLRB*, 309 U.S. 350, 361 (1940) ("Board was free by its order to direct that the [employer] should take no benefit from the contracts" that "stipulated for the renunciation by the employees of rights guaranteed by the Act, and were a continuing means of thwarting the policy of the Act.")

The purpose of *Garmon* preemption is not merely to ensure that state law is not applied in ways that contradict the NLRA. It is also to ensure that individuals can use the very specific administrative process that Congress provided for handling disputes over unfair labor practices. *Garner v. Teamsters Union,* 346 U.S. 485, 490-491 (1953) ("Congress did not merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties. It went on to confide primary interpretation and application of its rules to a specific and specially constituted tribunal and prescribed a particular procedure for investigation, complaint and notice, and hearing and decision, including judicial relief pending a final administrative order."); *Garmon*, 359 U.S. at 243 (1959) ("Administration is more than a means of regulation; administration is regulation. We have been concerned with conflict in its broadest sense; conflict with a complex and interrelated federal scheme of law, remedy, and administration.")

### iii.  Coercive Rules

For the last 80 years, the Board has held that the mere maintenance of certain work rules violates Section 8(a)(1) of the NLRA. *Republic Aviation Corp.*, 51 NLRB 1186, 1187 (1943), affd, 324 U.S. 793, 798 (1945) (employer's general rule prohibiting all personal solicitation violated the NLRA because it interfered with worker organizing). The precise legal standard for determining whether a particular work rule violates the NLRA has evolved multiple times during this period.

*See, e.g.*, *Lutheran Heritage Village-Livonia,* 343 NLRB 646 (2004); *Boeing Co.*, 365 NLRB No. 154 (2017); *Stericycle*, 372 NLRB No. 113 (2023).

The modern history of Board law on coercive work rules began in 2004 with *Lutheran Heritage*. 343 NLRB 646 (2004). In *Lutheran Heritage*, the Board held that any work rule that "explicitly restricts activities protected by Section 7" is unlawful under the Act. *Id.* The Board also held that work rules that do not explicitly restrict Section 7 activity are still unlawful if "(1) employees would reasonably construe the language to prohibit Section 7 activity; (2) the rule was promulgated in response to union activity; or (3) the rule has been applied to restrict the exercise of Section 7 rights." *Id.* at 647.

Although the *Lutheran Heritage* standard did not explicitly include any balancing of legitimate employer interests in maintaining a given rule, subsequent cases that applied *Lutheran Heritage* engaged in this kind of balancing by, for example, reading it into the meaning of "reasonably construe." *See, e.g.*, *Flagstaff Medical Center*, 357 NLRB 659 (2011) (hospital employer's no-recording rule was not unlawful because of the employer's legitimate interest in preventing the disclosure of patient health information); *First Transit, Inc.*, 360 NLRB 619, 620 (2014) (employer's rule against use of company property and poor work habits was not unlawful because employees would not reasonably construe the wording of the rule as applying beyond legitimate business interests); *William Beaumont Hospital*, 363 NLRB 1543, 1546 (2016) (explaining that, when the Board applies *Lutheran Heritage* to conclude that a rule is not unlawful, "it is typically because the rule is tailored such that the employer's legitimate business interest in maintaining the rule will be sufficiently apparent to a reasonable employee.").

During the 13-year period when *Lutheran Heritage* was controlling Board law, no federal circuit court rejected the *Lutheran Heritage* standard for assessing the lawfulness of work rules.

*See Midwest Division-MMC, LLC v. NLRB*, 867 F.3d 1288, 1302 (D.C. Cir. 2017); *NLRB v. Northeastern Land Services, Ltd.*, 645 F.3d 475, 482 (1st Cir. 2011); *Three D, LLC v. NLRB*, 629 Fed.Appx. 33, 38 (2d Cir. 2015); *T-Mobile USA, Inc. v. NLRB*, 865 F.3d 265, 270 (5th Cir. 2017); *G4S Secure Solutions Inc. v. NLRB*, 707 Fed.Appx. 610, 613 fn. 2 (11th Cir. 2017).

During this period, the Fifth Circuit affirmed the usage of the *Lutheran Heritage* standard in all four cases it decided on the matter. *NLRB v. Arkema, Inc.*, 710 F.3d 308, 317 (5th Cir. 2013) (approved of standard but found that it was misapplied); *Flex Frac Logistics, L.L.C. v. NLRB*, 746 F.3d 205, 208 (5th Cir. 2014 (confidentiality rule unlawful under *Lutheran Heritage*); *T-Mobile USA, Inc. v. NLRB*, 865 F.3d 265, 270 (5th Cir. 2017) (no-recording rule unlawful under *Lutheran Heritage*); *LogistiCare Sols., Inc. v. NLRB*, 866 F.3d 715, 719 (5th Cir. 2017) (approved of standard but found that it was misapplied).

In 2017, a newly composed Board overruled one part of the *Lutheran Heritage* standard in *Boeing*. 365 NLRB No. 154 (2017). *Boeing* did not change *Lutheran Heritage*'s prohibition on rules that explicitly prohibit Section 7 activity, rules promulgated in response to union activity, or rules that have been applied to restrict Section 7 activity. *Stericycle, Inc.* 628, 372 NLRB No. 113, slip op. at 8 fn. 11 (Aug. 2, 2023). But it did replace *Lutheran Heritage*'s prohibition on work rules that employees would reasonably construe as prohibiting Section 7 activity with a new balancing test. *Boeing*, 365 NLRB No. 154, slip op. at 3.

Under the *Boeing* balancing test, when assessing the legality of rules that, "when reasonably interpreted, would potentially interfere with Section 7 rights, the Board will evaluate … (i) the nature and extent of the potential impact on NLRA rights, and (ii) legitimate justifications associated with the rule" in order to "strike the proper balance between … asserted business justifications and the invasion of employee rights in light of the Act and its policy." *Id. Boeing*

also established a new categorical approach to work rules in which the Board would, over time, use the *Boeing* balancing test to designate certain types of rules as always lawful (category one), sometimes lawful (category two), or never lawful (category three). *Id.* at 4.

Although *Boeing* did not change *Lutheran Heritage*'s prohibition on rules that have been applied to restrict Section 7 activity, the Board did subsequently strike down that prohibition in *AT&T Mobility*. 370 NLRB No. 121, slip op. at 7 (2021) (employer violated the NLRA when applying its facially legal no-recording rule against protected activity but did not have to rescind the rule going forward).

Like the *Lutheran Heritage* standard that came before it, during the six-year period when *Boeing* was the controlling Board law, no federal circuit court rejected the *Boeing* standard for assessing the lawfulness of work rules. *Communications Workers of America v. NLRB*, 6 F.4th 15, 29 (D.C. Cir. 2021); *Novelis Corp. v. NLRB*, 885 F.3d 100, 106 fn. 6 (2d Cir. 2018); *Dish Network, L.L.C. v. NLRB*, 731 F. App'x 368, 369 (5th Cir. 2018); *Cowabunga, Inc. v. NLRB*, 893 F.3d 1286, 1289 (11th Cir. 2018).

During this period, the Fifth Circuit affirmed the *Boeing* standard in both cases it decided on the matter. *Dish Network, L.L.C. v. NLRB*, 731 F. App'x 368, 369 (5th Cir. 2018) (acknowledging overruling and remanding case decided under prior *Lutheran Heritage* standard); *Lowes Home Centers, L.L.C. v. NLRB*, 850 F. App'x 886, 888 (5th Cir. 2021).

On August 2, 2023, another newly composed Board overruled the *Boeing* standard in *Stericycle*, 372 NLRB No. 113 (2023). Specifically, *Stericycle* did away with the balancing test and three-category classification system outlined in *Boeing*. *Id.*

In its place, *Stericycle* established a two-step approach to assessing the legality of rules that could be reasonably interpreted as prohibiting Section 7 activity. In the first step, the General

Counsel must demonstrate that "an employee could reasonably interpret the rule to have a coercive meaning … even if a contrary, noncoercive interpretation of the rule is also reasonable." *Id.* at 3. "If the General Counsel carries her burden, the rule is presumptively unlawful." *Id.* In the second step, "the employer may rebut that presumption by proving that the rule advances a legitimate and substantial business interest and that the employer is unable to advance that interest with a more narrowly tailored rule." *Id.* "If the employer proves its defense, then the work rule will be found lawful to maintain." *Id.*

After incorporating the modifications made by *Stericycle* into the existing Board law on coercive rules, there are presently three kinds of work rules that facially violate the NLRA. The first two kinds come from *Lutheran Heritage*: (1) work rules that explicitly restrict Section 7 activity and (2) work rules that are promulgated in response to union activity. *Lutheran Heritage*. 343 NLRB at 647. The third kind comes from *Stericycle* as discussed in the prior paragraph. *Stericycle*, 372 NLRB No. 113, slip op. at 3.

Additionally, when an employer applies any work rule against Section 7 activity, regardless of whether the rule facially violates the NLRA, the employer violates Section 8(a)(1). *AT&T Mobility*, 370 NLRB No. 121, slip op. at 7 (2021) (employer violated the NLRA when applying a no-recording rule that was facially legal under *Boeing* against protected activity); *see also Valley Hosp. Med. Ctr.*, 351 NLRB 1250, 1254 (2007) ("employees engaged in [protected] activity generally do not lose the protection of the Act simply because their activity contravenes an employer's rule or policies.").

Because *Stericycle* was decided so recently, it has only been applied once and that application was in an ALJ decision, not a final decision of the Board. *Starbucks Corp.*, No. JD-50-23, 2023 WL 5140070 (Aug. 10, 2023) (rule stating that employees must communicate "in a

professional and respectful manner at all times" and that "vulgar or profane language is not acceptable" is facially illegal under *Stericycle*). The one citation the Board has made to *Stericycle* came in an unrelated case. *Cemex Construction Materials Pacific, LLC*, 372 NLRB No. 130 (Aug. 25, 2023) (Board member Kaplan, in dissent, notes that *Stericycle* "made it extraordinarily easy for the General Counsel to establish that a work rule is unlawful.").

Because the Board has not yet decided any cases using the *Stericycle* standard, no *Stericycle* cases have ever been appealed to federal circuit court. But, since *Lutheran Heritage* was decided in 2004, no federal circuit court has ever rejected the controlling Board standard for assessing the lawfulness of work rules, and there is no reason to think the *Stericycle* standard will fare any differently in this regard.

Although the case law applying *Stericycle* is necessarily sparse at the moment, that does not mean that there are no cases that illuminate the likely result of future cases that are evaluated under the *Stericycle* standard. In the *Stericycle* decision, the Board states that the new standard "builds on and revises the *Lutheran Heritage* standard." 372 NLRB No. 113, slip op. at 2. This statement, combined with the substantive similarity between the *Stericycle* and *Lutheran Heritage* standards, strongly indicates that rules that were considered unlawful in cases applying the *Lutheran Heritage* standard will also be considered unlawful in cases applying the *Stericycle* standard.

### iv.  The no-recording rule is subject to *Garmon* preemption.

Plaintiff's Complaint alleges that Defendants violated the following no-recording rule, which is contained on page 90 of the Cumulus Employee Handbook:

> **PROHIBITION OF UNAUTHORIZED RECORDING** Cumulus Media prohibits any sort of non-authorized video or audio recording of the workplace by its employees. This includes but is not limited to, recording conversations with or involving Cumulus Media employees, customers, potential customers, vendors or

24

members of the general public, without written consent by each party to the conversation. This prohibition also includes disseminating such materials even if the employee was not the individual who recorded the conversation. Management employees who are authorized by Corporate Legal are permitted to make video and/or audio recordings consistent with Company business interests and in compliance with applicable laws. Any employee who is found to have engaged or assisted in any unauthorized recording will be subject to appropriate disciplinary action, up to and including dismissal from employment. Further, to the extent such recording violates applicable criminal and/or civil law, Cumulus Media may assist with prosecution or enforcement of all rights under such laws.

(Complaint ("Compl."), ¶ 10.)

Specifically, Plaintiff alleges that Defendants violated this rule by secretly recording conversations with their manager "during contract negotiations to use as content on a future show." (*Id.*, ¶ 18.)

