IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN
DISTRICT OF TEXAS DALLAS
DIVISION

| | |
|---|---|
| **SUSQUEHANNA RADIO LLC** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | **CIVIL ACTION NO. 3:23-CV-01746-S** |
| § | |
| **JACOB KEMP and DANIEL** § | |
| **MCDOWELL** § | |
| § | |
| **Defendants.** § | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S FACTUAL UPDATE
AND BENCH BRIEF IN SUPPORT OF PRELIMINARY
INJUNCTION**

COME NOW Defendants Jacob Kemp and Daniel McDowell ("Defendants") and file this Response to Plaintiff's Factual Update and Bench Brief in Support of Preliminary Injunction and in support thereof would respectfully show the Court as follows:

### I. INTRODUCTION

Under the auspices of a "factual update" and in a transparent attempt to divert attention away from its overly broad, unreasonable, and anti-competitive non-compete agreement, Plaintiff turns its guns on Defendants' counsel. Consistent with the protectionist, bullying approach it takes with respect to its employees, Plaintiff bristles at irrelevant, out-of-context, out-of-court statements by one of Defendants' attorneys that it disingenuously contends evidences Defendants' lack of good faith in attempting to settle this case in mediation. Conspicuously absent from Plaintiff's hand wringing over Mr. Kingston's comments is any articulation as to how this "factual update" is relevant to any

legitimate issue in this case. Plaintiff does not purport to be seeking a gag order or sanctions for lack of good faith in mediating. It is rather clear that Plaintiff's intent is to tarnish Defendants counsel in the eyes of the Court.

The Plaintiff's claim that the Defendants did not approach mediation in good faith is demonstrably untrue. Unfortunately, the only way that Defendants can defend themselves from these charges is to reveal details that would breach the veil of mediation confidentiality. Defendants arguably have a right to breach this veil. *Allen v. Leal*, 27 F. Supp. 2d 945, 947 n.4 (S.D. Tex. 1998) (holding that the interests of justice require breaching the veil of mediation confidentiality where the plaintiff alleged unprofessionalism during mediation). But out of respect for this Court and the mediation process, Defendants will not do so unless asked to do so off the record, and, in any event, will continue to maintain that the entire topic is irrelevant to the legal issues before the Court.

## II. NATIONAL LABOR RELATIONS BOARD PROCEEDINGS AND MR. KINGSTON'S STATEMENTS RELATED THERETO

Plaintiff is wrong to say that Defendants' intention in agreeing to extend the hearing date for two weeks was premised upon some idea that the NLRB would halt the lawsuit during those two weeks. As discussed below, Plaintiff misunderstands the processes involved in halting a lawsuit like this. Plaintiff's factual update also includes several misunderstandings of the various NLRB processes that are used to halt illegal lawsuits like the one at issue here.

Under the Supreme Court's decisions in *Bill Johnson's Restaurants* and *BE & K*, a party violates Section 8(a)(1) of the National Labor Relations Act ("NLRA" or "the Act") by filing and maintaining a lawsuit that has "an objective that is illegal under federal law" or that is subject to "federal-law preemption" under *Garmon*. *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 738, n. 5 (1983); *BE & K Construction Co. v. NLRB*, 536 U.S. 516, 531-32 (2002); *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245 (1959). Filing a lawsuit that seeks to enforce contract terms that are illegal under the NLRA both seeks an illegal objective and is subject to *Garmon* preemption. *Haynes Mechanical Systems*, 2016 WL 8651991, at 7 (2016) (General Counsel advice memorandum briefly summarizing the Board law on lawsuits filed to enforce illegal contract provisions).

These kinds of illegal lawsuits are typically halted through one of three mechanisms.

The first mechanism, and by far the most common, is that the court where the lawsuit is filed dismisses the lawsuit by applying the *Garmon* preemption doctrine. This typically happens after the defendants file a 12(b) motion. FRCP 12(b).

The second mechanism is that the NLRB files for a Section 10(j) injunction to enjoin the continued prosecution of the illegal lawsuit. 29 U.S.C. § 160(j); see, e.g., *Sharp v. Webco Industries*, 265 F3d. 1085 (10th Cir. 2001).

The third mechanism is that the NLRB issues a complaint based on the unfair labor practice charge and sends the judge and the Plaintiff a *Loehmann's* letter explaining that

the lawsuit is preempted and must be halted within seven days. *Loehmann's Plaza*, 305 NLRB 663, 671, fn. 56, Appx. C (1991).

It has never been a secret that Defendants believe that Plaintiff's unfair labor practices at issue in this case will ultimately result in a complaint and remedial action by the NLRB up to and including an injunction under Section 10(j) of the National Labor Relations Act. Plaintiff consistently dismissed Defendants' arguments apparently believing that the NLRB could or would do nothing with respect to Defendants' charges. The Plaintiff appears to believe that these kinds of lawsuits can only be halted by the NLRB after an investigation and complaint. But that is only true for the third mechanism, not for the first two mechanisms.

Plaintiff contends that a statement made by Philip Kingston on August 31, 2023 that one benefit of the continuance of the August 29 hearing was that it gives the NLRB more time to take action evidences Defendants' lack of good faith in mediating. This is simply untrue. Even outside mediation, Defendants' labor counsel went above and beyond to attempt to educate Plaintiff's counsel on labor law so they could make informed decisions.

Mr. Kingston simply reiterated what Defendants have been saying all along – that the NLRB is going to take action against Plaintiff's unfair labor practices. That the continuance of the hearing gives the NLRB more time to take the action Defendants have long contended it would take is a rather obvious observation. Furthermore, Mr. Kingston's statement about the NLRB taking this case over is consistent with Defendants'

preemption argument that that the NLRB should be allowed to assume exclusive jurisdiction over this case. In any event, after Mr. Kingston's statement, Defendants attend a third full-day mediation on September 5, 2023. Simply stated, Defendants have gone to great lengths to attempt to settle this case and any insinuation that Defendants acted in bad faith during mediation is wholly unfounded.

*/s/ Philip Kingston*

| | |
|---|---|
| **Philip Kingston** <br> Texas Bar No. 24010159 <br> Sheils Winnubst PC <br> 1701 N. Collins, 1100 Atrium II <br> Richardson, Texas 75080 <br> (214) 642-1707 <br> philip@sheilswinnubst.com | **Matthew Bruenig** <br> District of Columbia Bar No. 1045571 <br> (admitted *pro hac vice*) <br> 124 4th St. <br> Stamford, Connecticut 06905 <br> (857) 540-1205 <br> matthewbruenig@gmail.com |
| **Frank G. Cawley** <br> Texas Bar No. 24006978 <br> Cawley Law LLC <br> 2591 Dallas Parkway, Suite 300 <br> Frisco, TX 75034 <br> (469) 259-2221 <br> frank@cawleylawgroup.com | **Elizabeth F. Griffin** <br> Texas Bar No. 24092450 <br> Clark Hill PLC <br> 901 Main Street, Suite 6000 <br> Dallas, Texas 75202 <br> 214-651-4300 <br> 214-659-4330 (Fax) <br> egriffin@clarkhill.com |