Even assuming the truth of Plaintiff's allegation, under Board law, "employee photographing and videotaping is protected by Section 7 when employees are acting in concert for their mutual aid and protection and no overriding employer interest is present. Such protected conduct may include, for example, employees recording images of employee picketing, documenting unsafe workplace equipment or hazardous working conditions, **documenting and publicizing discussions about terms and conditions of employment**, or documenting inconsistent application of employer rules." *Caesars Entertainment*, 362 NLRB 1690, 1693 (2015) (emphasis added). Indeed, Board law "is replete with examples where photography or recording, **often covert**, was an essential element in vindicating the underlying Section 7 right" and "therefore supports the proposition that photography and audio and video recording at the workplace are protected under certain circumstances." *Whole Foods Mkt., Inc.*, 363 NLRB 800, 802 (2015) (emphasis added).

Because workplace recording is sometimes protected activity, an employee could reasonably interpret a broad no-recording rule like the one at issue here as prohibiting Section 7 activity, making the rule presumptively unlawful under *Stericycle*. 372 NLRB No. 113, slip op. at 3.

Indeed, when applying the *Lutheran Heritage* standard, the Board ruled three times that no-recording rules that were virtually identical to the one at issue here were facially illegal. *Caesars Entertainment*, 362 NLRB at 1694; *Whole Foods Mkt., Inc.*, 363 NLRB at 803 (no-recording rules that "unqualifiedly prohibit all workplace recording ... reasonably chill employees in the exercise of their Section 7 rights"); *T-Mobile USA, Inc.*, 363 NLRB 1638, 1641 (2016) (a no-recording rule that "does not differentiate between recordings that are protected by Section 7 and those that are not" and that "prohibits all recording and makes no exception for protected concerted activity" is facially unlawful).

One of these three cases, *T-Mobile USA*, was appealed to the Fifth Circuit and the Fifth Circuit affirmed the Board's decision. *T-Mobile USA, Inc. v. NLRB*, 865 F.3d 265 (5th Cir. 2017) ("The ban, by its plain language, encompasses any and all photography or recording on corporate premises at any time without permission from a supervisor. This ban is, by its own terms alone, stated so broadly that a reasonable employee, generally aware of employee rights, would interpret it to discourage protected concerted activity")

Defendants have already filed charges with the NLRB alleging that this no-recording rule facially violates Section 8(a)(1) and that Plaintiff has attempted to apply it, albeit mistakenly, against alleged activity that would be protected by Section 7. Based on *Stericycle* and the other authorities cited above, it is clear that Plaintiff's no-recording rule and Plaintiff's attempt to enforce that rule violate Section 8(a)(1), which far exceeds the low standard for preemption of

arguably violating Section 8(a)(1). *Garmon*, 359 U.S. at 245. Defendants' interpretation of the NLRA in this regard is "not plainly contrary to its language" and has not been "authoritatively rejected by the courts or the Board." *Glacier Northwest, Inc.*, 143 S. Ct. at 1411. Defendants have also "put forth enough evidence to enable the court to find that the Board reasonably could uphold a claim based on such an interpretation." *Id.* Accordingly, *Garmon* preemption applies, and Plaintiff's claims based on the no-recording rule must be dismissed.

### v.  The confidentiality rule is subject to *Garmon* preemption.

Plaintiff's Complaint alleges that Defendants violated the following confidentiality rule, which is contained in sections 1.4 and 6.1 of their employment agreements:

> (Section 1.4) "Confidential Information" means all information that: (i) the Company tries to keep secret and (ii) has commercial value to the Company or is of such a nature that its unauthorized disclosure would be detrimental to the Company's interest, including, for instance, the Company's information concerning price and discount arrangements with sponsors/ customers, information concerning sponsors'/customers' particular needs, preferences, and interests (and how the Company uses such information to maintain a competitive advantage), marketing plans, business strategies, promotion plans, **financial information**, forecasts, and **personnel information**.
>
> (Section 6.1) Employee agrees that all Confidential Information is confidential to and the exclusive property of the Company.

(Compl., ¶ 8(emphasis added).)

It is unclear what confidential information Plaintiff is alleging that Defendants revealed (and Defendants deny they have any). The Complaint states, in a conclusory way, that Defendants "have already disclosed Confidential Information on The Dumb Zone." (*Id.*, ¶ 40.) Yet, the only topics that the rest of the Complaint alleges that Defendants talked about on The Dumb Zone are (1) the cease-and-desist letter Plaintiff sent Defendants, (2) Defendant Kemp's compensation history, (3) skeptical comments from The Ticket's management about how much money

Defendants could earn from podcasting, and (4) The Ticket's "updated lineup, on-air personalities, and hiring decisions." (*Id.*, ¶ 29-32)

None of these four things appear to be "confidential information" even under the extremely broad terms of the confidentiality rule at issue here.

Nevertheless, a confidentiality rule that an employee could reasonably interpret as prohibiting them from engaging in Section 7 activities is presumptively unlawful under *Stericycle*. 372 NLRB No. 113, slip op. at 3.

The rule at issue here includes "financial information" and "personnel information" in its definition of "confidential information." When applying *Lutheran Heritage*, the Board ruled at least three times that similarly worded confidentiality rules were facially illegal. *MCPC, Inc.*, 360 NLRB 216 (2014) (employer rule against the "dissemination of confidential information within [the company], such as **personal** or **financial information**" would be reasonably construed as prohibiting Section 7 activity); *Lily Transp. Corp.*, 362 NLRB 406, 408, fn. 3 (2015) (employer rule prohibiting disclosure of "employee information maintained in confidential **personnel files**" would be reasonably construed as prohibiting Section 7 activity); *Flex Frac Logistics, LLC*, 358 NLRB 1131 (2012) (employer rule prohibiting disclosure of, among other things, "**financial information**" and "**personnel information**" would be reasonably construed as prohibiting Section 7 activity).

One of these three cases, *Flex Frac Logistics*, was appealed to the Fifth Circuit and the Fifth Circuit affirmed the Board's decision. *Flex Frac Logistics, L.L.C. v. NLRB*, 746 F.3d 205, 209 (5th Cir. 2014) ("Flex Frac's contention that the NLRB's interpretation of the confidentiality clause was unreasonable is without merit. As the NLRB noted, the list of confidential information encompasses '**financial information**, including costs[, which] necessarily includes wages and

thereby reinforces the likely inference that the rule proscribes wage discussion with outsiders.' . . . The confidentiality clause gives no indication that some **personnel information**, such as wages, is not included within its scope." (emphasis added) (brackets in original) (internal citation omitted)).

In the short period since *Stericycle* was decided, the GC has issued at least one complaint against a company alleging that its confidentiality rule is facially illegal. **Exhibit E**, NLRB Complaint in *Juvly Aesthetics*, Case No. 09-CA-300239, ¶ 4(a) (September 1, 2023).

Defendants have already filed charges with the NLRB alleging that this confidentiality rule facially violates Section 8(a)(1) and that Plaintiff has attempted to apply it against activity that is protected by Section 7. Based on *Stericycle* and the other authorities cited above, Plaintiff's confidentiality rule violates Section 8(a)(1), which again, far exceeds the "arguably violates" standard for *Garmon* preemption. *Garmon*, 359 U.S. at 245. Defendants' interpretation of the NLRA in this regard is "not plainly contrary to its language" and has not been "authoritatively rejected by the courts or the Board." *Glacier Northwest, Inc.*, 143 S. Ct. at 1411. Defendants have also "put forth enough evidence to enable the court to find that the Board reasonably could uphold a claim based on such an interpretation." *Id.* Accordingly, *Garmon* preemption applies, and Plaintiff's claims based on the confidentiality rule should be dismissed.

### vi. The non-disparagement clause is subject to *Garmon* preemption.

Plaintiff's Complaint alleges that Defendant Kemp violated the following non-disparagement rule, which is contained in section 6.3 of his employment agreement:

> (Section 6.3) During Employee's employment by the Company and **at any time thereafter**, Employee agrees not to **disparage** or encourage or induce others to disparage the Company, any of its respective employees that were employed during Employee's employment with the Company or any of its respective past and present, **officers, directors, products, or services** (the "Company Parties"). For

purposes of this Section 6.3, the term "disparage" includes, without limitation, comments, or **statements to the press** or to any individual or entity with whom the Company has a business relationship (including, without limitation, any vendor, supplier, customer, or distributor), or **any public statement**, that in each case is intended to, or can be reasonably expected to, damage any of the Company Parties.

(Compl., ¶ 9.) (emphasis added)

Specifically, Plaintiff alleges that Defendant Kemp violated this rule by "publicly criticizing Susquehanna, The Ticket, and its Employees" and when he "falsely stated he did not get any pay raises," "criticized the Ticket's lineup and hiring decisions and employee pay," and "mocked the Cease and Desist Letters." (Renewed Emergency Application for Temporary Restraining Order and Request for Preliminary Injunction ("TRO"), at 20-21) (Compl., ¶ 29-34.)

Section 7 "protects employee communications to the public that are part of and related to an ongoing labor dispute." *Valley Hosp. Med. Ctr., Inc.*, 351 NLRB 1250, 1252 (2007) (citing *Allied Aviation Service Co. of New Jersey, Inc.*, 248 NLRB 229, 231 (1980). These rights "are not limited to discussions with coworkers, as they do not depend on the existence of an employment relationship between the employee and the employer, and the Board has repeatedly affirmed that such rights extend to former employees." *McLaren Macomb,* 372 NLRB No. 58, slip op. at 7 (Feb. 21, 2023). These rights "extend to employee efforts to improve terms and conditions of employment or otherwise improve their lot as employees through channels outside the immediate employee-employer relationship," including through "newspapers, the media, social media, and communications to the public." *Id*. Section 7 also protects "discussion of wages or other terms and conditions of employment with … coworkers." *MCPC, Inc.*, 360 NLRB 216 (2014).

"Employee critique of employer policy pursuant to the clear right under the Act to publicize labor disputes is subject only to the requirement that employees' communications not be so

disloyal, reckless or maliciously untrue as to lose the Act's protection." *McLaren McComb*, 372 NLRB No. 58, slip op. at 9 (quoting *Emarco, Inc.*, 284 NLRB 832, 833 (1987)).

"The mere fact that statements are false, misleading or inaccurate is insufficient to demonstrate that they are maliciously untrue." *Valley Hosp. Med. Ctr., Inc.*, 351 NLRB at 1252. Communications are only considered maliciously untrue "if they are made with knowledge of their falsity or with reckless disregard for their truth or falsity." *Id.*

Communications are considered disloyal enough to lose protection only when they are made with a "malicious motive" and constitute "a sharp, public, disparaging attack upon the quality of the company's product and its business policies." *Richboro Comm. Mental Health Council*, 242 NLRB 1267, 1268 (1979); *Valley Hosp. Med. Ctr., Inc.*, 351 NLRB at 1252 (citing *NLRB v. Electrical Workers Local 1229 (Jefferson Standard)*, 346 U.S. 464, 472 (1953)). Communication "that is otherwise proper does not lose its protected status simply because [it is] prejudicial to the employer." *Hacienda De Salud-Espanola*, 317 NLRB 962, 966 (1995) (quoting *NLRB v. Circle Bindery*, 536 F.2d 447, 452 (1st Cir. 1976)).

The term "labor dispute" is broadly defined in Section 2(9) of the NLRA as including "any controversy concerning terms, tenure or conditions of employment." 29 U.S.C. § 152(9).

Here, Defendants concerted contract negotiations and concerted resignation were a labor dispute under this definition. *Valley Hosp. Med. Ctr., Inc.*, 351 NLRB at 1260. The current controversy about the application of employment contract terms, which Plaintiff initiated on July 25 when it sent cease-and-desist letters accusing Defendants of breaching their employment agreement, is also a labor dispute under this definition. (Compl., ¶ 28.) All the public statements made by Defendant Kemp that Plaintiff alleges as disparaging were made on or after July 25 and

31

were "part of and related to an ongoing labor dispute," making them protected activity under Section 7. *Valley Hosp. Med. Ctr., Inc.*, 351 NLRB at 1252, 1260.

When applying *Lutheran Heritage*, the Board found that non-disparagement rules like the one at issue here were facially illegal. *See, e.g.*, *In Re Pratt (Corrugated Logistics), LLC*, 360 NLRB 304, 312 (2014); *Quicken Loans, Inc.* 359 NLRB 1201, 1204 (2013) ("Within certain limits, employees are allowed to criticize their employer and its products as part of their Section 7 rights, and employees sometime do so in appealing to the public, or to their fellow employees, to gain their support. A reasonable employee could conclude that the prohibitions contained in the [employment] Agreement prohibited them from doing so. The Non-Disparagement provision therefore violates Section 8(a)(1) of the Act.").

Indeed, in February of 2023, the Board analyzed a non-disparagement rule that is virtually identical to the non-disparagement rule at issue here. *McLaren McComb*, 372 NLRB No. 58, slip op. at 2. The rule stated, in relevant part, that "at all times hereafter, the Employee agrees not to make statements to Employer's employees or to the general public which could disparage or harm the image of Employer, its parent and affiliated entities and their officers, directors, employees, agents and representatives." *Id.* The Board held that this rule "on its face substantially interferes with employees' Section 7 rights." *Id.* at 9.

The specific reasons why the Board held that the non-disparagement rule in *McLaren McComb* was facially illegal all apply to Plaintiff's non-disparagement rule at issue here. The rule has "no temporal limitation" and is "not even limited to matters regarding past employment." *Id.* The rule prohibits "statements … to the general public." *Id.* The rule "provides no definition of disparagement that cabins that term to its well-established NLRA definition." *Id.* The rule

"expansively applies to statements not only toward the [employer] but also to its parents and affiliated entities and their officers, directors, employees, agents and representatives." *Id.*

Since *Stericycle* was decided, the GC has issued at least one complaint against a company alleging that its non-disparagement rule is facially illegal. **Exhibit E**, NLRB Complaint in *Juvly Aesthetics*, Case No. 09-CA-300239, ¶¶ 4(a), 4(b), 4(c) (September 1, 2023).

Defendants have already filed charges with the NLRB alleging that this non-disparagement rule facially violates Section 8(a)(1) and that Plaintiff has attempted to apply it against activity that is protected by Section 7. Based on *Stericycle* and other authorities cited above, Plaintiff's non-disparagement rule clearly violates Section 8(a)(1), which again, is well beyond the requisite burden of a merely arguable violation. *Garmon*, 359 U.S. at 245. Defendants' interpretation of the NLRA in this regard is "not plainly contrary to its language" and has not been "authoritatively rejected by the courts or the Board." *Glacier Northwest, Inc.*, 143 S. Ct. at 1411. Defendants have also "put forth enough evidence to enable the court to find that the Board reasonably could uphold a claim based on such an interpretation." *Id.* Accordingly, *Garmon* preemption applies, and Plaintiff's claims based on the non-disparagement rule should be dismissed.

### vii.   The coworker non-solicitation clause is subject to *Garmon* preemption.

Plaintiff's Complaint alleges that Defendants violated the following coworker non-solicitation rule:

> (Section 9) **AGREEMENT NOT TO SOLICIT EMPLOYEES.** During Employee's employment by the Company and for six (6) months following termination of such employment, Employee shall not, directly or indirectly, solicit for employment by a Competing Business any of the Company's then-current sales, programming, managerial, or on-air employees with whom Employee dealt while employed. Employee further agrees that during the pendency of any litigation to enforce this Section 9, including all appeals, the non-solicitation period identified herein shall automatically be tolled for such period of time until the litigation is fully and finally resolved.

(Compl., ¶ 8.)

Specifically, Plaintiff alleges that Defendants violated this rule by "solicit[ing] one another to form The Dumb Zone podcast." (*Id.*, ¶ 43.)

Under Board law, soliciting a coworker to go work for a competitor is sometimes protected activity. *See, e.g.*, *M.J. Mechanical Services*, 325 NLRB 1098, 1098, 1106 (1998) (union organizers were protected in telling their coworkers about the benefits of belonging to a union and referring them to the union hall, even where it caused one employee to join the union, which then assigned the employee to work for a union contractor); *Technicolor Services*, 276 NLRB 383, 383, 388 (1985) (union steward's efforts to have his coworkers fill out applications for other companies was protected because it was in the interest of continued employment of the employees, who could have lost their jobs with the current employer due to an upcoming government contract bidding process); *Boeing Airplane Co.*, 110 NLRB 147, 149-51 (1954) (employer unlawfully discharged employee who organized conference to match unit employees with prospective employers as a means of exerting leverage in bargaining, and to counter employers' "gentlemen's agreement:" not to hire each others employees); *QIC Corp.*, 212 NLRB 63 (1974) (group of employees did not lose protection by seeking employment from a competitor in connection with their concerted efforts to secure a hearing from the employer regarding a pay dispute); *Clock Electric, Inc.*, 338 NLRB 806, 806, 817 (2003) (affirming judge's conclusion that union's action of informing employees of the benefits of working for a union contractor and offering to place them with such contractors when work became available as part of a campaign to organize those employees was protected and that employees listening to the union's entreaties was similarly protected concerted activity); *Arlington Electric*, 332 NLRB 845, 849 (2000) (employee engaged in protected activity

when he distributed a flyer informing employees of union rates and that an IBEW local needed their services).

In other circumstances, the Board has found that soliciting a coworker to go work for a competitor is not protected activity. *See, e.g.*, *Abell Engineering.*, 338 NLRB 434, 434-35 (2002) (employer did not unlawfully discharge employee for attempting to induce a coworker to quit and take another job because employee's conduct exceeded the Act's protection); *Clinton Corn Processing*, 194 NLRB 184, 185-86 (1971) (former employee who went to work for employer's competitor was not protected when he solicited his former coworkers to work for his new employer).

The differing results in these two sets of cases is reconciled by the rationale that soliciting coworkers to work for a competing business is protected activity so long as it is done as "part of a course of protected concerted activity." *Haynes Mechanical Systems*, No. Case 27-CA-171581, 2016 WL 8651991, at 4 (July 25, 2016) (memorandum from the GC's Division of Advice); GC 23-08, 2023 WL 3750775, at 2 (May 30, 2023) ("soliciting … co-workers to go work for a local competitor" is protected activity when done "as part of a broader course of protected concerted activity").

Here, Defendants' alleged solicitation of one another to form The Dumb Zone podcast was done as part of a broader course of protected concerted activity. Before forming the podcast, Defendants, for the purposes of mutual aid and protection, concertedly exercised an early termination option in Defendant Kemp's contract, concertedly attempted to negotiate a new contract, concertedly stopped work as part of those negotiations, and then concertedly resigned from their jobs. (Compl., ¶¶ 9, 14.)

35

Thus, Plaintiff's lawsuit attempts to apply the coworker non-solicitation rule against protected activity, which is a clear-cut violation of Section 8(a)(1).

The Board has never had an opportunity to address the issue of facial illegality of overbroad coworker non-solicitation rules. The last time an individual filed an unfair labor practice charge alleging that a coworker non-solicitation rule was facially illegal was in 2016. *Haynes Mechanical Systems,* No. Case 27-CA-171581, 2016 WL 8651991 (July 25, 2016).

In *Haynes Mechanical Systems*, the employer sued a former employee alleging the employee violated a coworker non-solicitation rule by soliciting a former coworker to come work with him at a competing business. *Id.* at 3. In response to the lawsuit, the former employee filed an unfair labor practice charge with the NLRB alleging that the coworker non-solicitation rule was facially illegal under *Lutheran Heritage*. Pursuant to 29 C.F.R. § 101.8, the Regional Director sent the case to the GC's Division of Advice because the case presented "novel and complex issues." *Id.* at 1.

Applying *Lutheran Heritage*, the GC's Division of Advice concluded that the provisions of the coworker non-solicitation rule were "unlawfully overbroad because employees would reasonably construe them to prohibit Section 7 activity." *Id.* at 4. The Division of Advice then directed the Regional Director to issue a complaint against the employer alleging that the non-solicitation rule violated Section 8(a)(1) and that the employer's lawsuit seeking to enforce the non-solicitation rule also separately violated Section 8(a)(1). *Id.* at 9. The Division of Advice also instructed the Regional Director to send the employer, and the judge presiding over the lawsuit, a *Loehmann's* letter stating that (1) the Region had issued a complaint against the employer, (2) the lawsuit is preempted, and (3) the employer has seven days to seek a stay of the lawsuit or else be subject to additional liability under the NLRA. *Id.* at 9; *see Loehmann's Plaza*, 305 NLRB 663,

36

671, fn. 56, Appx. C (1991). The parties reached a settlement agreement a few months later, which prevented the Board from issuing a final decision on the facial validity of coworker non-solicitation rules.

It is clear from the authorities above that Plaintiff's co-worker non-solicitation rule is at least arguably a facial violation of Section 8(a)(1). Further, the current GC has also indicated that these kinds of rules facially violate the NLRA. GC 23-08 at 2; Jennifer A. Abruzzo, *Guidance in Response to Inquiries About the McLaren Macomb Decision*, GC 23-05, 2023 WL 3567920, at 5 (Mar. 22, 2023) (in response to the question "Are there other provisions typically contained in severance-related agreements that you view as problematic?" the GC includes "no solicitation clauses" and "no poaching clauses").

Since *Stericycle* was decided, the GC has issued at least one complaint alleging that a company's coworker non-solicitation rule is facially illegal. **Exhibit E**, NLRB Complaint in *Juvly Aesthetics*, Case No. 09-CA-300239, ¶¶ 4(a), 4(c) (September 1, 2023).

Defendants have already filed charges with the NLRB alleging that this coworker non-solicitation rule facially violates Section 8(a)(1) and that Plaintiff has attempted to enforce it against activity protected by Section 7. Based on *Stericycle* and the other authorities cited above, Plaintiff's coworker non-solicitation rule, at the very least, arguably violates Section 8(a)(1). *Garmon*, 359 U.S. at 245. Defendants' interpretation of the NLRA in this regard is "not plainly contrary to its language" and has not been "authoritatively rejected by the courts or the Board." *Glacier Northwest, Inc.*, 143 S. Ct. at 1411. Defendants have also "put forth enough evidence to enable the court to find that the Board reasonably could uphold a claim based on such an interpretation." *Id.* Accordingly, *Garmon* preemption applies, and Plaintiff's claims based on the coworker non-solicitation rule should be dismissed.

####    viii.   The non-compete clauses are subject to *Garmon* preemption.

Plaintiff's Complaint alleges that Defendants violated the following non-compete rules:

[Defendant McDowell]

(Section 1.3) "Competing Business" means any person (including Employee) or entity carrying on a business that is the same or essentially the same as the Company Business.

[Defendant Kemp]

(Section 1.3) "Competing Business" means any person (including Employee) or entity carrying on a business that is the same or essentially the same as the Company Business. Competing Business shall include, without limitation, all commercial audio outlets, such as radio stations, radio networks, television stations, cable operators, podcasters, Internet/streamed radio and Internet/streamed programs/programming and other current and future audio platforms.

[Both Defendants]

(Section 7) AGREEMENT NOT TO COMPETE. While employed by the Company, and for six (6) months following termination of such employment, Employee shall not, directly or indirectly, engage in any activities the same or essentially the same as Employee's Job Duties for any Competing Business located or selling advertising within, or broadcasting to, the Business Area. Employee acknowledges that in the event Employee's employment terminates for any reason, Employee will be able to earn a livelihood without violating the foregoing restrictions and that Employee's ability to earn a livelihood without violating such restrictions is a material condition to employment with the Company. Employee further agrees that during the pendency of any litigation to enforce this Section 7, including all appeals, the non-compete period identified herein shall automatically be tolled for such period of time until the litigation is fully and finally resolved.

(Compl., ¶ 8-9.)

Specifically, Plaintiff alleges that Defendants violated these non-compete rules by publishing The Dumb Zone podcast. (*Id.*, ¶ 25-26.)

The Board has never had an opportunity to address whether overbroad non-compete rules are facially illegal and appears to have only decided one case about the unlawful application of a non-compete rule. *Liberty Mutual Ins. Co.*, 235 NLRB 1387, 1387-88 (1978) (where employer unlawfully discharged employee in violation of Section 8(a)(3) and (1), employee thereafter formed competing enterprise in apparent violation of non-compete agreement, and employer sued to enforce the agreement, Board ordered the employer to reimburse employee's legal defense costs), *enforcement denied on other grounds*, 592 F.2d 595 (1st Cir. 1979).

In May of 2023, the GC published a memorandum indicating that, under the *Stericycle* standard, "except in limited circumstances … the proffer, maintenance, and enforcement of [non-compete] agreements violate Section 8(a)(1) of the Act." GC 23-08, at 1. Specifically, the GC wrote:

> Non-compete provisions are overbroad, that is, they reasonably tend to chill employees in the exercise of Section 7 rights, when the provisions could reasonably be construed by employees to deny them the ability to quit or change jobs by cutting off their access to other employment opportunities that they are qualified for based on their experience, aptitudes, and preferences as to type and location of work. Generally speaking, this denial of access to employment opportunities chills employees from engaging in Section 7 activity because: employees know that they will have greater difficulty replacing their lost income if they are discharged for exercising their statutory rights to organize and act together to improve working conditions; employees' bargaining power is undermined in the context of lockouts, strikes, and other labor disputes; and, an employer's former employees are unlikely to reunite at a local competitor's workplace, and, thus be unable to leverage their prior relationships—and the communication and solidarity engendered thereby—to encourage each other to exercise their rights to improve working conditions in their new workplace.

*Id.* at 2.

The argument in GC 23-08 mirrors the arguments discussed above concerning the four other coercive rules. The GC identifies five types of protected activity that a non-compete rule

39

could reasonably be expected to chill: (1) "concertedly threatening to resign to demand better working conditions," (2) "carrying out concerted threats to resign or otherwise concertedly resigning to secure improved working conditions," (3) "concertedly seeking or accepting employment with a local competitor to obtain better working conditions," (4) "soliciting [one's] co-workers to go work for a local competitor as part of a broader course of protected concerted activity," and (5) "seeking employment … to specifically engage in protected activity with other workers at an employer's workplace." *Id.* 3-4. Based on that analysis, the GC concludes that non-compete rules are facially illegal unless they are "narrowly tailored to special circumstances justifying the infringement on employee rights." *Id.* at 4. The GC also clarifies that "a desire to avoid competition from a former employee" and "business interests in retaining employees or protecting special investments in training employees" are not likely to qualify as special circumstances justifying a non-compete rule. *Id.* 4-5.

The GC 23-08 memorandum demonstrates that Plaintiff's non-compete clause arguably violates Section 8(a)(1). It also demonstrates that the clause is being applied against Section 7 activity—Defendants engaged in four of the five protected activities listed in GC 23-08 and Plaintiff alleges that two of those protected activities constitute contractual breaches. (*Id.*, ¶ 25-26, 43.) The fact that this argument is made by the GC, who has "final authority, on behalf of the Board, in respect of the investigation of charges and issuance of complaints," makes this argument especially compelling, both legally and practically. 29 U.S.C. § 153(d).

Indeed, the GC has already issued a complaint alleging that a non-compete clause facially violates the NLRA based on the GC 23-08 memo. **Exhibit E**, NLRB Complaint in *Juvly Aesthetics*, Case No. 09-CA-300239, ¶ 4(c) (September 1, 2023). A press release accompanying the *Juvly Aesthetics* complaint explains that "the consolidated complaint alleges numerous

violations, including maintaining unlawful confidentiality, non-disparagement, **non-compete**, no-solicitation, and training repayment provisions." Office of Public Affairs, *Region 9-Cincinnati Issues Complaint Alleging Unlawful Non-Compete and Training Repayment Agreement Provisions (TRAPs)*, NLRB (September 7, 2023) (emphasis added).[4]

Defendants have already filed NLRB charges alleging these non-compete rules facially violate Section 8(a)(1) and that Plaintiff has attempted to enforce them against activity protected by Section 7. Based on *Stericycle* and the other authorities cited above, Plaintiff's non-compete rules at least arguably violate Section 8(a)(1). *Garmon*, 359 U.S. at 245. Defendants' interpretation of the NLRA in this regard is "not plainly contrary to its language" and has not been "authoritatively rejected by the courts or the Board." *Glacier Northwest, Inc.*, 143 S. Ct. at 1411. Defendants have also "put forth enough evidence to enable the court to find that the Board reasonably could uphold a claim based on such an interpretation." *Id.* Accordingly, *Garmon* preemption applies, and Plaintiff's claims based on the non-compete rules should be dismissed.

### ix.  Public Policy Underlying *Garmon*

Based on the foregoing, the low "arguably violates" bar for *Garmon* preemption is clearly satisfied with respect to the no-recording, confidentiality, non-disparagement, coworker non-solicitation, and non-compete rules at issue in this case. Thus, dismissal for lack of subject matter jurisdiction is necessary.

Moreover, beyond the specific legal arguments, it is important to understand the need to seek dismissal on *Garmon* preemption grounds. Plaintiff alleges, among other things, that Defendants breached these five contract clauses. One of Defendants' affirmative defenses to these claims is that, under the NLRA, these five clauses are unfair labor practices and, therefore,

---

[4] https://www.nlrb.gov/news-outreach/region-09-cincinnati/region-9-cincinnati-issues-complaint-alleging-unlawful-non

unenforceable. However, by statute, only the NLRB can decide whether an unfair labor practice has occurred. 29 U.S.C. § 160(a). Thus, the NLRB, not the Court, is the only body that can adjudicate that issue.

This is why "if the court determines that the party has met its burden to show that 'there is an arguable case for pre-emption,' it generally must grant the party's preemption defense and await the Board's resolution of the legal status of the relevant conduct. After that, 'only if the Board decides that the conduct is not protected or prohibited [by the NLRA] may the court entertain the litigation.'" *Glacier Northwest, Inc.*, 143 S. Ct. at 1411 (2023) (quoting *Davis*, 476 U.S. at 397 (1986)).

Failure to apply *Garmon* in this case would effectively make it impossible for Defendants to properly pursue their NLRA defenses and runs the very real risk of giving force to contract clauses that the NLRB subsequently decides are illegal coercive rules. Preventing parallel and contradictory legal proceedings over such activity is precisely what the *Garmon* preemption doctrine was designed to accomplish.

### B. Plaintiff's breach of contract claims should be dismissed under Rule 12(b)(6) because the clauses at issue are illegal or void as against public policy.

Defendants maintain that the Court does not have subject matter jurisdiction over Plaintiff's breach of contract claims discussed above, but in the alternative, those claims should be dismissed under Rule 12(b)(6) because they are void as against public policy.

An illegal contract is void and unenforceable. *See Denson v. Dallas Cty. Credit Un.*, 262 S.W.3d 846, 852 (Tex. App.—Dallas 2008, no pet.); A*cademy of Skills & Knowledge, Inc. v. Charter Sch., USA, Inc.*, 260 S.W.3d 529, 545 (Tex. App.—Tyler 2008, pet. denied); *Gupta v. Eastern Idaho Tumor Inst.*, 140 S.W.3d 747, 751-52 (Tex. App.—Houston [14th Dist.] 2004, pet. denied); *TCA Bldg. Co. v. Northwestern Res.*, 922 S.W.3d 629, 634-35 (Tex. App.—Waco 1996,

writ denied). A contract is illegal if the parties either (1) undertake to do an act that is forbidden by law in the place where the act is to occur or (2) make the contract with an intent to violate foreign law even if the act does not violate the laws of the place where the contract is made. *Ralston Purina Co. v. McKendrick*, 850 S.W.2d 629, 638-39 (Tex. App.—San Antonio 1993, writ denied); *see Franklin v. Jackson*, 847 S.W.2d 306, 309 (Tex. App.—El Paso 1992, writ denied).

Similarly, a contract with provisions that are against public policy cannot be enforced. *In re Lee,* 411 S.W.3d 445, 464 n. 9 (Tex. 2013) ("courts may refuse to enforce contracts that are either expressly or impliedly prohibited by statute or by public policy"); *Sacks v. Dallas Gold & Silver Exch., Inc*., 720 S.W.2d 177, 180 (Tex. App.—Dallas 1986, no writ); *see also City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 730 (Tex. App.—Fort Worth 2008, pet. dismissed) (contract violates public policy if it has tendency to injure public good). Whether a contract violates public policy is a question of law. *Johnson v. Structured Asset Servs., LLC*, 148 S.W.3d 711, 726 (Tex. App.—Dallas 2004, no pet.).

As discussed above, the clauses are either facially illegal under the NLRA, or at the very least, are against public policy. The NLRB precedent and General Counsel's memoranda make clear that the types of restrictive covenants made the basis of Plaintiff's claims are against public policy, as set forth by the NLRB and, in some instances, were further ratified by federal appellate courts. Thus, the illegal nature of the clauses is apparent from Plaintiff's pleadings alone. In sum, the contract provisions Plaintiff seeks to enforce are void as a matter of law due to illegality and being against public policy. Therefore, the Court should dismiss Plaintiff's breach of contract

claims based on non-competition, non-solicitation of co-workers, confidentiality, non-disparagement, and unauthorized recording provisions.

###### C. Plaintiff's conversion claims are subject to dismissal under Rule 12(b)(6) because Texas does not recognize a cause of action for conversion of intangible property.

Plaintiff alleged that Defendants converted a logo, the name of a show, a website, and social media accounts. Even assuming the truth of Plaintiff's allegations for purposes of this motion, the dismissal of the conversion claims is warranted because the only property allegedly converted is intangible property.

Texas law has never recognized a cause of action for conversion of intangible property except in cases where an underlying intangible right has been merged into a document and that document has been converted. *See Neles-Jamesbury, Inc. v. Bill's Valves*, 974 F. Supp. 979, 982 (S.D. Tex. 1997) (add parenthetical); *Express One Int'l v. Steinbeck*, 53 S.W.3d 895, 901 (Tex. App.—Dallas 2001, no pet.).

When an "allegation involves only intellectual property rights ... rather than rights regarding physical property ... [it] is outside the scope of Texas conversion law, which concerns only physical property." *Carson v. Dynegy, Inc.,* 344 F.3d 446, 456 (5th Cir. 2003). "Intellectual property rights are largely the province of federal law, and the Fifth Circuit has expressly held state law claims such as conversion 'based on ideas fixed in tangible media' are preempted by the Copyright Act." *Beardmore v. Jacobsen*, 131 F. Supp. 3d 656, 667 (S.D. Tex. 2015) (quoting *Spear Mktg., Inc. v. BancorpSouth Bank,* 791 F.3d 586, 597 (5th Cir. 2015)).

The Southern District of Texas held a website was not subject to conversion. Specifically, the *Simmonds* court found allegations insufficient to state a claim for conversion under Texas law because the plaintiff alleged conversion of its website. *Simmonds Equip., LLC v. GGR int'l, Inc.*,

126 F. Supp. 3d 855, 869 (S.D. Tex. 2015). "[A] website is intangible, and conversion applies only to tangible property under Texas law." *Id.*

"Courts have likewise denied claims of conversion of a trademark . . . and conversion of trade dress." *Beardmore*, 131 F. Supp. 3d at 667 (citing *Neles–Jamesbury, Inc.*, 974 F. Supp. at 982 (trademark); *Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F. Supp. 1513, 1569 (S.D. Tex. 1996), *aff'd as modified,* 155 F.3d 526 (5th Cir. 1998) (trade dress)).

Therefore, Plaintiff's Complaint fails to state a viable claim for conversion and should be dismissed.

### D. Plaintiff's conclusory allegations against Defendants warrant dismissal under Rule 12(b)(6). Alternatively, Plaintiff should be required to provide a more definite statement pursuant to Rule 12(e).

Plaintiff's claims fail to meet the applicable federal pleading standard and should be dismissed under Rule 12(b)(6). *See* Fed. R. Civ. P. 12(e); *Twombly*, 550 U.S. at 555, 559; *Iqbal*, 556 U.S. at 678. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (internal quotation marks omitted); *see also Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008) ("Factual allegations must be enough to raise a right to relief above the speculative level …") (quoting *Twombly*, 550 U.S. 544).

Alternatively, if the Court decides to maintain Plaintiff's claims against Defendants, then Plaintiff should be ordered to provide a more definite statement of its claims against each of them. In its current form, the Petition is so vague and ambiguous that Defendants cannot reasonably prepare responsive pleadings. *See* Fed. R. Civ. P. 12(e). With the exception of a handful of specific statements referenced in the Complaint as attributable to an individual, Defendants do not know which of them is alleged to have committed which acts.

The Complaint contains improper group pleading as it fails to distinguish among the different Defendants and asserts most of the allegations generally against both Defendants. *See, e.g.*, Compl. at 1-4, ¶¶ 13, 17, 18, 21, 35. Plaintiff alleges generally that "Defendants" are liable for a laundry list of claims and actions. *See id.* "Lumping defendants together is insufficient to state a claim against any of them." *Brown v. ASC Mortgage/U.S. Bank Nat. Ass'n ex rel. Structured Asset Inv. Loan Trust*, No. 4:15-CV-547-A, 2015 WL 5559441, *2 (N.D. Tex. Sept. 18, 2015) (citing *Chyba v. EMC Mortgage Corp.*, 450 F. App'x 404, 406 (5th Cir. 2011)).

The Complaint is fatally deficient because it fails to allege sufficient facts regarding the conduct upon which the claims against Mr. Kemp is based versus the conduct and claims alleged against Mr. McDowell. Except for the non-disparagement claim asserted solely against Mr. Kemp, Plaintiff fails to sufficiently identify what each Defendant did or failed to do that would subject him to liability. *See Brown*, 2015 WL 5559441 at *2; *see also Twombly*, 550 U.S. at 555-56 (plaintiff must plead plausible grounds upon which its claim rests). Plaintiff does not identify the specific conduct by each Defendant that would subject him to liability for breach of contract, fiduciary duty, conversion, and Lanham Act claims. *See, e.g.*, Compl., ¶¶ 39-40, 42, 58-59, 64-65, 69-70.

Additionally, Plaintiff lacks factual allegations that would support the legal conclusions regarding multiple causes of action asserted in the Complaint.

Regarding Count I - Plaintiff's breach of contract claims as to the advertiser non-solicitation clause - Plaintiff makes only a conclusory and vague allegation that "Defendants solicited Susquehanna's sponsors and customers to advertise on The Dumb Zone." Compl. ¶ 42. Plaintiff fails to allege which defendant engaged in such conduct, and which advertiser was allegedly solicited, and what conduct an individual defendant engaged in that Plaintiff alleges

constitutes solicitation of advertisement on The Dumb Zone. This is a textbook example of a pleading too conclusory to state a viable claim. Further, Plaintiff's own pleading reflects that Defendants do not even advertise on The Dumb Zone. Plaintiff itself alleges that The Dumb Zone is offered on a subscription-based podcast service funded by listener payments—"Defendants broadcasted The Dumb Zone on patreon.com/thedumbzone for $6.90 per month to the same listeners who used to tune into The Ticket." Compl. at 2. Plaintiff's failure to identify the conduct they consider soliciting, which advertiser(s) were allegedly solicited, and by whom highlights the fatal deficiency of its pleading.

Regarding Count II—Plaintiff's breach of contract claim against Mr. Kemp based on a non-disparagement clause—the vague and conclusory nature of Plaintiff's Complaint includes that it contains no factual allegations of statements or conduct by Mr. Kemp that would violate the non-disparagement clause, even reading that clause in a light most favorable to Plaintiff. *See, e.g.*, Compl., at 2 n.1,[5] ¶¶ 29 n.6, 31, 33, 34. Plaintiff also provides only conclusory assertions *that* alleged statements disparage it, lacking factual allegations sufficient to establish how the statement is disparaging to Plaintiff. *See, e.g.*, Compl. at 4, ¶¶ 48-50. This is especially problematic from a notice pleading standpoint given that Plaintiff does not rely on the accepted legal definition of business disparagement, but rather relies on a vague contract clause that does not define disparagement but states that it includes anything that can reasonably be expected to damage Plaintiff or a litany of other entities (by its plain terms, this would turn true, free speech into prohibited disparagement). *See* Compl., ¶ 9.

---

[5] Even assuming the truth of Plaintiff's allegations, note that Plaintiff only alleges what the Kemp Agreement required, not that Plaintiff actually paid Kemp all that was required under the Kemp Agreement, thus the pleading fails to assert factual allegations that would establish the falsity necessary for unlawful disparagement.

Regarding Count IV—Plaintiff's breach of fiduciary duty claims—Plaintiff makes only a conclusory and vague allegation that Defendants were "in positions of seniority" with no factual allegations to support same (and this is certainly something Defendants dispute). *See* Compl., ¶ 62. Plaintiff did not allege, for example, that either Defendant was in a supervisory role or had even had a single person reporting to them under the organizational structure. Plaintiff makes the conclusory assertion that Defendants misappropriated confidential information and trade secrets but fails to assert factual allegations identifying specific information that would meet the legal criteria for trade secrets or actionable confidential information. *See* Compl., ¶ 64; *cf.* Compl., ¶ 13.

Regarding Count V—Plaintiff's Lanham Act claims—Plaintiff lacks sufficient factual allegations to support a viable claim of an enforceable trademark or enforceable intellectual property rights over the "The Dumb Zone." *See* Compl., ¶¶ 68-69. Further, the Complaint contains vague and conclusory allegations as to what conduct allegedly causes misleading impressions and market confusion. *See* Compl., ¶ 70. Moreover, to the extent Plaintiff claims an intellectual property right over program formatting of the kind described in the factual allegations (having an opening segment, discussing sports, general news, events in history, "guy talk"), it would appear Plaintiff is asserting an exclusive property right over any radio show or podcast segment discussing these general topics. *See* Compl., ¶¶ 11, 24, 69-70. That claim is clearly not viable and one for which relief cannot be granted.

Finally, because Plaintiff fails to state claims upon which relief can be granted, its requests for relief in the forms of attorney's fees and injunctive relief, likewise should be dismissed.

Put simply, Plaintiff failed to provide sufficient notice of the conduct of which it complains. *See Iqbal*, 556 U.S. at 678-79 (Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."); *see also Brown*, 2015 WL 5559441 at *2. Thus, the

48

Complaint fails to allege sufficient facts to assert a viable claim against either Defendant, and the Court should dismiss all of Plaintiff's claims against Defendants under Rule 12(b)(6).

Alternatively, if the Court maintains Plaintiff's claims, it should order Plaintiff to provide a more definite statement of the claims against Defendants that identifies the specific conduct allegedly committed by each individual Defendant.

## III.   Conclusion

Plaintiff's Complaint should be dismissed for multiple reasons. First, the court lacks subject matter jurisdiction because of *Garmon* preemption as to Plaintiffs claims for breach of contract, except for Plaintiff's claim for breach of contract based on the advertiser non-solicitation clause. The remainder of Plaintiff's claims should be dismissed for failure to state a claim upon which relief can be granted. Further, Plaintiff's claims that are subject to *Garmon* preemption would also warrant dismissal for failure to state a claim, but the jurisdictional challenge must be taken up first and is dispositive on those claims.

Plaintiff's breach of contract claims fail under Rule 12(b)(6) because the clauses that are the basis of the claims are illegal under the NLRA and void as against public policy (except for the advertiser non-solicitation). Plaintiff's breach of contract claims based on advertiser non-solicitation, breach of fiduciary duty, and Lanham Act claims fail under Rule 12(b)(6) because it is based on conclusory allegations and the Complaint lacks sufficient factual allegations to entitle the pleader to legal relief. Plaintiff's conversion claim fails under Rule 12(b)(6) because Plaintiff fails to allege actionable property under Texas law.

Alternatively, Plaintiff should be ordered to replead with a more definite statement of its factual allegations against each Defendant to enable meaningful responsive pleadings.

49

For the foregoing reasons, Defendants respectfully request that the Court enter an Order granting its Motion to Dismiss Plaintiff's Complaint. Alternatively, if the Court denies Defendants' Motion to Dismiss, Defendants respectfully request that the Court enter an Order requiring Plaintiff to amend its pleading to provide a more definite statement of the claims against Defendants.



# UNITED STATES GOVERNMENT
# NATIONAL LABOR RELATIONS BOARD



REGION 16
819 Taylor Street, Room 8A24
Fort Worth, TX 76102-6107

Agency Website: www.nlrb.gov
Telephone: (817)978-2921
Fax: (817)978-2928

Download
NLRB
Mobile App

July 28, 2023

DANIEL RYAN MCDOWELL
961 THOUSAND OAKS CT
SOUTHLAKE, TX 76092

Re:     Susquehanna Radio LLC
        Case 16-CA-322654

DEAR MR. MCDOWELL:

The charge that you filed in this case on July 27, 2023 has been docketed as case number 16-CA-322654. This letter tells you how to contact the Board agent who will be investigating the charge, explains your right to be represented, discusses presenting your evidence, and provides a brief explanation of our procedures, including how to submit documents to the NLRB.

**Investigator:** This charge is being investigated by Field Attorney RACHEL JACKSON whose telephone number is (682)703-7218. If this Board agent is not available, you may contact Supervisory Field Attorney ROBERTO PEREZ whose telephone number is (210)417-4075.

**Right to Representation:** You have the right to be represented by an attorney or other representative in any proceeding before us. If you choose to be represented, your representative must notify us in writing of this fact as soon as possible by completing *Form NLRB-4701, Notice of Appearance*. This form is available on our website, www.nlrb.gov, or from an NLRB office upon your request.

If you are contacted by someone about representing you in this case, please be assured that no organization or person seeking your business has any "inside knowledge" or favored relationship with the National Labor Relations Board. Their knowledge regarding this proceeding was only obtained through access to information that must be made available to any member of the public under the Freedom of Information Act.

**Presentation of Your Evidence:** As the party who filed the charge in this case, it is your responsibility to meet with the Board agent to provide a sworn affidavit, or provide other witnesses to provide sworn affidavits, and to provide relevant documents within your possession. Because we seek to resolve labor disputes promptly, you should be ready to promptly present your affidavit(s) and other evidence. If you have not yet scheduled a date and time for the Board agent to take your affidavit, please contact the Board agent to schedule the affidavit(s). If you fail to cooperate in promptly presenting your evidence, your charge may be dismissed without investigation.

**Preservation of all Potential Evidence:** Please be mindful of your obligation to preserve all relevant documents and electronically stored information (ESI) in this case, and to take all steps necessary to avoid the inadvertent loss of information in your possession, custody

Susquehanna Radio LLC                          - 2 -                          July 28, 2023
Case 16-CA-322654

or control.  Relevant information includes, but is not limited to, paper documents and all ESI (e.g. SMS text messages, electronic documents, emails, and any data created by proprietary software tools) related to the above-captioned case.

**Prohibition on Recording Affidavit Interviews:** It is the policy of the General Counsel to prohibit affiants from recording the interview conducted by Board agents when subscribing Agency affidavits. Such recordings may impede the Agency's ability to safeguard the confidentiality of the affidavit itself, protect the privacy of the affiant and potentially compromise the integrity of the Region's investigation.

**Correspondence:** All documents submitted to the Region regarding your case MUST be filed through the Agency's website, www.nlrb.gov. This includes all formal pleadings, briefs, as well as affidavits, documentary evidence, and position statements. The Agency requests all evidence submitted electronically to be in the form it is normally used and maintained in the course of business (i.e., native format). Where evidence submitted electronically is not in native format, it should be submitted in a manner that retains the essential functionality of the native format (i.e., in a machine-readable and searchable electronic format).

If you have questions about the submission of evidence or expect to deliver a large quantity of electronic records, please promptly contact the Board agent investigating the charge. If you cannot e-file your documents, you must provide a statement explaining why you do not have access to the means for filing electronically or why filing electronically would impose an undue burden.

In addition, this Region will be issuing case-related correspondence and documents, including complaints, compliance specifications, dismissal letters, deferral letters, and withdrawal letters, electronically to the email address you provide. Please ensure that you receive important case-related correspondence, please ensure that the Board Agent assigned to your case has your preferred email address. These steps will ensure that you receive correspondence faster and at a significantly lower cost to the taxpayer.  If there is some reason you are unable to receive correspondence via email, please contact the agent assigned to your case to discuss the circumstances that prevent you from using email.

**Controlled Unclassified Information (CUI):**  This National Labor Relations Board (NLRB) proceeding may contain Controlled Unclassified Information (CUI). Subsequent information in this proceeding may also constitute CUI. National Archives and Records Administration (NARA) regulations at 32 CFR Part 2002 apply to all executive branch agencies that designate or handle information that meets the standards for CUI.

\* \* \*

Information about the Agency, the procedures we follow in unfair labor practice cases and our customer service standards is available on our website, www.nlrb.gov or from an NLRB office upon your request. *NLRB Form 4541, Investigative Procedures* offers information that is helpful to parties involved in an investigation of an unfair labor practice charge.

EXHIBIT A

We can provide assistance for persons with limited English proficiency or disability. Please let us know if you or any of your witnesses would like such assistance.

Very truly yours,

TIMOTHY L. WATSON
REGIONAL DIRECTOR

Enclosure
1. Important Information About NLRB Investigations for Immigrant Workers (English & Spanish)

cc:    MATTHEW DON BRUENIG
124 4TH ST
STAMFORD, CT 06905

EXHIBIT A

FORM NLRB-501
(3-21)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**CHARGE AGAINST EMPLOYER**

DO NOT WRITE IN THIS SPACE

| Case | Date Filed |
|------|-----------|
| 16-CA-322654 | 7/27/2023 |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

## 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer<br>Susquehanna Radio LLC | b. Tel. No.<br>(404) 949-0700 |
|---|---|
| | c. Cell No. |
| | f. Fax. No. |
| d. Address *(Street, city, state, and ZIP code)*<br>780 Johnson Ferry Road Suite 500<br><br>GA Atlanta 30342 | e. Employer Representative<br><br>Richard S Denning<br>General Counsel |
| | g. e-mail<br>richard.denning@cumulus.com |
| | h. Number of workers employed<br>50 |
| i. Type of Establishment *(factory, mine, wholesaler, etc.)*<br>Broadcasting & Cable TV | j. Identify principal product or service<br>Radio Station |

The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and (list subsections) 1 of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

**2. Basis of the Charge** *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

--See additional page--

| 3. Full name of party filing charge *(if labor organization, give full name, including local name and number)*<br>Daniel Ryan McDowell | |
|---|---|
| 4a. Address *(Street and number, city, state, and ZIP code)*<br><br>961 Thousand Oaks Court<br>TX Southlake 76092 | 4b. Tel. No.<br>(214) 893-2348 |
| | 4c. Cell No.<br>(214) 893-2348 |
| | 4d. Fax No. |
| | 4e. e-mail<br>dan1310@hotmail.com |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit *(to be filled in when charge is filed by a labor organization)*

| 6. DECLARATION<br>I declare that I have read the above charge and that the statements<br>are true to the best of my knowledge and belief. | Tel. No.<br>(857) 540-1205 |
|---|---|
| *(signature)* Matthew Don Bruenig | Office, if any, Cell No.<br>(857) 540-1205 |
| *(signature of representative or person making charge)*    *(Print/type name and title or office, if any)* | Fax No. |
| 124 4th St<br>Address Stamford CT 06905      Date 07/27/2023 12:24:55 PM | e-mail<br>matthewbruenig@gmail.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**
**PRIVACY ACT STATEMENT**

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information may cause the NLRB to decline to invoke its processes.

EXHIBIT A

# Basis of the Charge

**8(a)(1)**

Within the previous six-months, the Employer has interfered with, restrained, and coerced its employees in the exercise of rights protected by Section 7 of the Act by maintaining work rules that prevent or discourage employees from engaging in protected concerted activities.

| Work Rule |
|---|
| Overbroad non-compete agreement |
| Overbroad non-solicitation agreement |

EXHIBIT A



# UNITED STATES GOVERNMENT
# NATIONAL LABOR RELATIONS BOARD

REGION 16
819 Taylor Street, Room 8A24
Fort Worth, TX 76102-6107

Agency Website: www.nlrb.gov
Telephone: (817)978-2921
Fax: (817)978-2928

Download
NLRB
Mobile App

July 28, 2023

JAKE KEMP
905 E WORTH ST
GRAPEVINE, TX 76051

Re: Susquehanna Radio LLC
Case 16-CA-322680

DEAR MR. KEMP:

The charge that you filed in this case on July 27, 2023 has been docketed as case number 16-CA-322680. This letter tells you how to contact the Board agent who will be investigating the charge, explains your right to be represented, discusses presenting your evidence, and provides a brief explanation of our procedures, including how to submit documents to the NLRB.

**Investigator:** This charge is being investigated by Field Attorney RACHEL JACKSON whose telephone number is (682)703-7218. If this Board agent is not available, you may contact Supervisory Field Attorney ROBERTO PEREZ whose telephone number is (210)417-4075.

**Right to Representation:** You have the right to be represented by an attorney or other representative in any proceeding before us. If you choose to be represented, your representative must notify us in writing of this fact as soon as possible by completing *Form NLRB-4701, Notice of Appearance*. This form is available on our website, www.nlrb.gov, or from an NLRB office upon your request.

If you are contacted by someone about representing you in this case, please be assured that no organization or person seeking your business has any "inside knowledge" or favored relationship with the National Labor Relations Board. Their knowledge regarding this proceeding was only obtained through access to information that must be made available to any member of the public under the Freedom of Information Act.

**Presentation of Your Evidence:** As the party who filed the charge in this case, it is your responsibility to meet with the Board agent to provide a sworn affidavit, or provide other witnesses to provide sworn affidavits, and to provide relevant documents within your possession. Because we seek to resolve labor disputes promptly, you should be ready to promptly present your affidavit(s) and other evidence. If you have not yet scheduled a date and time for the Board agent to take your affidavit, please contact the Board agent to schedule the affidavit(s). If you fail to cooperate in promptly presenting your evidence, your charge may be dismissed without investigation.

**Preservation of all Potential Evidence:** Please be mindful of your obligation to preserve all relevant documents and electronically stored information (ESI) in this case, and to take all steps necessary to avoid the inadvertent loss of information in your possession, custody

EXHIBIT B

or control. Relevant information includes, but is not limited to, paper documents and all ESI (e.g. SMS text messages, electronic documents, emails, and any data created by proprietary software tools) related to the above-captioned case.

**Prohibition on Recording Affidavit Interviews:** It is the policy of the General Counsel to prohibit affiants from recording the interview conducted by Board agents when subscribing Agency affidavits. Such recordings may impede the Agency's ability to safeguard the confidentiality of the affidavit itself, protect the privacy of the affiant and potentially compromise the integrity of the Region's investigation.

**Correspondence:** All documents submitted to the Region regarding your case MUST be filed through the Agency's website, www.nlrb.gov. This includes all formal pleadings, briefs, as well as affidavits, documentary evidence, and position statements. The Agency requests all evidence submitted electronically to be in the form it is normally used and maintained in the course of business (i.e., native format). Where evidence submitted electronically is not in native format, it should be submitted in a manner that retains the essential functionality of the native format (i.e., in a machine-readable and searchable electronic format).

If you have questions about the submission of evidence or expect to deliver a large quantity of electronic records, please promptly contact the Board agent investigating the charge. If you cannot e-file your documents, you must provide a statement explaining why you do not have access to the means for filing electronically or why filing electronically would impose an undue burden.

In addition, this Region will be issuing case-related correspondence and documents, including complaints, compliance specifications, dismissal letters, deferral letters, and withdrawal letters, electronically to the email address you provide. Please ensure that you receive important case-related correspondence, please ensure that the Board Agent assigned to your case has your preferred email address. These steps will ensure that you receive correspondence faster and at a significantly lower cost to the taxpayer. If there is some reason you are unable to receive correspondence via email, please contact the agent assigned to your case to discuss the circumstances that prevent you from using email.

**Controlled Unclassified Information (CUI):** This National Labor Relations Board (NLRB) proceeding may contain Controlled Unclassified Information (CUI). Subsequent information in this proceeding may also constitute CUI. National Archives and Records Administration (NARA) regulations at 32 CFR Part 2002 apply to all executive branch agencies that designate or handle information that meets the standards for CUI.

*  *  *

Information about the Agency, the procedures we follow in unfair labor practice cases and our customer service standards is available on our website, www.nlrb.gov or from an NLRB office upon your request. *NLRB Form 4541, Investigative Procedures* offers information that is helpful to parties involved in an investigation of an unfair labor practice charge.

EXHIBIT B

We can provide assistance for persons with limited English proficiency or disability. Please let us know if you or any of your witnesses would like such assistance.

Very truly yours,

TIMOTHY L. WATSON
REGIONAL DIRECTOR

Enclosure

1. Important Information About NLRB Investigations for Immigrant Workers (English & Spanish)

cc:    MATTHEW DON BRUENIG
124 4TH ST
STAMFORD, CT 06905

EXHIBIT B

**UNITED STATES OF AMERICA**
**NATIONAL LABOR RELATIONS BOARD**
**CHARGE AGAINST EMPLOYER**

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case | Date Filed |
| 16-CA-322680 | 7/27/2023 |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

## 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer | | b. Tel. No. |
|---|---|---|
| Susquehanna Radio LLC | | (404) 949-0700 |
| | | c. Cell No. |
| | | |
| | | f. Fax. No. |
| | | |
| d. Address *(Street, city, state, and ZIP code)* | e. Employer Representative | g. e-mail |
| 780 Johnson Ferry Road Suite 500 | Richard S Denning | |
| | General Counsel | richard.denning@cumulus.com |
| GA Atlanta 30342 | | h. Number of workers employed |
| | | 50 |
| i. Type of Establishment *(factory, mine, wholesaler, etc.)* | j. Identify principal product or service | |
| Broadcasting & Cable TV | Radio Station | |

The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and

(list subsections) 1 of the National Labor Relations Act, and these unfair labor

practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are practices affecting commerce within the

meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

--See additional page--

| 3. Full name of party filing charge *(if labor organization, give full name, including local name and number)* | |
|---|---|
| Jake Kemp | |

| 4a. Address *(Street and number, city, state, and ZIP code)* | 4b. Tel. No. |
|---|---|
| | (817) 266-2674 |
| | 4c. Cell No. |
| 905 E. Worth St | (817) 266-2674 |
| TX Grapevine 76051 | 4d. Fax No. |
| | |
| | 4e. e-mail |
| | jkemp88@gmail.com |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit *(to be filled in when charge is filed by a labor organization)*

| 6. DECLARATION | Tel. No. |
|---|---|
| I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief. | (857) 540-1205 |
| | Office, if any, or Cell No. |
| MDrun Matthew Don Bruenig | (857) 540-1205 |
| *(signature of representative or person making charge)* *(Print/type name and title or office, if any)* | Fax No. |
| 124 4th St | |
| Address Stamford CT 06905 Date 07/27/2023 12:30:38 PM | e-mail |
| | matthewbruenig@gmail.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**
**PRIVACY ACT STATEMENT**

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information may cause the NLRB to decline to invoke its processes.

EXHIBIT B

# Basis of the Charge

**8(a)(1)**

Within the previous six-months, the Employer has interfered with, restrained, and coerced its employees in the exercise of rights protected by Section 7 of the Act by maintaining work rules that prevent or discourage employees from engaging in protected concerted activities.

| Work Rule |
|---|
| Overbroad non-compete agreement |
| Overbroad non-solicitation agreement |

EXHIBIT B

FORM NLRB-501
(3-21)
Case 3:23-cv-01746-S Document 45 Filed 09/14/23 Page 61 of 75 PageID 521
EXHIBIT C
UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**AMENDED CHARGE AGAINST EMPLOYER**
DO NOT WRITE IN THIS SPACE

| Case | Date Filed |
|------|------------|
|      |            |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

### 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer<br>Susquehanna Radio LLC | | b. Tel. No.<br>(404) 949-0700 |
|---|---|---|
| | | c. Cell No. |
| | | f. Fax. No. |
| d. Address *(Street, city, state, and ZIP code)*<br>780 Johnson Ferry Road Suite 500<br>GA Atlanta 30342 | e. Employer Representative<br>Richard S Denning<br>General Counsel | g. e-mail<br>richard.denning@cumulus.com |
| | | h. Number of workers employed<br>50 |
| i. Type of Establishment *(factory, mine, wholesaler, etc.)*<br>Broadcasting & Cable TV | j. Identify principal product or service<br>Radio Station | |

The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and (list subsections)   1                                              of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

### 2. Basis of the Charge *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

Employer maintained, threatened to enforce, and attempted to enforce an overbroad non-compete provision, overbroad coworker non-soliciation provision, overbroad confidentiality provision, and an overbroad no-recording rule.

Employer filed a preempted, baseless, and retaliatory lawsuit against the charging party for engaging in Section 7 protected activity.

| 3. Full name of party filing charge *(if labor organization, give full name, including local name and number)*<br>Daniel McDowell | |
|---|---|
| 4a. Address *(Street and number, city, state, and ZIP code)*<br>961 Thousand Oaks Court<br>Southlake, TX 76092 | 4b. Tel. No.<br>(214) 893-2348 |
| | 4c. Cell No.<br>(214) 893-2348 |
| | 4d. Fax No. |
| | 4e. e-mail<br>dan1310@hotmail.com |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit *(to be filled in when charge is filed by a labor organization)*

| 6. DECLARATION<br>I declare that I have read the above charge and that the statements<br>are true to the best of my knowledge and belief. | | Tel. No.<br>(857) 540-1205 |
|---|---|---|
| *Matthew Bruenig* (signature)<br><br>*(signature of representative or person making charge)* | Matthew Bruenig<br><br>*(Print/type name and title or office, if any)* | Office, if any, Cell No. |
| | | Fax No. |
| Address   124 4th St, Stamford, CT 06905 | Date   08/07/2023 | e-mail<br>matthewbruenig@gmail.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**
**PRIVACY ACT STATEMENT**

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information may cause the NLRB to decline to invoke its processes.

FORM NLRB-501
(3-21)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**SECOND AMENDED CHARGE AGAINST EMPLOYER**

DO NOT WRITE IN THIS SPACE

| Case | Date Filed |
|------|-----------|
|      |           |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

### 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer | b. Tel. No. |
|---------------------|-------------|
| Susquehanna Radio LLC | (404) 949-0700 |

| | c. Cell No. |
| | f. Fax. No. |

| d. Address *(Street, city, state, and ZIP code)* | e. Employer Representative | g. e-mail |
|---|---|---|
| 780 Johnson Ferry Road Suite 500 GA Atlanta 30342 | Richard S Denning General Counsel | richard.denning@cumulus.com |
| | | h. Number of workers employed 50 |

| i. Type of Establishment *(factory, mine, wholesaler, etc.)* | j. Identify principal product or service |
|---|---|
| Broadcasting & Cable TV | Radio Station |

The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and (list subsections)   1                                                                    of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

### 2. Basis of the Charge *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

Employer maintained, threatened to enforce, and attempted to enforce an overbroad non-compete provision, overbroad coworker non-solicitation provision, overbroad confidentiality provision, overbroad non-disparagement provision, and an overbroad no-recording rule.

Employer filed a preempted, baseless, and retaliatory lawsuit against the charging party for engaging in Section 7 protected activity.

### 3. Full name of party filing charge *(if labor organization, give full name, including local name and number)*
Jacob Kemp

| 4a. Address *(Street and number, city, state, and ZIP code)* | 4b. Tel. No. |
|---|---|
| 905 E. Worth St TX Grapevine 76051 | (817) 266-2674 |
| | 4c. Cell No. (817) 266-2674 |
| | 4d. Fax No. |
| | 4e. e-mail jkemp88@gmail.com |

### 5. Full name of national or international labor organization of which it is an affiliate or constituent unit *(to be filled in when charge is filed by a labor organization)*

### 6. DECLARATION
I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.

*Matthew Bruenig* (signature)

Matthew Bruenig

*(signature of representative or person making charge)*     *(Print/type name and title or office, if any)*

124 4th St, Stamford, CT 06905
Address _____     Date 08/07/2023

| Tel. No. |
|---|
| (857) 540-1205 |
| Office, if any, Cell No. |
| Fax No. |
| e-mail matthewbruenig@gmail.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**
**PRIVACY ACT STATEMENT**

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information may cause the NLRB to decline to invoke its processes.

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 9

HARPER HOLDINGS, LLC D/B/A JUVLY
AESTHETICS

        and

NICOLE CORDERO, AN INDIVIDUAL

        and

BROOKE CARROLL, AN INDIVIDUAL

        and

KRISTIN DOEDE, AN INDIVIDUAL

Cases 09-CA-300239
09-CA-301669

Case  09-CA-302692

Case 18-CA-308596

## ORDER CONSOLIDATING CASES, CONSOLIDATED COMPLAINT AND NOTICE OF HEARING

Pursuant to Section 102.33 of the Rules and Regulations of the National Labor Relations Board (the Board) and to avoid unnecessary costs or delay, IT IS ORDERED THAT Case 09-CA-300239 and Case 09-CA-301669, which are based on charges filed by Nicole Cordero (Cordero), an individual, Case 09-CA-302692, which is based on a charge filed by Brooke Carroll (Carroll), an individual, and Case 18-CA-308596, which is based on a charge filed by Kristin Doede (Doede), an individual, against Harper Holdings, LLC d/b/a Juvly Aesthetics (Respondent), respectively, are consolidated.

This Order Consolidating Cases, Consolidated Complaint and Notice of Hearing, which is based on these charges, is issued pursuant to Section 10(b) of the National Labor Relations Act (the Act), 29 U.S.C. § 151 et seq., and Section 102.15 of the Board's Rules and Regulations, and alleges Respondent has violated the Act as described below.

1

EXHIBIT E

1.  (a)  The charge in Case 09-CA-300239 was filed by Cordero on July 27, 2022, and a copy was served on Respondent by U.S. mail on July 28, 2022.

(b)  The charge in Case 09-CA-301669 was filed by Cordero on August 17, 2022, and a copy was served on Respondent by U.S. mail on August 19, 2022.

(c)  The charge in Case 09-CA-302692 was filed by Carroll on September 1, 2022, and a copy was served on Respondent by U.S. mail on September 6, 2022.

(d)  The charge in Case 18-CA-308596 was filed by Doede on December 9, 2022, and a copy was served on Respondent by U.S. mail on that same date.

(e)  The first amended charge in Case 18-CA-308596 was filed by Doede on December 29, 2022, and a copy was served on Respondent by U.S. mail on January 5, 2023.

(f)  The second amended charge in Case 18-CA-308596 was filed by Doede on March 29, 2023, and a copy was served on Respondent by U.S. mail on March 30, 2023.

2.  (a)  At all material times, Respondent has been an Ohio limited liability corporation with 10 facilities throughout the United States, including an office and place of business in Cincinnati, Ohio and Schofield, Wisconsin, and has been engaged in the operation of medical clinics and spas providing outpatient non-surgical aesthetic services.

(b)  In conducting its operations at its Cincinnati, Ohio facility during the 12-month period ending August 1, 2023, Respondent derived gross revenues in excess of $250,000.

(c)  During the same period of time described above in paragraph 2(b), Respondent purchased and received at its Cincinnati, Ohio facility goods valued in excess of $5,000 from points outside the State of Ohio.

(d)  At all material times, Respondent has been an employer engaged in commerce within the meaning of Section 2(2), (6) and (7) of the Act.

2

EXHIBIT E

3.   At all material times, the following individuals held the positions set forth opposite their respective names and have been supervisors of Respondent within the meaning of Section 2(11) of the Act and agents of Respondent within the meaning of Section 2(13) of the Act:

| | | |
|---|---|---|
| Justin Harper | - | CEO and Medical Director |
| Jessica Sarkis | - | Certified Physician Assistant |
| Jordan Livingston | - | HR Manager |

4.   (a)  Since about January 28, 2022, Respondent has maintained the following rules in its employees' Offers of Employment:

[…]

You will be expected to abide by and adhere to the Company's rules and standards. Specifically, you will be required to sign an acknowledgment that you have read, understand, and agree to the Company employee handbook, Covid-19 Reopening Procedure, and Confidentiality Agreement. As a condition of your employment, you will be subject to all applicable employment and other company policies. You will also agree to execute any additional agreements required by the Company at the start of your employment. You further agree that you will be bound by at all times during your employment (and afterward as applicable) and will fully comply with these additional agreements. Upon completing your employment, you agree to the exit process, including an exit interview and attestation of compliance with contractual obligations and requirements.

[…]

During the period commencing on the Employee's […] start date and through 24 months after termination, the Employee shall not, without the Company's prior written consent, directly or indirectly, (i) solicit or encourage any person to leave the employment or other service of the Company or its Affiliates, or (ii) hire, on behalf of the Employee, or on behalf of any person, any current or former employee of the Company or its Affiliates for up to two years after that employee's termination date. During the period commencing on the date hereof through and ending two years following the Termination Date, the Employee will not, whether for his or her account or the account of any other Person, intentionally interfere with any relationship of the Company or its Affiliates or its Employees, or endeavor to entice away from the Company or its Affiliates, any person who during the term of the Agreement is, or during the preceding two-year period, was a tenant, co-investor, co-developer, joint venture, contractor, advisor, Employee or another client of the Company or its Affiliates.

All Company employees work collaboratively as a team and are expected to help each other when needed. Not performing tasks requested by your supervisor is considered insubordination. If you are uncomfortable performing a task, feel that it is violating a law, a Company policy, code of ethics, etc., please notify your supervisor and his or her manager as soon as possible.

EXHIBIT E

Threats, disparagement, or intimidation of management or other employees or malicious statements concerning individuals within management, other employees, or the Company will be considered insubordination and are prohibited. Absolutely no drama in the workplace will be tolerated. Noncompliance may be cause for immediate termination.

[…]

During employment with the Company, confidentiality is critical. Company associates may become aware of information of a proprietary and confidential nature. Such information includes, but is not limited to, salaries, bonus and compensation package information, information about the Company's costs, sales figures, customer lists, research proposals, legal matters, employee-related information, and future advertising or promotions. It is a violation of Company policy to disclose any information of a confidential nature to anyone outside of the Company (including but not limited to friends and relatives) or to other Company associates if they do not need to know about such information in the performance of their job duties.

Any employee or former Employee who discloses trade secrets or confidential business information will be subject to disciplinary action, even if they do not benefit from the disclosed information, and will be pursued to the fullest extent of the law.

[…]

For employment with the Company, you are required to abide by our standard confidentiality policy.

[…]

     (b) Since about January 28, 2022, Respondent has maintained the following rules in its

employee handbook:

<u>Insubordination and Disparagement Policy</u>

The Company's employees work collaboratively as a team and are expected to help each other when needed. Not performing tasks requested by your Company supervisor is considered insubordination. In the event you are uncomfortable performing a task, feel that is violating a law, a Company policy, code of ethics, or etc. please notify your supervisor and his or her manager as soon as possible.

Threats, disparagement, or intimidation of management or other employees or malicious or disparaging statements concerning individuals within management, other employees, or The Company will be considered insubordination, both in writing, in person, on social media, on review sites and on all other venues and are prohibited. Absolutely no drama in the workplace will be tolerated. Insubordination may be cause for immediate termination.

4

EXHIBIT E

Corporate Communication Policy

Designated spokespeople within the Company are authorized to speak to the media about matters concerning the Company. If contacted by the media, do not make any comments and immediately report it to your supervisor. Certain activities outside of work could and might, by association, have an impact on the organization's reputation. You should exercise judgment before taking part in any activity that could have an impact on The Company's reputation.

The Company Code of Conduct

**Definition**
At The Company, regardless of your title or position, your behavior is important. Your appearance and your behavior with our clients, the public, and your coworkers will influence their opinion of The Company.

Employees are expected to refrain from conduct or communication, which may damage the goodwill, brand, or business reputation of The Company. Employees must act in ways that merit the trust, confidence, and respect of all The Company's employees, clients, and vendors.

[…]

(c)  Since about January 28, 2022, Respondent has maintained the following rules in its

Non-Compete and Confidentiality Agreement:

[…]

**NON-COMPETE**

**Master Providers:**

During the term of employment and for twenty-four (24) months following termination of employment for any reason without the prior written consent of The Company: (1) Employee is prohibited from practicing aesthetic medicine and providing the specifically listed services: neurotoxins, fillers, deoxycholic acid, collagen stimulators, CoolSculpting, anti aging lasers, and hair removal lasers at any other medical practice besides The Company within a 20-mile radius of any Company location. (2) The Employee is prohibited from having an ownership interest, investing in, or providing services to, directly or indirectly, in or to any medical practice within a 20-mile (10-Mile in NY city) radius that competes against or provides similar services to any Company location.

Employee acknowledges that the value of The Company's initial training program is $75,000 and the yearly continuing education training is $30,000 and the provisions above are necessary to protect The Company's significant investment into the employee's voluntary training for this position.

EXHIBIT E

Notwithstanding the above and to protect the Employee's ability to have gainful employment, the employee is able to work in any other field of medicine besides the specific narrow field that is listed above, even during the non-compete period. If the non-compete is violated at any point during the twenty-four (24) months following the start of employment or the Employee leaves employment within the first twelve (12) months, the full costs of training are immediately owed. Should the employee leave after twelve (12) months, this obligation is prorated starting at the 13th month through month twenty-four (24). As part of your employment with the Company, you are agreeing to abide by this Non-Compete clause and you are acknowledging the Company's right to immediately collect on the debt owed and agree to abide by this Non Compete clause. You are acknowledging the Company's right to immediately collect on the debt owed, including all associated legal or collection fees.

**Master Aestheticians:**

Aestheticians are prohibited from practicing aesthetic services, including but not limited to injectables, fillers, skin resurfacing, facial rejuvenation, intense pulsed light, and other services that The Company currently offers or has offered during the aesthetician employment within a 20-mile (10-Mile in NY city) radius of any Company office for twenty-four (24) months following termination of employment without prior written consent of The Company. During the term of employment and for twenty-four (24) months following termination of employment, the aesthetician will be prohibited from having an ownership interest, directly or indirectly, or investing in, in any facility within a 20-mile radius that competes against or provides similar services to The Company. Employee acknowledges that the value of The Company's initial training program is $30,000 and the yearly continuing education training is $15,000 and the provisions above are necessary to protect The Company's significant investment into the employee's voluntary training for this position.

During the term of employment with The Company, it is agreed that Master Providers and Aestheticians will not engage in any other employment, occupation, consulting or other business activity directly related to the business in which The Company is now involved or becomes involved during the term of your employment, nor will you engage in any other activities that conflict with your obligations to The Company's. If the non-compete is violated at any point during the twenty-four (24) months following employment or the employee leaves employment within the first twelve (12) months, the full costs of training are immediately owed. Should the employee leave after twelve (12) months, this obligation is prorated starting at the 13th month through month twenty-four (24). As part of your employment with The Company, you are agreeing to abide by this Non-Compete clause and you are acknowledging the Company's right to immediately collect on the debt owed including all associated legal or collection fees.

**NON-SOLICITATION AND CONFIDENTIALITY (ALL EMPLOYEES)**

For a period of twenty-four (24) months after you are no longer employed by The Company, it is prohibited to solicit any Company clients, employees, or contractors for any reason.
During employment with the Company, employees may become aware of information of a proprietary and confidential nature such as: The Company's costs, sales figures, customer lists, advertising, treatment methods, reconstitutions instructions, off-label product uses, injection

6

techniques, expectation management, training process or techniques, resources, recordings or any materials obtained via employment at the Company. It is a violation of The Company policy to disclose any information of a confidential nature to anyone outside of The Company (including but not limited to friends and relatives) or to other Company employees if they do not need to know about such information in the performance of their job duties. Employees who use or disclose trade secrets or confidential business information or salary information will be subjected to disciplinary action, up to and including termination of employment as well as legal action, even if they do not actually benefit from the disclosed information.

When current or former employees directly solicit current associates to leave The Company, legal action will be taken, which may include the Company seeking an injunction preventing such conduct. The minimum damages of employee solicitation are $150,000 per employee or contractor plus any business damages sustained due to loss of revenue, interference of business functions, or loss of clients via solicitation or otherwise related to the direct or indirect result of their actions.

[…]

**Non-Disparagement**

Both employees and The Company, during and after employment, are prohibited from making negative comments about one another.

**Confidentiality**

The terms of this Agreement are confidential and may not be discussed except with legal counsel.

[…]

  (d) Since about January 28, 2022, Respondent has maintained the following rules in its

employees' Exit Agreement:

[…]

*Solicitation*

In your employment agreement you agreed to a charge of $25,000 for every client, and $150,000 for every employee contacted or solicited in any way. Payment is due at the time of the occurrence. Any past due balances over 10 days will incur 18% interest per month until collected and may be sent for collections at the 30-day past due.
[…]

7

*Client, Employee and Public Contact*

i.  As part of your initial employment documentation, you signed a nonsolicitation and non-disparagement agreement that prevents you from communicating with the public, clients, or employees of Juvly/Contour Clinic beyond your termination, whether voluntary or involuntary. If you fail to comply with the following requirements, your actions will be considered a solicitation and/or tortious interference in which you will be liable pursuant to the above solicitation clause and any additional damages incurred by Juvly/Contour Clinic.

ii.  Do not contact any clients or notify them of your departure from Juvly/Contour Clinic.

iii. Do not respond to any client questions regarding your employment status. You may only refer them to Juvly.com to book an appointment.

iv.  Should you choose to pursue work with any prior Juvly/Contour employee, retain all communications as this is considered a solicitation, their destruction is prohibited by law.

v.  Do not discuss any information with any individual regarding your employment at Juvly/Contour Clinic.

vi.  Do not make any public statements to any party for any reason regarding Juvly employment, business practices, or treatment information.

Immediately refer any third-party requests to HR@juvly.com

1.  Engaging beyond this may violate your anti-disparagement agreement and may be considered tortious interference.

*Destruction of Juvly/Contour Clinic & Client Information*

a.  As part of your initial paperwork, you signed a confidential agreement that prohibited your ability to disclose any Juvly/Contour Clinic related information outside the obligations of your employment. Furthermore, you are also required to follow the patient privacy guidelines set forth by the Health Insurance Portability and Accountability Act ("HIPAA") and may not retain or disclose any client information beyond your role as their healthcare provider. The following requirements are in alignment with this agreement:

i.  You must return or securely destroy any Juvly/Contour Clinic related information immediately upon termination, whether voluntary or involuntary. This expressly-prohibits the sharing of any trade secrets or intellectual property including, but not limited to, the below information:

[…]

c.  All compensation or human resource information;

8

EXHIBIT E

70

[…]

g.  All documents or resources you created while employed at Juvly/Contour Clinic;

[…]

5.  Respondent, by Certified Physician Assistant Jessica Sarkis:

(a)  About January 27, 2022, at Respondent's Cincinnati, Ohio facility, told employees that they violate Respondent's employee handbook if they discuss their individual employment contracts and handbooks.

(b)  About March 3, 2022, by telephone, instructed employees not to discuss their bonuses or evaluations with their peers, as doing so would violate the terms of the employee handbook.

(c)  About March 10, 2022, in writing, by Slack message, instructed employees not to discuss with their peers any exceptions to Respondent's employment policies that Respondent agrees to make for individual employees.

(d)  About June 3, 2022, by telephone, instructed employees not to discuss with their peers their bonuses or individual exceptions Respondent agrees to make to Respondent's standard employment terms and conditions of employment.

(e)  About June 21, 2022, by telephone, instructed employees not to discuss anything with their coworkers.

(f)  About June 29, 2022, in writing, by Slack message, instructed employees not to discuss with their peers any agreements, documents or conversations that the employees have with Respondent's administration.

6.  (a)  About June 30, 2022, Respondent's employee Brooke Carroll concertedly complained to Respondent regarding the wages, hours, and working conditions of Respondent's employees, by protesting Respondent's requirement that aestheticians in the State of Ohio

9

EXHIBIT E

perform microneedling services contrary to certain Ohio State Board of Cosmetology and Barbering rules and regulations.

(b) About July 18, 2022, Respondent discharged Carroll.

(c) Respondent engaged in the conduct described above in paragraph 6(b), because Carroll engaged in the conduct described above in paragraph 6(a), and to discourage employees from engaging in these or other concerted activities.

(d) Respondent engaged in the conduct described above in paragraph 6(b) because Carroll violated the Insubordination and Disparagement Policy rule described above in paragraph 4(b) and to discourage employees from engaging in these or other concerted activities.

7. (a) About November 11, 2022, Respondent, by CEO and Medical Director Justin Harper, refused to pay Kristin Doede accrued and unused Paid Time Off (PTO) following her separation from employment with Respondent.

(b) Respondent engaged in the conduct described above in paragraph 7(a) because Doede refused to sign Respondent's Exit Agreement described above in paragraph 4(d), and to discourage employees from engaging in these or other concerted activities.

8. (a) About August 10, 2022, Respondent demanded its former employee Nicole Cordero to pay it $60,000 for the costs of training during her employment.

(b) About November 11, 2022, Respondent demanded its former employee Kristin Doede to pay it $50,000 for the cost of training during her employment.

(c) Respondent engaged in the conduct described above in paragraphs 8(a) and (b) because Cordero and Doede violated the Non-Compete and Confidentiality Agreement described above in paragraph 4(c) and to discourage employees from engaging in these or other concerted activities.

EXHIBIT E

(d) Respondent engaged in the conduct described above in paragraph 8(a) because Cordero filed a charge in Case 09-CA-300239.

9.  By the conduct described above in paragraphs 4, 5, 6(b)-6(d), 7, and 8(a)-8(c), Respondent has been interfering with, restraining, and coercing employees in the exercise of their rights guaranteed in Section 7 of the Act in violation of Section 8(a)(1) of the Act.

10.  By the conduct described above in paragraphs 8(a) and (d), Respondent has been discriminating against employees for filing charges or giving testimony under the Act in violation of Section 8(a)(1) and (4) of the Act.

11.  The unfair labor practices of Respondent described above affect commerce within the meaning of Section 2(6) and (7) of the Act.

## <u>REMEDIES</u>

WHEREFORE, General Counsel seeks all relief as may be just and proper to remedy the unfair labor practices alleged herein, including, as part of the remedy for the unfair labor practices alleged in paragraph 4, the General Counsel seeks an Order requiring Respondent to rescind the unlawful provisions in Respondent's Offers of Employment, Employee Handbook, Non-Compete and Confidentiality Agreement, and Exit Agreement identified in paragraph 4, and FURTHERMORE, as part of the remedy for the unfair labor practices alleged in paragraph 6, the General Counsel seeks an Order requiring Respondent to make whole Carroll for any consequential damages, including, but not limited to, direct or foreseeable pecuniary harms, she suffered as a result of her discharge and, FURTHERMORE, as part of the remedy for the unfair labor practices alleged in paragraph 7, the General Counsel seeks an Order requiring Respondent to make whole Doede in the amount of the PTO Respondent would have paid her at the time of her employment separation, plus interest, but for its unlawful application of the Non-Compete

11

and Confidentiality Agreement against her, and FURTHERMORE, as part of the remedy for the
unfair labor practices alleged in paragraph 8, the General Counsel seeks an Order requiring
Respondent to rescind the unlawful demands Respondent made to Cordero and Doede to pay it
for the costs of training during their employment pursuant to the unlawful Non-Compete and
Confidentiality Agreement.

## **ANSWER REQUIREMENT**

Respondent is notified that, pursuant to Sections 102.20 and 102.21 of the Board's Rules and
Regulations, it must file an answer to the consolidated complaint.  The answer must be **received
by this office on or before September 15, 2023 or postmarked on or before September 14,
2023.**  Respondent also must serve a copy of the answer on each of the other parties.

The answer must be filed electronically through the Agency's website.  To file electronically,
go to www.nlrb.gov, click on **E-File Documents**, enter the NLRB Case Number, and follow the
detailed instructions.  Responsibility for the receipt and usability of the answer rests exclusively
upon the sender.  Unless notification on the Agency's website informs users that the Agency's
E-Filing system is officially determined to be in technical failure because it is unable to receive
documents for a continuous period of more than 2 hours after 12:00 noon (Eastern Time) on the
due date for filing, a failure to timely file the answer will not be excused on the basis that the
transmission could not be accomplished because the Agency's website was off-line or
unavailable for some other reason.  The Board's Rules and Regulations require that an answer be
signed by counsel or non-attorney representative for represented parties or by the party if not
represented.  See Section 102.21.  If the answer being filed electronically is a pdf document
containing the required signature, no paper copies of the answer need to be transmitted to the
Regional Office.  However, if the electronic version of an answer to a consolidated complaint is

EXHIBIT E

not a pdf file containing the required signature, then the E-filing rules require that such answer containing the required signature continue to be submitted to the Regional Office by traditional means within three (3) business days after the date of electronic filing.  Service of the answer on each of the other parties must still be accomplished by means allowed under the Board's Rules and Regulations.  The answer may not be filed by facsimile transmission.  If no answer is filed, or if an answer is filed untimely, the Board may find, pursuant to a Motion for Default Judgment, that the allegations in the consolidated complaint are true.

### NOTICE OF HEARING

PLEASE TAKE NOTICE THAT on **November 28, 2023, 10 a.m.** at **Room 3-111, John Weld Peck Federal Building, 550 Main Street, Cincinnati, Ohio**, and on consecutive days thereafter until concluded, a hearing will be conducted before an administrative law judge of the National Labor Relations Board.  At the hearing, Respondent and any other party to this proceeding have the right to appear and present testimony regarding the allegations in this consolidated complaint.  The procedures to be followed at the hearing are described in the attached Form NLRB-4668.  The procedure to request a postponement of the hearing is described in the attached Form NLRB-4338.

Dated:  September 1, 2023

*Eric A. Taylor*

Eric A. Taylor, Acting Regional Director
Region 9, National Labor Relations Board
Room 3-111, John Weld Peck Federal Building
550 Main Street
Cincinnati, Ohio  45202-3271

Attachments

EXHIBIT E

13